UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHY A. HARRIS, in her personal capacity and in her official capacity as Member of the Merit Systems Protection Board,<br><br>Plaintiff,<br><br>-against-<br><br>SCOTT BESSENT, in his official capacity as Secretary of the Treasury, TRENT MORSE, in his official capacity as Deputy Assistant to the President and Deputy Director of the White House Presidential Personnel Office, SERGIO GOR, in his official capacity as Director of the White House Presidential Personnel Office, HENRY J. KERNER, in his official capacity as Acting Chairman of the Merit Systems Protection Board, DONALD J. TRUMP, in his official capacity as President of the United States of America, RUSSELL VOUGHT, in his official capacity as Director of the Office of Management and Budget,<br><br>Defendants. | Civil Case No. _____<br><br><br>**EMERGENCY HEARING RESPECTFULLY REQUESTED** |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

On February 10, 2025, President Donald J. Trump purported to terminate Plaintiff Cathy A. Harris from her Senate-confirmed role as a Member of the United States Merit Systems Protection Board (MSPB). Ms. Harris hereby seeks emergency, interim relief from that illegal termination, which violated a statute conferring for-cause removal protections designed to ensure the independence of the MSPB.

As shown below, Ms. Harris is likely to succeed on the merits of her claims that President Trump violated the law in terminating her and that the other Defendants may not lawfully treat this

purported termination as valid. Ms. Harris is also suffering clear irreparable injury, including the deprivation of her statutory right to function in office. Moreover, the equities and the public interest both favor interim relief to preserve the status quo while these issues are more fully adjudicated. In light of the historic upheaval currently occurring within federal employment, it is urgent that the MSPB remain operational and free of legal doubt in carrying out its statutory mission.

Accordingly, and as set forth below, Ms. Harris seeks a TRO (1) declaring on an interim basis that President Trump's removal of Ms. Harris from office, and actions from the MSPB while she is not in office, is unlawful, and that Ms. Harris is a Member of the MSPB; and (2) enjoining the remaining Defendants from removing Ms. Harris from her office or in any way treating her as having been removed, denying or obstructing her in accessing any of the benefits or resources of her office, acting on official business of the MSPB without Ms. Harris in office, pending further order of the Court.

## BACKGROUND

### I. The Merit Systems Protection Board

The Merit Systems Protection Board ("MSPB") is an independent agency of the United States. In 1978, Congress first established the MSPB as part of the Civil Service Reform Act of 1978 ("CSRA"), PL 95–454 (S 2640), 92 Stat. 1111 (Oct. 13, 1978). The CSRA was enacted to address widespread public concerns about the federal civil service.[1]

The legislation that became the CSRA was first proposed by President Carter. In a letter to Congress, President Carter requested that Congress create the MSPB, whose members would be removable only for cause. President Carter explained that this structure was intended to "guarantee

---

[1] *The Civil Service and the Statutory Law of Public Employment*, 97 Harv. L. Rev. 1619, 1631–32 (1984).

independent and impartial protection to employees" and thereby "safeguard the rights of Federal employees who 'blow the whistle' on violations of laws or regulations by other employees, including their supervisors."[2]

Over the following seven months, Congress worked to formulate President Carter's proposal into final legislation. Throughout these deliberations, Congress emphasized the importance of an independent MSPB with sufficient authority to protect the federal workforce consistent with merit system principles. To ensure that independence, Congress in the CSRA provided that the Members of the MSPB "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." Civil Service Reform Act, P.L. 95-454, 92 Stat. 1111, Ch. 12, § 1202.

On October 13, 1978, President Carter signed the CSRA into law, declaring that the "landmark legislation" would create "a new system of excellence and accountability."[3]

The MSPB's primary mission is to provide the people of the United States with a competent, honest, and productive Federal workforce, provide that Federal personnel management is implemented consistent with merit systems principles and free from prohibited personnel practices, including reprisal for whistleblowing. Civil Service Reform Act, P.L. 95-454, 92 Stat. 1111, Ch. 11, § 1101.

Members of the MSPB hear, adjudicate, or provide for the hearing or adjudication, of all matters within the MSPB's jurisdiction involving Federal employees and Federal agencies. Members of the Board are empowered to order any Federal agency or employee to comply with

---

[2] Federal Civil Service Reform Message to the Congress (Mar. 2, 1978), https://www.presidency.ucsb.edu/documents/federal-civil-service-reform-message-the-congress.

[3] *President Jimmy Carter Remarks on Signing the Civil Service Reform Act of 1978 into Law* (Oct. 13, 1978), https://www.presidency.ucsb.edu/documents/civil-service-reform-act-1978-statement-signing-s-2640-into-law.

any order or decision issued by the Board and enforce compliance with any such order. 5 U.S.C. § 1204(a)(1)-(2).

Members of the MSPB are to conduct, from time to time, special studies relating to the civil service and to other merit systems in the executive branch, and report to the President and to the Congress as to whether the public interest in a civil service free of prohibited personnel practices is being adequately protected. 5 U.S.C. § 1204(a)(3).

Members of the MSPB are required to review rules and regulations of the Office of Personnel Management. 5 U.S.C. § 1204(a)(4).

A Member of the MSPB must be nominated by the President and confirmed by the Senate. Members of the MSPB must also be "individuals who, by demonstrated ability, background, training, or experience are especially qualified to carry out the functions of the Board." 5 U.S.C. § 1201.

Once confirmed, a Member of the MSPB serves a seven-year term and, if a successor has not yet been appointed, up to one additional year. "Any member may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202; *see also Axon Enter. v. FTC*, 598 U.S. 175, 181 (2023) ("the Merit Systems Protection Board (MSPB)—a separate agency whose members are themselves removable by the President only for cause, such as 'neglect of duty' or 'malfeasance.') (quoting 5 U.S.C. § 1202(d)).

## II. Procedural History

Plaintiff Cathy A. Harris has served as a Member of the MSPB since June 1, 2022, following her nomination by the President and confirmation by the Senate. Ms. Harris's term expires on March 1, 2028. On February 10, 2025, Ms. Harris received an email from Trent Morse, Deputy Assistant to the President and the Deputy Director of the White House Presidential

Personnel Office, which stated in its entirety: "On behalf of President Donald J. Trump, I am writing to inform you that your position on the Merit Systems Protection Board is terminated, effective immediately. Thank you for your service[.]" Ex. A.

## LEGAL STANDARD

To obtain a TRO, a movant must show that "(1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in [its] favor; and (4) the issuance of a preliminary injunction is in the public interest." *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1324 (D.C. Cir. 2024) (quotation marks and citation omitted); *accord Council on Am.-Islamic Rels. v. Gaubatz*, 667 F. Supp. 2d 67, 74 (D.D.C. 2009).

## ARGUMENT

### I. Plaintiff Has a Substantial Likelihood of Success on the Merits.

Plaintiff Cathy A. Harris is substantially likely to prevail on her claims, all of which rest on the premise that she has been unlawfully removed from office in violation of her statutory for-cause removal protection. *See* 5 U.S.C. § 1202(d). In purporting to terminate Ms. Harris on behalf of President Trump, Mr. Morse stated only that Ms. Harris was "terminated, effective immediately" and did not reference any finding of "inefficiency, neglect of duty, or malfeasance in office." *Id*. Accordingly, this termination notice facially violated 5 U.S.C. § 1202(d). Plaintiff will therefore prevail unless her statutory for-cause removal protection is unconstitutional—and she is substantially likely to show that this protection is fully consistent with the constitutional separation of powers and applicable Supreme Court precedents.

The Supreme Court's original pronouncement on this issue is *Humphrey's Executor v. United States*, which upheld the constitutionality of a materially identical restriction on the President's authority to remove members of the Federal Trade Commission (FTC). 295 U.S. 602,

5

625-26, 629 (1935). There, the Supreme Court explained that Congress had created the FTC as an independent agency—and that the FTC held not only executive authorities, but also "specified ties as a legislative or as a judicial aid" that distinguished it from being "an arm or an eye of the executive." *Id*. at 628. For example, the FTC was required to "mak[e] investigations and reports thereon for the information of Congress ... in aid of the legislative power," in which function it "acts as a legislative agency." *Id*. Because of the FTC's quasi-legislative and quasi-judicial roles, the Supreme Court concluded that Congress could appropriately impose for-cause limits against presidential removal. More broadly, the Supreme Court recognized in *Humphrey's Executor* that Congress could shield agency heads from removal without cause where Congress deemed such protections necessary to secure a measure of impartiality, expertise, and independence. That ruling was no small matter: it forms the basis for a substantial part of the modern federal government and has been repeatedly reaffirmed. *E.g., Wiener v. United States*, 357 U.S. 349, 355-56 (1958); *Mistretta v. United States*, 488 U.S. 361, 410-11 & n.32 (1989); *Am. Fed'n of Gov't Emps., AFLCIO v. Gates*, 486 F.3d 1316, 1328-29 (D.C. Cir. 2007) (Kavanaugh, J.).

In recent years, the Supreme Court has identified several contexts in which for-cause removal limits unduly infringe on Article II—either because an independent agency's leadership is too insulated from presidential control or because a single-director agency's power and functions require more robust presidential supervision. The reasoning of those authorities only confirms that the limited for-cause removal protection afforded to Members of the MSPB is constitutional.

The Supreme Court began this line of cases by addressing a scheme that created too many layers of insulation between agency officials and the President. Specifically, in *Free Enterprise Fund v. PCAOB*, the Supreme Court considered removal protections for members of the Public Company Accounting Oversight Board (PCAOB), an independent multi-member agency within

6

the Securities and Exchange Commission (SEC). 561 U.S. 477, 485 (2010). The PCAOB was vested with broad power to regulate the accounting industry and impose severe financial penalties to enforce its rules. *See id*. Members of the PCAOB could be removed by the SEC only for willful violations of the law or abuses of authority. *See id*. at 486-87. Commissioners of the SEC, in turn, could be removed by the President only for cause. *See id*. at 503. Confronted with this novel scheme—in which the layering of "dual for-cause limitations" precluded the President from directly removing PCAOB members—the Supreme Court struck it down. *Id*. at 492, 495-96. In so holding, however, the Court maintained precedents affirming the constitutionality of single-layer removal provisions directly beneath the President, as is true of the MSPB. *See id*. at 495, 508.

Since *PCAOB*, the Supreme Court has issued two opinions invalidating removal limits for single-headed agencies that wield substantial regulatory and enforcement authority over private actors. First came *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020). There, the Supreme Court noted that for-cause removal limits for single-person agency leadership structures are a relatively recent phenomenon. *See id*. at 220-22. It then concluded that applying such statutory protections to the Director of the CFPB raised exceptionally grave concerns in light of the Director's broad power to "issue final regulations, oversee adjudications, set enforcement priorities, initiate prosecutions, and determine what penalties to impose on private parties." *Id*. at 225. As the Supreme Court noted, the Director's authority to "dictate and enforce policy for a vital segment of the economy affecting millions of Americans" infringed on Article II. *Id*. And this violation was magnified by the CFPB's unique funding structure, which ensured automatic funding through the Federal Reserve and defeated a crucial source of potential accountability to the President. *See id*. at 226. Accordingly, the Supreme Court held that the President must be able to remove the CFPB Director at will. *See id*. at 227-238.

7

The Court's decision in *Selia Law* cast into doubt removal protections at the Federal Housing Finance Agency (FHFA)—which were stricken down one year later in *Collins v. Yellen*, 594 U.S. 220 (2021). *See Seila Law*, 591 U.S. at 222. In reaching this conclusion, reasoned that asserted differences between the CFPB and FHFA regarding the "nature and breadth" of their authority were not dispositive of the constitutional analysis—adding that the FHFA was in some respects more powerful than the CFPB and that it had direct "regulatory and enforcement authority over two companies that dominate the secondary mortgage market and have the power to reshape the housing sector." 594 U.S. at 251, 253.

Together, *Humphrey's Executor*, *Seila Law*, and *Collins* all support the constitutionality of the MSPB's for-cause removal provision. Four considerations anchor that conclusion.

First, *Seila Law* and *Collins* were fundamentally animated by a profound concern about the President's inability to remove officials exercising executive power in ways that could "dictate and enforce policy for a vital segment of the economy affecting millions of Americans." *Seila Law*, 591 U.S. at 225; *accord Collins*, 594 U.S. at 255 (highlighting that "FHFA's control over Fannie Mae and Freddie Mac can deeply impact the lives of millions of Americans by affecting their ability to buy and keep their homes"). That concern is not present here. The MSPB is a primarily quasi-judicial agency with limited advisory and reporting functions—all focused exclusively on federal personnel issues. In performing these functions, the MSPB does not regulate or penalize private activity. *See Seila Law*, 591 U.S. at 221 (noting that the OSC, which brings cases before the MSPB, "does not bind private parties at all"). The MSPB lacks the power to commence prosecutions, bring suits in an Article III tribunal, or control (whether directly or indirectly) the substantive regulatory framework for any public or private entities. While the MSPB's work is truly essential, it occurs within a "limited jurisdiction" related to federal employers and employees.

*Id*. at 221. It poses no "special threat to individual liberty" for the Members of the MSPB to receive limited independence from direct political control in reviewing and investigating alleged prohibited personnel practices from federal employees. *See id*. at 223.

Second, consistent with the reasoning of *Humphrey's Executor*, the MSPB exists to vindicate quasi-legislative functions and interests held in common by Congress, the Executive Branch, and the public. Congress carefully designed the MSPB to play an important reporting role with respect to legislative oversight and deliberations. See 5 U.S.C. §§ 1204(l) & 1205. The MSPB's work also furthers the distinct, quasi-legislative interest in promoting Executive Branch compliance with congressionally imposed merit system and personnel requirements. In that respect, the MSPB is more than just an aspect of the executive power. *See Humphrey's Executor*, 295 U.S. at 628. On this point, it is especially notable that the MSPB's structure—specifically including its for-cause removal provision for Members—reflects an intent to create independence from the President.

Third, the need for independence at the MSPB is unique in its character and purposes. With respect to the CFPB and FHFA, the case for agency independence rested heavily on a substantive belief that economic regulation should be free of specific forms of presidential political control. *See Seila Law*, 591 U.S. at 207; *Collins*, 594 U.S. at 229-30. Put differently, agency independence in those settings was specifically designed to restrain the President's ability to direct the agencies' regulatory powers consistent with his agenda. Here, in contrast, the MSPB lacks broad-reaching regulatory powers—and the independence afforded by its statutory for-cause removal provisions serves an entirely different function. Rather than hamper the President's substantive regulatory agenda, the MSPB's independence functions to protect and assure civil servants and whistleblowers. If the officials charged with adjudicating claims of whistleblower retaliation were

9

utterly vulnerable to retaliation and removal for reviewing politically charged or inconvenient cases, then the purpose of a merit system and whistleblower protections might fail when it is most needed. Simply put, Congress reasonably concluded that the MSPB cannot serve as an independent protector of a merit system if the Members are subject at all times to removal without cause by the President.

Finally, the presence of the for-cause removal limitation does not completely exempt the MSPB from accountability. The MSPB remains accountable through its substantial reporting obligations—and through the traditional appropriations process, which requires that Congress and the President approve the agency's funding, unlike the CFPB's and the FHFA's deliberately insulated funding schemes. *See Seila Law*, 591 U.S. at 225-26; *Collins*, 594 U.S. at 231.

Considering all this and applying the presumption of constitutionality afforded to Acts of Congress, *see Califano v. Aznavorian*, 439 U.S. 170, 175 (1978), the MSPB's removal protection is plainly constitutional. Because President Trump purported to terminate Ms. Harris in flagrant disregard of that protection—and thus offended a squarely applicable statutory limit—Plaintiff is likely to succeed on the merits of her claims in this action.

**II.     Plaintiff Will Suffer Irreparable Harm Absent Relief.**

Interim relief is further justified because Ms. Harris is suffering irreparable injury from Defendants' conduct, which is depriving her in real time of her statutory entitlement to serve as a Member of the MSPB.[4] This Court has recognized that even if the deprivation of a senior government official's "statutory right to function" is temporary, the injury to them and their agency is both significant and irreparable. *Berry v. Reagan*, No. 83-3182, 1983 WL 538, at *5 (D.D.C.

---

[4] In assessing whether the plaintiff has suffered an irreparable harm, this Court must assume that Ms. Harris has demonstrated a likelihood that Defendants' conduct violates the law. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006).

10

Nov. 14, 1983) (granting preliminary injunction against removal of plaintiffs as members of the U.S. Commission on Civil Rights), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983) (per curiam). Certainly, a damages remedy after a final judgment and all appeals have been exhausted is ordinarily inadequate. *See Mackie v. Bush*, 809 F. Supp. 144, 147 (D.D.C. 1993) (granting TRO against removal of plaintiff members of Postal Service Board of Governors), *vacated as moot sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993) (per curiam).

For two additional reasons, Plaintiff's showing of irreparable injury is especially acute. First, if another person is nominated and confirmed to the role of Member of the MSPB, then her claim to that role will be mooted, and her judicial remedy extinguished entirely despite the illegality of her termination throughout this period. *See, e.g., Berry v. Reagan*, 732 F.2d 949 (D.C. Cir. 1983); *Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993). Second, the denial of immediate emergency relief—and ensuing confusion or uncertainty about the status of the MSPB—may deprive Plaintiff and the MSPB of the "ability to fulfill [their] mandate" to federal employees, *Berry*, 1983 WL 538, at *5, including those whose challenges to personnel actions are pending now before the MPSB.

Accordingly, this case is nothing like a garden-variety employment dispute in which an employee seeks backpay or similar remedies for wrongful termination. Ms. Harris is not suing for monetary harm but instead the fundamental loss of her public office. And even if the purely private employment context were a relevant comparator, then Ms. Harris's request would present exactly the kind of "extraordinary case[]" in which removal from office warrants extraordinary relief. *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974).

### III. The Balance of Equities and Public Interest Favor Plaintiff.

Over the past several weeks, the Administration has announced the placement of many thousands of employees and officials throughout the federal government on administrative leave. These personnel actions have generated widespread uncertainty among career civil servants and agency officials. See Erica Green et al., *Trump's Moves to Upend Federal Bureaucracy Touch Off Fear and Confusion*, N.Y. Times (Jan 25, 2025). In this context, the proper functioning of the MSPB is more vital than ever—and the unlawful termination of a Senate-confirmed MSPB Member creates a gap in protections provided by the MSPB, risking severe confusion over the leadership, mission, and role of the agency (as well as doubt over the lawfulness of any actions that it takes). Congress created the MSPB to protect the federal workforce consistent with merit system principles. *See United States v. Fausto*, 484 U.S. 439, 444-45 (1988) (CSRA created "integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration."). Ensuring that the MSPB can carry out its statutory mission is plainly in the public interest.

Here, Plaintiff asks only that the Court preserve the status quo while the weighty issues she raises are more fully adjudicated. Such relief would vindicate important equities and public purposes, while inflicting marginal burdens on Defendants, who will soon enough have an opportunity to fully present their case and seek to defend their unprecedented conduct.

## CONCLUSION

For the foregoing reasons, Plaintiff Cathy A. Harris's motion for a TRO should be granted and the Court should order the proposed TRO submitted by Plaintiff.

Respectfully submitted,

 /s/ Michael J. Kator

Linda M. Correia, D.C. Bar No. 435027
CORREIA & PUTH, PLLC
1400 16th Street, NW, Suite 450
Washington, D.C.  20036
(202) 602-6500
lcorreia@correiaputh.com

Michael J. Kator, D.C. Bar No. 366936
Jeremy D. Wright, D.C. Bar No. 483297
Kerrie D. Riggs, D.C. Bar No. 995784
KATOR, PARKS, WEISER & WRIGHT, P.L.L.C.
1150 Connecticut Ave., NW, Suite 705
Washington, D.C.  20036
(202) 898-4800
(202) 289-1389 (fax)
mkator@katorparks.com
jwright@katorparks.com
kriggs@katorparks.com

James Eisenmann, D.C. Bar No. 435456
ALDEN LAW GROUP, PLLC
1850 M St., NW, Suite 901
Washington, D.C.  20036
(202) 463-0300
jeisenmann@aldenlg.com

*Attorneys for Plaintiff Cathy A. Harris*

Dated: February 11, 2025
        Washington, D.C.