IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHY A. HARRIS,<br><br>    *Plaintiff*,<br><br>v.<br><br>SCOTT BESSENT, *et al.*,<br><br>    *Defendants*. | Civil Action No. 1:25-cv-00412-RC |

## **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

  The Constitution vests the entirety of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed." Art. II, § 1, cl. 1; id. § 3. That executive power encompasses the authority to remove those who aid the President in carrying out his duties. On February 11, 2025, the President exercised this authority when he removed Plaintiff Cathy Harris from her position as a Member of the Merit Systems Protection Board (the "Board" or "MSPB"), an executive branch agency that performs quintessentially executive functions. Plaintiff now challenges her removal, seeking among other relief, a temporary restraining order that would require reinstallation to her former principal office on the Board. But because she cannot satisfy the requirements necessary to obtain that extraordinary relief, the Court should deny her request.

  *First*, Plaintiff has not shown that she is likely to succeed on the merits. The MSPB adjudicates employment disputes within the executive branch, has the authority to issue binding orders, and has the power to enforce compliance with those orders. Because the MSPB wields significant executive power, its Members fall squarely within the President's removal power. For that reason, *Humphrey's Executor*—which carved out a narrow exception to that removal power for multimember bodies with "quasi-judicial" or "quasi-legislative" functions that exercise no executive power—does not apply.

1

*Second*, Plaintiff has not shown that she will suffer imminent irreparable harm in the absence of a temporary restraining order. The loss of government employment constitutes irreparable harm only in a "genuinely extraordinary situation," *Sampson v. Murray*, 415 U.S. 61, 92 & n.68 (1974), and Plaintiff does not even attempt to argue that she meets this high bar. Rather, she casts her claim of irreparable harm as a deprivation of a "statutory right to function" as a Member of the MSPB, *see* Pl.'s Mot. at 10. But she does not explain why she will suffer irreparable harm "during whatever modest amount of time may be necessary to adjudicate an expedited motion for preliminary injunction." *See* Order, *Dellinger v. Bessent*, No. 25-5025 (D.C. Cir.) (Katsas, J., concurring) (casting doubt on ability of removed head of the Office of Special Counsel to show irreparable harm). And if Plaintiff asserts irreparable harm to the functioning of the MSPB, that assertion is misplaced, both because the MSPB can continue to function with its existing Board members and because Plaintiff would lack standing to raise such a harm.

*Third*, the balance of the equities and the public interest favor Defendants. The relief that Plaintiff seeks—an order requiring the President to reinstate a person he has chosen to remove from office—is extraordinary. And with good reason: such an order that would greatly impede the President's authority to exercise "all of" "the 'executive Power'" of the United States. *Seila Law*, 590 U.S. at 203. Allowing Plaintiff to exercise executive power over the President's objection unquestionably inflicts irreparable harm on both the Executive and the separation of powers.

Because the merits and the other temporary restraining order factors all cut against Plaintiff, her motion for extraordinary preliminary relief should be denied.

## BACKGROUND

**I.   Statutory Background**

Congress created the Merit Systems Protection Board (the "Board" or "MSPB") as part of the Civil Service Reform Act of 1978 (the "Act"). Pub. L. No. 95-454, § 202(a), 92 Stat. 1111, 118–44 (1978). Before that, in 1883, Congress established a Civil Service Commission, comprised of three Presidentially appointed Commissioners, that helped the President prepare suitable civil service rules for examinations of applicants for federal employment. Act of Jan. 16, 1883, ch. 27, §2, 22 Stat. 403

(1883). When Congress passed the Civil Service Reform Act almost a century later, it split the functions of the Civil Service Commission between two separate new agencies: the Office of Personnel Management and the MSPB. Civil Service Reform Act of 1978 Act, 92 Stat. 1111, 1118–44. The Act charged OPM with conducting personnel management functions formerly performed by the Civil Service Commission, while the MSPB performed the Civil Service Commission's "hearing, adjudication, and appeals functions, and exercised its authority to enforce agency compliance with its decisions." Congressional Research Service, Merit Systems Protection Board (MSPB): A Legal Overview 3 (March 25, 2019).

The Act provides that the Board—like the Civil Service Commission before it—shall consist of three Members, appointed by the President with the advice and consent of the Senate. 5 U.S.C. § 1201. No more than two Members may belong to the same political party. *Id.* The Act also provides that Members can "be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202(d).

The Board primarily reviews federal employee appeals of adverse actions "which [are] appealable to the Board under any law, rule, or regulation," including those related to removal or suspension for periods greater than fourteen days. 5 U.S.C. § 7701(a); *see also id.* § 7701(a); *id.* § 7521(a); 5 C.F.R. § 1201.3(a). Cases may be heard by the Board directly or referred to either Administrative Law Judges (ALJs) or administrative judges employed by the Board. *Id.* § 7701(b)(1). The Board has the authority to "take final action on any such matter[s]" before it. 5 U.S.C. § 1204(a)(1). It can then order any Federal agency or employee to comply with any order or decision issued by the Board . . . and enforce compliance with any such order." *Id.* § 1204(a)(2).

The Board also has independent litigating authority to send its own attorneys (not Department of Justice attorneys) to litigate civil actions outside the Supreme Court in connection with any of its functions. *Id.* § 1204(i). And under certain circumstances, the Board itself is the named respondent (and thus a litigant) in judicial proceedings seeking review of Board decisions. *See* 5 U.S.C. § 7703(a)(2). It can also review rules of the Office of Personnel Management, another executive agency. *Id.* § 1204(a)(3).

## II.     The Present Controversy

Plaintiff was first nominated by President Biden to serve as a Member of the MSPB on June 24, 2021. Compl. ¶ 24. She was renominated on January 4, 2022. *Id.* The Senate confirmed her on May 25, 2022, and she was sworn in as a Member of the Board on June 1, 2022. *Id.* She was sworn in as Chairman of the Board on March 14, 2024. *Id.* ¶ 25.

On February 11, 2025, the Deputy Assistant to the President and the Deputy Director of the White House Presidential Personnel Office informed Plaintiff that she was being removed from her position. Compl. ¶ 26. That same day, Plaintiff filed this lawsuit, *see generally* Compl., and moved for a temporary restraining order, requesting that she be reinstated. *See* ECF No. 2-4.

## **LEGAL STANDARD**

Plaintiff seeks a temporary restraining order—"an extraordinary remedy never awarded as of right." *Winter v. NRDC*, 555 U.S. 7, 24 (2008). To obtain such extraordinary relief, a plaintiff "must show (1) '[she] is likely to succeed on the merits,' (2) '[she] is likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in [her] favor,' and (4) issuing 'an injunction is in the public interest.'" *Hanson v. District of Columbia*, 120 F.4th 223, 231 (D.C. Cir. 2024) (quoting *Winter*, 555 U.S. at 20); *see also Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 109 (D.D.C. 2022) ("The decision of whether to award a TRO is analyzed using the same factors applicable to preliminary injunctive relief[.]" (cleaned up)). When "the Government is the opposing party," the assessment of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiff must do more than merely show the possibility of prevailing on the merits, but rather must show "a substantial likelihood of success on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Plaintiff also must establish irreparable harm, as failure do so constitutes "grounds for refusing to issue [preliminary relief], even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *accord* Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) (irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction" as "[o]nly when the

4

threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief").

Mandatory injunctions that "would change the status quo" are disfavored as "an even more extraordinary remedy" than the typical preliminary injunction, "especially when directed at the United States Government." *Kondapally v. USCIS*, No. CV 20-00920 (BAH), 2020 WL 5061735, at *3 (D.D.C. Aug. 27, 2020) (citations omitted); *see also Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 36 (D.D.C. 2000) ("In this Circuit, 'the power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised.'" (quoting *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969))). "Plaintiffs seeking this type of relief . . . face 'an additional hurdle' when proving their entitlement to relief," and courts "exercise extreme caution in assessing" such motions. *Kondapally*, 2020 WL 5061735, at *3. "As a rule, when a mandatory preliminary injunction is requested, the district court should deny such relief unless the facts and law clearly favor the moving party." *Id.* (cleaned up).

## ARGUMENT

Plaintiff fails to satisfy any of the factors necessary for the extraordinary remedy she seeks—a mandatory temporary restraining order compelling Defendants, including the President, to reinstate her to a position from which she has been removed. Such an order would be unprecedented and unwarranted, and should be rejected.

### I. Plaintiff Cannot Succeed On The Merits

Plaintiff alleges that the President did not validly remove her from office because members of the Merit Systems Protection Board may be removed only for "inefficiency, neglect of duty, or malfeasance in office." Compl. at 3, 5 (quoting 5 U.S.C. § 1201). But Board members are principal officers who lead a freestanding component within the executive branch and exercise executive power.

Accordingly, because the entirety of the executive power is vested in the President, *see* Art. II, § 1, cl. 1, the President must be able to remove Board members at will.

      **A.**      **At-Will Removal is the General Rule, and MSPB Does Not Fit Within Any Exceptions.**

**1.** The Constitution vests the entirety of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed." Art. II, § 1, cl. 1; *id.* § 3; *see also Severino v. Biden*, 71 F. 4th 1038, 1043–44 (D.C. Cir. 2023). "[A]s a general matter," the executive power encompasses "the authority to remove those who assist [the President] in carrying out his duties." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513–14 (2010). Without such power, the President would be unable to control those who aid him in executing the laws and "could not be held fully accountable for discharging his own responsibilities." *Id.* at 514.

For nearly a century, the Supreme Court has repeatedly reaffirmed "the President's power to remove—and thus supervise—those who wield executive power on his behalf." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020) (citing *Myers v. United States*, 272 U.S. 52 (1926)). The Supreme Court has recognized "only two exceptions to the President's unrestricted removal power." *Id.* First, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court held that Congress could impose for-cause removal restrictions on "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. Second, in *Morrison v. Olson*, 487 U.S. 64 (1988), and *United States v. Perkins*, 116 U.S. 483 (1886), the Court recognized an exception "for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 591 U.S. at 218. Those exceptions represent the "outermost constitutional limits of permissible restrictions on the President's removal power" under current precedent. *Id.* (quoting *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 196 (D.C. Cir. 2018) (Kavanaugh, J., dissenting)).

**2.** Members of the MSPB do not fit within either of these exceptions. They are not inferior officers with narrowly defined duties; to the contrary, they are principal officers appointed by the President with Senate confirmation, *see* U.S. Const. art. II, § 2, cl. 2; 5 U.S.C. § 1201, oversee their own

department, and are not subservient to any other principal officer, *see* 5 U.S.C. § 1204.  *See also Free Enterprise Fund*, 561 U.S. at 511 (explaining that a department "is a freestanding component of the Executive Branch, not subordinate to or contained within any other such component").  Nor does the *Humphrey's Executor* exception apply.  Nor does the *Humphrey's Executor* exception apply.  As the Supreme Court made clear in *Seila Law*, that exception is limited to "multimember bodies with 'quasi-judicial' or 'quasi-legislative' functions" that do not exercise "*any* executive power."  *Seila Law*, 591 U.S. at 216–17 (quoting *Humphrey's Executor*, 295 U.S. at 632) (emphasis added).  That narrow exception does not encompass the MSPB.

The MSPB is no "mere legislative or judicial aid," *Seila Law*, 591 U.S. at 199.  It is an independent agency that performs many executive functions.  For instance, the MSPB has the authority to "order any Federal agency or employee to comply with any order or decision issued by the Board … and enforce compliance with any such order," 5 U.S.C. § 1204(a)(2); *see also Seila Law*, 591 U.S. 197 at 219 (explaining that the CFPB Director exercises executive power because he "may unilaterally issue final decisions awarding legal and equitable relief in administrative adjudications.").  It also "hear[s], adjudicate[s], or provide[s] for the hearing or adjudication" of matters within its jurisdiction and, "subject to otherwise applicable provisions of law, take[s] final action on any such matter."  5 U.S.C. § 1204(a)(1).  The MSPB can review rules of the Office of Personnel Management, another executive agency, *id.* § 1204(f).  It has independent litigating authority to send its own attorneys (not Department of Justice attorneys) to litigate civil actions outside the Supreme Court in connection with any of its functions.  *Id.* § 1204(i); *see also Buckley v. Valeo*, 424 U.S. 1, 138–40 (recognizing interpreting and enforcing law through litigation as executive function).  And under certain circumstances, the Board itself is the named respondent (and thus a litigant) in judicial proceedings seeking review of Board decisions.  *See* 5 U.S.C. § 7703(a)(2).  These features distinguish the Board from a purely adjudicatory body.  *Contra Wiener v. United States*, 357 U.S. 349, 356 (1958) (upholding removal restriction on member of purely adjudicatory body).

In short, the MSPB wields executive power and must be accountable to the President through the removal power.  *See Seila Law*, 591 U.S. at 204 ("The President's power to remove—and thus

7

supervise—those who wield executive power on his behalf follows from the text of Article II[.]").

**3.** Plaintiff's contrary contention rests largely on an overbroad reading of *Humphrey's Executor* and *Wiener*. Plaintiff seeks to stretch them beyond their facts to reach a Board that exercises substantial executive power. The Supreme Court in *Seila Law* made clear, however, that neither *Humphrey's Executor* nor *Wiener* extends so far. After *Seila Law*, "only a very narrow reading of those cases is still good law" and there is "little to nothing is left of the *Humphrey's* exception to the general rule that the President may freely remove his subordinates." *Severino v. Biden*, 71 F.4th 1038, 1050 (D.C. Cir. 2023) (Walker, J., concurring).[1]

In *Humphrey's Executor*, the Supreme Court upheld the constitutionality of a provision prohibiting removal of Federal Trade Commissioners absent "inefficiency, neglect of duty, or malfeasance in office." 265 U.S. at 632. Despite reaffirming *Myers*'s then-recent holding that the President "has unrestrictable power … to remove purely executive officers," *id.* at 632, *Humphrey's Executor* concluded that *Myers* did not control because the FTC Commissioner at issue was "an officer who occupies no place in the executive department and who exercises no part of the executive power vested by the Constitution in the President," *id.* at 628. Instead, *Humphrey's Executor* understood the FTC to be "an administrative body" that "carr[ied] into effect legislative policies" and "perform[ed] other specified duties as a legislative or judicial aid." *Id.* Those duties, according to the Court, "c[ould ] not in any proper sense be characterized as an arm or an eye of the executive." *Id.* The Court understood the FTC not to be exercising executive power at all but rather to "act[] in part quasi legislatively and in part quasi judicially." *Id.* On that understanding, *Humphrey's Executor* found no constitutional problem with restricting the removal of FTC Commissioners.

But *Humphrey's Executor* rested on a fiction, and its reasoning has since been "repudiated" by the Supreme Court. *Seila Law*, 591 U.S. at 239 (Thomas, J., concurring in part). As early as *Morrison*,

---

[1] While the government acknowledges that whatever little remains of *Humphrey's Executor* is binding on this Court until overturned by the Supreme Court, *see Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023), it preserves the argument that *Humphrey's Executor* was wrongly decided. *See, e.g.*, *Seila Law*, 591 U.S. at 239–51 (Thomas and Gorsuch, JJ., concurring in part) (advocating for the Court to "reconsider *Humphrey's Executor in toto*").

the Supreme Court retreated from *Humphrey's Executor*'s "quasi-legislative" or "quasi-judicial" rationale, noting that "it is hard to dispute that the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree." 487 U.S. at 690 n.28, 691; *see also Kuretski v. C.I.R.*, 755 F.3d 929, 939–45 (D.C. Cir. 2014) (holding that the Tax Court exercises executive, not judicial, power). And *Seila Law* observed that *Humphrey's Executor*'s "conclusion that the FTC did not exercise executive power has not withstood the test of time." 591 U.S. at 216 n.2; *see also Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013) (noting that agencies may engage in activities that "take 'legislative' and 'judicial' forms, but [those activities] are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power'").

Plaintiff's insistence that the MSPB performs adjudicatory functions, has a limited ambit, and reports to Congress, Pl.'s Mot. at 8–9, is thus beside the point. The Board exercises executive authority and is therefore not comparable to the FTC as understood by the Supreme Court in *Humphrey's Executor*. *See Humphrey's Executor*, 295 U.S. at 627 (describing FTC Commissioner as officer "who exercises no part of the executive power"). As *Seila Law* made clear, the *Humphrey's Executor* exception applies only to a multimember body that "was said not to exercise *any* executive power," *Seila Law*, 591 U.S. at 198, which cannot be said of the MSPB.

Plaintiff's policy arguments about the supposed "unique" "need for independence" at the MSPB, Pl.'s Mot. at 9–10, do not move the needle. Similar arguments were made and rejected in *Seila Law* itself. *Cf. Seila Law*, 591 U.S. at 273 (Kagan, J., concurring in part) (urging that Congress had strong policy justifications for enacting the tenure protections for the CFPB Director that were held invalid by the majority). Indeed, the Supreme Court has since rejected that entire mode of reasoning: in *Collins v. Yellen*, 594 U.S. 220 (2021), the Court refused to entertain arguments about whether the functions of certain executive agencies were relatively less significant than others. The Court explained that "[c]ourts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies" and that "the constitutionality of removal restrictions" does not "hinge[] on such an inquiry." *Collins*, 594 U.S. at 253. Because the MSPB exercises executive power, it does not fall within the narrow *Humphrey's Executor* exception. Board members must therefore be

9

removable at will by the President.

Similarly, the fact that the MSPB may be accountable in other ways, Pl.'s Mot. at 10, cannot compensate for the President's inability to control the Board members through removal. *See Free Enterprise Fund*, 561 U.S. at 504 (noting "[b]road power" over the functions of the inferior officers at issue there "is not equivalent to the power to remove Board members").

### B. Plaintiff cannot show entitlement to reinstatement.

Plaintiff is also deeply mistaken in seeking judicial reinstatement to a principal office.[2] When principal officers have been removed from their posts, they generally have challenged that removal in suits for back pay. *See Humphrey's Executor*, 295 U.S. at 612 (challenge sought "to recover a sum of money alleged to be due"); *Myers*, 272 U.S. at 106 (same); *Wiener*, 357 U.S. at 349–51(same). The President cannot be compelled to retain the services of a principal officer whom the President no longer believes should be entrusted with the exercise of executive power. Such a remedy would raise grave separation-of-powers concerns and undermine the objective of electoral accountability within the Executive Branch that animated the holdings in *Free Enterprise Fund* and *Seila Law*.

## II. Plaintiff Fails To Identify Any Irreparable Harm

The "high standard for irreparable injury"—even higher here insofar as Plaintiff requests a mandatory injunction that would alter the status quo, *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997)—requires a two-fold showing by Plaintiff: First, because an irreparable injury "must be both certain and great," Plaintiff "must show 'the injury complained of is of such imminence that there is a "clear and present" need for equitable relief to prevent irreparable harm.'" *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). And second, "the injury must be beyond remediation." *Id.*

Plaintiff has failed to meet her burden for either of the two required showings. She principally

---

[2] Plaintiff contends that she "asks only that the Court preserve the status quo," Pl.'s Mot. at 12, but she is, in fact, seeking functional reinstatement to her office. While she appears to believe she has not yet been removed from office, *see, e.g.*, Pl. Mot at 2 (requesting injunction to prevent defendants "from removing Ms. Harris from her office or in any way treating her as having been removed"), she was informed of her removal on February 10, 2025, "effective immediately." Pl.'s Mot, Ex. A.

contends that her ongoing harm stems from the deprivation "of her statutory entitlement to serve as a Member of the MSPB." Pl.'s Mot. at 10–11. But Plaintiff cites no injury of a kind that the Supreme Court has recognized as irreparable in this context. *See Sampson*, 415 U.S. at 92 & n.68 (holding loss of income, face, and reputation do not amount to irreparable harm). Indeed, court after court in this Circuit and others has concluded that loss of employment does not constitute irreparable harm. *See, e.g.*, *Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155, 1158 (7th Cir. 1998); *Davis v. Billington*, 76 F. Supp. 3d 59, 65–66 (D.D.C. 2014) (collecting cases); *Farris v. Rice*, 453 F. Supp. 2d 76, 79–80 (D.D.C. 2006) ("cases are legion holding that loss of employment does not constitute irreparable injury"). And to the extent that Plaintiff attempts to distinguish her case from a "garden-variety employment dispute," Pl.'s Mot. at 11, courts have repeatedly rejected the notion that the deprivation of a unique, singular, or high-level position is any more of an irreparable injury. *See Hetreed*, 135 F.3d at 1158 (loss of position as senior manager leading audit department not irreparable injury); *Marxe v. Jackson*, 833 F.2d 1121, 1122 (3d Cir. 1987) (division manager); *Rubino v. City of Mount Vernon*, 707 F.2d 53 (2d Cir. 1983) (mayoral-appointed City Assessor); *Franks v. Nimmo*, 683 F.2d 1290, 1291 (10th Cir. 1982) (Associate Chief of Staff for Research and Development position at Department of Veterans Affairs Medical Center); *EEOC v. City of Janesville*, 630 F.2d 1254, 1256 (7th Cir. 1980) (Chief of Police); *Levesque v. Maine*, 587 F.2d 78, 79 (1st Cir. 1978) (Maine Commissioner of Manpower); *Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 2, 4 (D.D.C. 1998) (Chief of Information Management Systems, Office of Inspector General); *Burns v. GAO Emps. Fed. Credit Union*, No. 88-3424, 1988 WL 134925, at *1–2 (D.D.C. Dec. 2, 1988) (President of Credit Union Board of Directors).

Plaintiff also argues that the purported deprivation of her "statutory right to function" as a Member of the MSPB constitutes irreparable harm. Pl.'s Mot. at 10. She relies for this proposition solely on two cases that are plainly distinguishable and that were both later vacated by the D.C. Circuit: *Berry v. Reagan*, No. 83-3182, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983), *vacated*, 732 F.2d 949 (D.C. Cir. 1983), and *Mackie v. Bush*, 809 F. Supp. 144, 146 (D.D.C.), *vacated sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993).

In *Berry v. Reagan*, President Reagan removed several members of the Commission on Civil

11

Rights, an action that left the Commission without a quorum and meant that it could not complete a report it was statutorily required to complete by a date certain. *Id.* at *1, *5. But Plaintiff and MSPB are not similarly situated to the plaintiffs in *Berry*. First, the MSPB "continues to operate" with a quorum, *see* Eric Katz, *Trump fires one-third of federal employee appeals board*, Government Executive (Feb. 11, 2025, 3:38 p.m.), https://www.govexec.com/management/2025/02/trump-fires-one-third-federal-employee-appeals-board/402912/ (noting "the board will maintain its quorum").[3] *See English v. Trump*, 279 F. Supp. 3d 307, 335 (D.D.C. 2018) (distinguishing *Berry* from case in which plaintiff who sought to affirm her entitlement to role as Acting Director of CFPB). And second, like in *English*, "any such harm" to Plaintiff coming solely from her not functioning as a Member of the MSPB "can be remediated in the ordinary course of this case." *Id.* That stands in contrast to *Berry*, in which "any harm suffered by the commissioners was plainly irreparable because the commission would have expired and they could not have been reinstated to it." *Id.*

Similarly, in *Mackie v. Bush*, the President sought to remove the majority of the Board of Governors of the Postal Service Board, an action that the court worried would "be irrevocably disruptive of the Board's function." 809 F. Supp. at 146. But the MSPB is capable of functioning without Plaintiff, since it continues to have the quorum necessary to conduct its business. *See* Katz, *supra*; 5 C.F.R. § 1200.3 (providing procedures for decisions when only two Board members present). Moreover, in *Mackie* (a decision likewise vacated by the Court of Appeals, *see* 10 F.3d 13), the district court entered an injunction preventing the removal of the governors *before* their removal was effectuated, *id.* at 148; it did not purport to reinstate an officer who has already been removed, the far more intrusive step that Plaintiff asks this Court to take here. *Mackie* and *Berry* are thus insufficient to "show irreparable injury during whatever modest amount of time may be necessary to adjudicate an expedited motion for preliminary injunction." Order, *Dellinger v. Bessent*, No. 25-5025 (D.C. Cir.) (Katsas, J., concurring) (doubting ability of removed head of Office of Special Counsel to show

---

[3] Even if the MSPB were left without a quorum, *Berry* would still be distinguishable. In *Berry*, the harm was irreparable in part because the commission was set to expire. 1983 WL 538, at *5. But here, the MSPB will not cease to exist and could resume its functioning upon the resumption of a quorum.

irreparable harm in similar circumstances).

Plaintiff's remaining claims of irreparable harm are similarly unavailing. Plaintiff first claims that temporary restraining order is warranted because another person could be nominated and confirmed such that her claim to the role will be mooted. Pl.'s Mot. at 11. But this is too speculative a basis for injunctive relief. *See English*, 279 F. Supp. 3d at 335 (rejecting argument that traditional damages remedy or declaratory judgment would be insufficient once President nominated new candidate because "it is entirely speculative how long it could take for the President to nominate and the Senate to confirm a permanent CFPB Director"). That is especially so in the context of Plaintiff's request for a temporary restraining order, which can last at most 28 days. Fed. R. Civ. Pro. 65(b)(2).

Plaintiff next argues that denying her preliminary relief would deprive her and the MSPB of their ability to fulfill their mandate to federal employees. Pl.'s Mot. at 11 (citing *Berry*, 1983 WL 538, at *5). But, as explained, unlike in *Berry*, the MSPB can continue to fulfill its mandate without Plaintiff, since it continues to have a quorum. And in any event, this contention simply repackages Plaintiff's contention that she is the best person for the position and that the President had no sound reason for removing her—*i.e.*, that a Board with Plaintiff as a member would better serve the agency's mission than one without her. That is the President's prerogative to determine.

## III. The Balance Of Equities and Public Interest Favor Defendants

Granting the extraordinary relief requested would be an unprecedented intrusion into the President's authority to exercise "all of" the "executive Power" of the United States. *Seila Law*, 590 U.S. at 203. Defendants are aware of only a single instance in which a federal court effectively reinstalled a member of a multimember agency commission who had been removed. *See Berry*, 1983 WL 538. That case was later vacated, *see Berry v. Reagan*, 732 F.2d 949, 949 (D.C. Cir. 1983) (per curiam), and is distinguishable. Part of the district court's reasoning there was that the commission's "'only purpose'" was "'to find facts which [could] subsequently be used as a basis for legislative or executive action,'" leading the district court to express an understanding that the Commission functioned as a "legislative agency." *Id.* at *2. Given the MSPB's clear exercise of executive authority, *see supra* p. 7, there can be no misconception that the MSPB is similarly a "legislative agency." Because

13

it is instead an agency exercising executive authority, functionally reinstalling one of its principal officers would work a harm to the Executive, and to the constitutional separation of powers, that is transparently irreparable. That harm is particularly pronounced here, given the MSPB's role in overseeing and managing the internal workforce of the Executive Branch.

Moreover, the public interest is better served by an MSPB member who holds the President's confidence and, accordingly, will more effectively serve him in executing his duties as Chief Executive. "[T]he Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson*, 415 U.S. at 83 (quoting *Cafeteria and Restaurant Workers Union, Local 473, A.F.L.-C.I.O. v. McElroy*, 367 U.S. 886, 896 (1961)). It is especially important that the President have such latitude to oversee the MSPB, which performs a critical role in managing the Executive Branch's own workforce. *See Seila Law*, 591 U.S. at 204.

## CONCLUSION

For the reasons above, the Court should deny Plaintiff's motion for a temporary restraining order.

Dated: February 13, 2025

Respectfully submitted,

BRETT A. SHUMATE
*Acting Assistant Attorney General*

CHRISTOPHER R. HALL
*Assistant Branch Director*

/s/ *Madeline M. McMahon*
MADELINE M. MCMAHON
(DC Bar No. 1720813)
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 451-7722
Email: madeline.m.mcmahon@usdoj.gov

*Counsel for Defendants*