UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHY A. HARRIS, in her personal capacity and in her official capacity as Member of the Merit Systems Protection Board,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT BESSENT, in his official capacity as Secretary of the Treasury, et al.,<br><br>Defendants. | Civil Case No. 1:25-cv-00412-RC |

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION
FOR A TEMPORARY RESTRAINING ORDER**

In its Opposition, the government makes no effort to argue that it complied with the law when it removed Plaintiff from her position as a Member of the MSPB. Rather, it argues that the statutory provisions of the CSRA that provide for her appointment and limit her removal are themselves unconstitutional. Given the strong presumption of constitutionality due to Congress's acts,[1] given that in nearly a half-century of considering cases arising under the CSRA the Supreme Court has not even hinted that any of its provisions might be unconstitutional,[2] and given binding Supreme Court precedent directly on point,[3] the government's argument is truly for another day and another court. Accordingly, Plaintiff limits this response principally to the question of whether she will suffer irreparable injury absent entry of the relief she seeks here.

---

[1] *Califano v. Aznavorian*, 439 U.S. 170, 175 (1978).

[2] *See, e.g.*, *United States v. Fausto*, 484 U.S. 439, 444-45 (1988); *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012); *Perry v. MSPB*, 582 U.S. 420, 423 (2017).

[3] *Humphrey's Executor v. United States*, 295 U.S. 602, 625-26, 629 (1935). Indeed, the Solicitor General has conceded that *Humphrey's Executor* is still good law. *See* S. Harris letter to R. Durbin, Ranking Member, Senate Judiciary Committee (Feb. 12, 2025) ("the Department intends to urge the Supreme Court to overrule that decision") (attached as Ex. B).

## I. Plaintiff Will Suffer Irreparable Injury Absent Relief From This Court.

Plaintiff has brought this action in both her individual and official capacities. While distinct, the injuries she has suffered and continues to suffer in those capacities are significant and irreparable. No order of retroactive relief can fully redress them.

### A. Irreparable harm in Plaintiff's official capacity

#### 1. *Plaintiff is deprived of ability to fulfill official duties*

In her official capacity, Plaintiff is being deprived of the ability to fulfill the duties entrusted to her upon her appointment. She was appointed and confirmed by the Senate because her "demonstrated ability, background, training, or experience [] especially qualified [her] to carry out the functions of the Board." 5 U.S.C. § 1201. Her unlawful removal deprives her of the ability to share her deliberative expertise in the adjudication of cases before the MSPB. Each case that is decided without her expertise, input, and vote is a continuing and irreparable harm.

The longer Ms. Harris is removed from her position, the greater the deprivation and the greater the disruption to the processes of the MSPB. Plaintiff requests in Count 2 of her Complaint to have the Court set aside any action the MSPB takes in her absence as unlawful. Thus, absent the requested relief, any cases decided in her absence will need to be re-deliberated and re-voted by all the Board members. This will not only disrupt and seriously slow the functions of the Board, it will have deleterious results for parties who expect and deserve final and fully-deliberated Board decisions in their adjudications. Setting aside weeks, months, or even years of actions, and untold numbers of decisions will be extremely disruptive.

Indeed, since Ms. Harris was illegally terminated, the Board has ceased issuing decisions due to the uncertainty caused by the Defendants' actions.[4] Typically, during Ms. Harris's tenure, the Board issues between 3-11 decisions per day.[5] Thus, the longer the deprivation, the longer the disruption to the Board and to Ms. Harris.

When assessing the irreparable nature of the harm to Ms. Harris, "it is equally important to examine the disruptive effect of a denial of such relief." *Berry v. Reagan*, No. 83-3182, 1983 WL 538, at *15 n.4 (D.D.C. Nov. 14, 1983), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983). Here, although there is now a quorum with two remaining Board members, that will change in two weeks when Member Limon's term ends on March 1, 2025.[6] The Board will be without a quorum and its work will grind to a halt.

Thus, there are no facts to show that maintaining Ms. Harris as a Member would have any "disruptive effect" on the adjudicative functions of the Board. Rather, removing her would be significantly more disruptive to the Board than returning her to her role during the pendency of this litigation.

In addition, the government has stated that it intends to replace Ms. Harris with someone like-minded to the President; *i.e.*, it asserts that the MSPB is better served by someone who "holds the President's confidence and, accordingly, will more effectively serve him in executing his duties as the Chief Executive." Def. Opp. at 14. But this assertion flies in the face of Congress's intent to

---

[4] *See* https://www.mspb.gov/decisions/nonprecdec.htm (showing that as of February 14, 2025, no MSPB decisions have been issued since February 10, 2025).

[5] *See id.*

[6] Mr. Limon could potentially hold over for up to one year after the conclusion of his statutory term, if he chooses to do so, and if there is no confirmed nominee to take his place. 5 U.S.C. §1202(b). However, whether he does so and whether he is permitted to do so is purely speculative.

have an independent agency, whose members serve staggered terms and specifically deprives Ms. Harris of her official responsibility to execute her uniquely bipartisan, independent role on the Board. Indeed, the Board Members do not have any statutory authority or role to "serve" the President. By disrupting the intended staggered terms that span administrations and removing Ms. Harris prematurely, the Defendants have caused Ms. Harris irreparable harm as she is prevented from exercising her expertise on the Board for the entirety of the term that was intended for her by Congress.

Under 5 U.S.C. § 1202, it is not the President's prerogative to prematurely end a duly-confirmed Member's term except for the causes enumerated under the statute. This Board was not established to execute the agenda of any particular President. As noted in *Seila Law LLC v. Consumer Financial Protection Bureau,* 591 U.S. 197, 199 (2020), the Board's staggered terms are intended to ensure the accumulation of institutional knowledge and the bipartisan nature of the Board. This is vital as Board Members are responsible for the interpretation of law that is set by Congress and the Courts over decades of precedent. It was not the intent of Congress to create an institution where there is an abrupt shift in leadership that would allow it to be totally realigned with the Presidential prerogatives, such as with the single-Director configuration of the CFPB. That is, by design Members of the MSPB are not responsible for promoting or enforcing policy set by the President or in furthering the President's political agenda.

   2. *Plaintiff in her Official Capacity suffers injury due to her illegal termination*

Contrary to defendants' representations, the Board is hampered in several respects by only having two members as opposed to the full complement. If the two remaining members split on a decision, the matter reverts to the administrative judge's initial decision or may be held until a third Board member is confirmed. *See, e.g., Brinson v. Dep't of Navy*, 2023 WL 5899869 (2023). The

illegal termination prevents Ms. Harris from exercising her official responsibility in providing a deciding vote. It also deprives parties of the statutorily-prescribed expectation of receiving a final decision from the Board.

Recusals by Board members also pose a serious issue when there are only two Board members. Mr. Kerner, the Acting Chairman of the MSPB, due to his prior position as Special Counsel at the Office of Special Counsel, is currently required to recuse from "any particular matter involving specific parties in which [he] know[s] [he] previously participated at the Office of Special Counsel, unless [he] is first authorized to participate, using the factors in 5 C.F.R. §2635.502(d)."[7] Mr. Kerner's appointment extends until March 1, 2030, and thus this will be a continuing issue when he recuses and there is only one other Board member to vote on such cases. In such instances, the Board cannot issue a decision, and the matter reverts to the initial decision of the administrative judge or is held until another Board Member can join in the deliberation. Nor will the Board be able to grant stays of prohibited personnel practices brought before it by the Office of Special Counsel with only one voting Board Member. It is a fact that Mr. Kerner has recused from many whistleblower cases. *See, e.g.*, *Reese v. Dep't of the Navy*, 2025 WL 371023; *Young v. DHS*, 2024 WL 5074870; *Maclean v. DHS*, 2024 WL 4799811; *Collier v. SBA*, 2024 WL 4624610.[8]

The harm caused by lack of quorum is not speculative. Indeed, during the prior Trump administration, the lack of quorum paralyzed the Board from rendering decisions at the Board level. *See* MSPB, *Frequently Asked Questions about the Lack of Quorum Period and Restoration*

---

[7] *See* https://oge.gov/web/oge.nsf/Officials%20Individual%20Disclosures%20Search%20Collection?OpenForm.

[8] Whistleblower cases generally constitute approximately 25% of the Board's docket, and there are hundreds of cases pending for the Board to decide from the 2022-2025 timeframe.

*of the Full Board* (June 3, 2024).[9] This resulted in a backlog of nearly 3800 cases. *See* MSPB, Lack of Quorum and the Inherited Inventory (Jan. 31, 2025).[10] Parties went without decisions for years. Ironically, in other matters currently pending, Defendants repeatedly rely on the MSPB as a crucial adjudicative body for federal employees to seek redress. *See, e.g.*,*Am. Foreign Serv. Ass'n, et. al., v. Trump, et. al.*, Case No. 25-cv-00352-CJN (D.D.C) Dkt No. 20; *Am. Fed'n of Gov't Emp., et. al. v. Ezell*, Civil Action No. 1:25-cv-10276 (D.Mass) Dkt No. 45.

### 3. *Plaintiff's irreparable harm derives from federal statute and the Constitution*

Plaintiff's irreparable harm results from the President's violation of her statutory for-cause protection and the violation of the Constitution's separation of powers. These violations cause irreparable harm to Plaintiff.

In *Callicotte v. Carlucci*, the Court observed:

> The government, relying on *Sampson v. Murray*, 415 U.S. 61 (1974), urges the Court to adopt a higher standard for interim injunctive relief in federal personnel actions. The Supreme Court in *Sampson* required the plaintiff, a federal employee who alleged that the agency dismissed her without following the procedures under the Civil Service Act, to show irreparable injury of an "extraordinary degree" for injunctive relief, *id*. at 92 n.68. The Court predicated its imposition of a higher standard on the grounds that the government must be given wide latitude to handle its own internal personnel affairs. *Id*. at 83. The Court, however, did not and has not expressly extended this rule to employees alleging violations of their statutory civil rights. ***Such challenges raise equally compelling, if not stronger governmental interests, in the enforcement of our nation's civil rights laws.***

698 F.Supp 944, 949 (D.D.C. 1988) (emphasis added).

Plaintiff seeks to enforce her statutory right to hold the position to which she was appointed and confirmed–for a 7-year term–and to vindicate constitutional rights derived from the separation of powers. The importance of the governmental interest in the enforcement of our nation's civil

---

[9] Available at https://www.mspb.gov/FAQs_Absence_of_Board_Quorum_6032024.pdf.
[10] Available at https://www.mspb.gov/foia/files/HQ_Case_Processing_Data.pdf.

service law, as well as the constitutional rights place this as an extraordinary matter worthy of immediate interim relief by the court. *See, e.g., Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 299-300 (D.C. Cir. 2006) (dismissal in violation of First Amendment constitutional rights "for even minimal periods of time, unquestionably constitutes irreparable injury."). Extending the higher standard of *Sampson* to this unique case would undermine the vital interest in enforcing the CSRA and upholding constitutional principles.

### 4. *Illegal termination of Plaintiff upsets the structure of the MSPB*

Allowing Ms. Harris's illegal termination to stand for even a short period would violate the bipartisan, independent nature of the Board. The MSPB's unique need for independence distinguishes it from the CFPB and the FHFA. The CFPB and FHFA were designed by Congress to regulate and oversee outside actors engaging in the marketplace. The MSPB is vastly different in function and purpose. The MSPB lacks any regulatory oversight or powers and the Board Members' independence is fundamental to its purpose. The MSPB's mission is to "Protect the Merit System Principles and promote an effective Federal workforce free of Prohibited Personnel Practices."[11] It ensures that federal employees have an adjudicatory process that consistently and fairly applies the merit systems principles to individual cases on adverse actions, whistleblower retaliation appeals, and violations of USERRA and VEOA, amongst other federal civil service adjudications. The independence of Board Members is critical to ensuring that these adjudications are free from political influence or retaliation. A Board that is removable at the whim of the President severely undermines the confidence of the federal employees or veterans availing themselves of this system. For-cause removal protections provide assurance of bipartisan independence so that the Board members are able to independently assess, deliberate, and rule on

---

[11] https://www.mspb.gov/about/about.htm

matters. This is critical to ensure that the Federal workforce functions as the CSRA intended—free from political influence. Indeed, holding otherwise would be chilling to the remaining Board Members, the administrative judges who adjudicate the initial appeals, and the federal employees who seek redress.

Defendants state that their purpose in removing Plaintiff is to dismantle the Board's independence by having the President appoint someone who will "more effectively serve him." Def. Opp. at 14. This is directly at odds with the Merit System Principles that the MSPB is tasked with enforcing, including protecting employees from "arbitrary action, personal favoritism, or coercion for partisan political purposes." 5 U.S.C. § 2301(b)(8)(a). In short, the independence of the MSPB is an essential component of the merit system established by Congress in the CSRA. Each day that this independence is diminished by Defendants' unlawful actions is a serious and irreparable harm to Ms. Harris in her official capacity as a Board Member.

### B. Irreparable harm in Plaintiff's individual capacity

As an individual, Plaintiff is being deprived of the honor and privilege of serving her nation and fulfilling the trust bestowed upon her by the President when he appointed her as a Member of the MSPB. That this is a great honor cannot be gainsaid; so too, there can be no serious dispute that the injury occasioned by her unlawful removal from that role is "both certain and great" and "actual and not theoretical." *Chaplaincy of Full Gospel Churches*, 454 F.3d 290, 297 (D.C. Cir. 2006) (*quoting Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). Nor can there be any dispute that this harm is "beyond remediation," *id.*; Plaintiff's appointment was for a limited term and no court can give her back the days that she is unlawfully stripped of her office.

Plaintiff has been deprived of her statutory right to function in her office, following the appointment of the President and confirmation by the Senate to an office with for-cause removal

protections. *See Berry v. Reagan*, No. 83-3182, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983) (per curiam); *Mackie v. Bush*, 809 F. Supp. 144, 147 (D.D.C. 1993), *vacated as moot sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993) (per curiam). When the President nominates and the Senate confirms a person to execute specific official functions, and that person is unlawfully fired, she suffers an immediate and irreparable loss of her legally vested right to personally function in that official position.

The government in its Opposition relies heavily on *Sampson v. Murray*,[12] but this reliance is misplaced. *Sampson* has come to stand for the proposition that "in the absence of special circumstances . . . recoverable economic losses are not considered irreparable." *Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1507 (D.C. Cir. 1995) (citing *Sampson*, 415 U.S. at 90 ("temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury")).

Plaintiff does not claim, however, that her loss of salary and benefits constitutes irreparable injury—she did not accept appointment to the Board out of a desire to earn less than a senior government attorney.[13] Rather, her focus is on the loss of her ability to fulfill the duties and responsibilities entrusted to her for the remainder of her term. No form of retroactive relief can give her back the days of her term that the Defendants have unlawfully taken from her. Absent injunctive relief, her Board position could be filled by another person and no form of retroactive relief could undo this appointment or retroactively substitute Plaintiff's input into the Board's deliberative processes. And because there is no relief that could be fashioned to restore to her what

---

[12] 415 U.S. 61 (1975)

[13] *See* American Relief Act, 2025 (Public Law 118-158, Dec. 21, 2024) (the freeze on the payable pay rates for certain senior political appointees will continue through March 14, 2025).

the Defendants have unlawfully taken, her injuries are truly irreparable and without the interdiction imposed by *Sampson*.

The irreparable harm suffered by Ms. Harris is therefore of a different nature than the harm noted in the various cases cited by Defendants regarding lower-level federal employee and non-federal employee claims. *See* Def. Opp. at 11. The plaintiffs in those matters do not allege any harm beyond the traditional harm an employee suffers by loss of employment that can be later remedied at law. *See, e.g., Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155 (7th Cir. 1998) (alleging loss of income and reputation); *Ferris v. Rice*, 453 F. Supp. 2d 76 (D.D.C. 2006) (alleging loss of income, forced retirement, and difficulty obtaining other employment); *Marxe v. Jackson*, 833 F.2d 1121 (3d Cir. 1987) (alleging loss of ability to gather information in support of litigation). The harm outlined by Plaintiff above far exceeds that articulated by the plaintiffs in the cases cited by Defendants.

## II.  The MSPB does not perform executive functions.

In an effort to escape the reach of the Supreme Court's decision in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), Defendants argue, without citation, that the Board performs "executive functions." Def. Opp. at 7. This is a red herring. The relevant question is whether the MSPB Members exercise "executive power." *Seila Law*, 591 U.S. at 215-17. *Humphrey's Executor* distinguishes the two concepts of executive functions and executive power. In any event, the Board's authority is judicial in nature and all its arguably executive functions stem from its adjudicatory powers.

Unlike CFPB and FHFA (the agencies at issue in *Seila Law* and *Collins*[14]), the MSPB has no external or outward-facing regulatory or enforcement authority that would need to be weighed here. The MSPB is entirely an inward-facing adjudicatory Board with limited jurisdiction over federal employee appeals. Thus, MSPB does not exercise "executive power in the constitutional sense." *Humphrey's Executor*, 295 U.S. at 628.

The CFPB's functions go far beyond the authority of the MSPB. The MSPB does not conduct investigations. The MSPB relies on Congressionally approved appropriations. The MSPB is not a regulatory body. The MSPB does not prosecute matters or litigate in federal court (except as defendants in certain challenges to MSPB decisions in support of its adjudicatory function).

The Board's primary role is to adjudicate legal claims that come within the Board's jurisdiction, 5 U.S.C. § 1204(a)(1), including Title VII cases when a litigant raises a claim of discrimination in response to an adverse personnel action. *See* 5 U.S.C. § 7702. In considering Title VII claims, the Board uses the same legal standards and burdens to adjudicate the claims as used by federal courts in Title VII cases. *See e.g., Pridgen v. Off. of Mgmt. and Budget*, 2022 M.S.P.B. 31 (Sept 12, 2022).

Defendants allege, without citation, that the MSPB has a role in "managing the internal workforce of the Executive Branch." Def. Opp. at 14. Defendants misapprehend the role of the MSPB. The MSPB does not make policy decisions on how the civil service operates. That authority rests with the Office of Personnel Management, an agency that is separate from the MSPB. *See Hisler v. Gallaudet Univ*., 344 F. Supp. 2d 29, 42 (D.D.C. 2004) ("In 1978, CSRA overhauled the civil service system and created both the OPM and MSPB. Congress included in

---

[14] *Selia Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020); *Collins v. Yellen*, 594 U.S. 220 (2021).

OPM's responsibilities the administration of the CSRA." (citing *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 773-74 (1985)). OPM performs enforcement actions, the MSPB does not. *Compare* 5 U.S.C. §§ 1103(a)(5) and 7703(d) *with* 5 U.S.C. §§1204(f), 1206.

The role of the MSPB is primarily to "hear, adjudicate, or provide for the hearing or adjudication, of all matters within the jurisdiction of the Board." 5 U.S.C. § 1204(a)(1). Indeed, Defendants' reliance in other matters upon the adjudicatory function of the MSPB underscores the fallacy of its arguments in the instant case.[15] So, too, defendants' seeming contention that the MSPB is predominantly executive simply because it lies within the executive branch is flat out wrong. The analysis is on the nature of the power exercised, not the placement of the agency within any particular branch. In short, the MSPB serves an independent judicial role, not an executive role.

### III.   The Equitable Factors Support Interim Relief to Plaintiff.

This Court must also reject the Defendants' argument that the balance of the equities weighs in their favor. Defendants' argument is premised on their contention that the President has unfettered powers under the Constitution to terminate any agency official, including those with for-cause removal protections. Putting aside the merits of Defendants' arguments, which contravene the Supreme Court's enduring jurisprudence in *Humphrey's Executor*, the equities overwhelmingly lie with Ms. Harris. As Judge Berman Jackson held in *Dellinger v. Bessent*, Defendants "have proffered no circumstances that required the President's hasty, unexplained action, or that would justify the immediate ejection" of a Senate-confirmed agency official "while

---

[15] *See Am. Foreign Serv. Ass'n, et. al., v. Trump, et. al.*, Case No. 25-cv-00352-CJN (D.D.C) Dkt No. 20; *Am. Fed'n of Gov't Emp., et. al. v. Ezell*, Civil Action No. 1:25-cv-10276 (D.Mass) Dkt No. 45.

the legal issue is subject to calm and thorough deliberation." Case No. 25-0385 (ABJ) (Feb. 12, 2025) at *25.

Similarly, Defendants have parroted here what they have argued and what was rejected by Judge Berman Jackson in *Dellinger*, that "the public interest in better served by a [MSPB Member] who holds the President's confidence." Indeed, "Congress contemplated and established a structure" for the MSPB "that reflects a different priority." *Id*. Like OSC, "independence is essential" to the MSPB's ability to perform its unique duties in adjudicating matters within its limited jurisdiction. And, like in *Dellinger*, "defendants have identified no impending injury or alleged constitutional error that cannot be fixed in the future that would outweigh the harm that will flow from the precise circumstance Congress deliberately chose to prohibit." *Id*. at *25-26. Therefore, these equitable factors weigh in Ms. Harris's favor.

The independence of the Board from political interference by the President is particularly important now. The administration has issued numerous executive orders that will likely result in many appeals being filed before the MSPB and cases that will inevitably come before the Members. *See e.g*., E.O. on Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative, sec. 3 (Feb. 11, 2025) (ordering agency heads to "promptly take preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law"). Under 5 C.F.R. § 1201.3(a)(6), an employee may appeal to the MSPB regarding separations, demotions or furlough for more than 30 days due to a reduction in force. *See also* Presidential Memo re: Restoring Accountability for Career Senior Executives (Jan. 20, 2025) (stating that SES employees "serve at the pleasure of the President"); under 5 U.S.C. §§7541(1), 7542, & 7543(d), an SES employee may appeal their termination to the Board. It is important now more than ever

13

that the Board maintain its bipartisan composition, institutional knowledge, and independence in facing the deluge and novelty of this administration's actions regarding the civil service.

### IV.     Conclusion

Each day that Plaintiff is deprived of faithfully deliberating and adjudicating these cases is an irreparable harm that cannot be undone; to her in both her individual and official capacities, and to the many litigants who will come before the Board expecting fair, impartial, and bipartisan adjudication of their cases. Again, with the loss of quorum imminent, reinstatement now is imperative.

For the reasons stated in Plaintiff's motion and herein, Plaintiff Cathy A. Harris's motion for a TRO should be granted and the Court should enter the proposed TRO submitted by Plaintiff.

Respectfully submitted,

 /s/ Kerrie D. Riggs

| | |
|---|---|
| Linda M. Correia, D.C. Bar No. 435027<br>CORREIA & PUTH, PLLC<br>1400 16th Street, NW, Suite 450<br>Washington, D.C. 20036<br>(202) 602-6500<br>lcorreia@correiaputh.com | Michael J. Kator, D.C. Bar No. 366936<br>Jeremy D. Wright, D.C. Bar No. 483297<br>Kerrie D. Riggs, D.C. Bar No. 995784<br>KATOR, PARKS, WEISER & WRIGHT, P.L.L.C.<br>1150 Connecticut Ave., NW, Suite 705<br>Washington, D.C. 20036<br>(202) 898-4800<br>(202) 289-1389 (fax)<br>mkator@katorparks.com<br>jwright@katorparks.com<br>kriggs@katorparks.com |
| Dated: February 14, 2025<br>        Washington, D.C. | *Attorneys for Plaintiff Cathy A. Harris* |