IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - x
CATHY A. HARRIS,                          CV No. 1:25-cv-00412-RC
in her personal capacity and in her
official capacity as Member of the   Washington, D.C.
Merit Systems Protection Board,      Thursday, February 13, 2025
                                     3:00 p.m.

                    Plaintiff,

v.

SCOTT BESSENT, et al.,
in his official capacity as
Secretary of the Treasury,

                    Defendants.
- - - - - - - - - - - - - - - - - - x

_____

                    TRANSCRIPT OF TRO HEARING
        HELD BEFORE THE HONORABLE RUDOLPH CONTRERAS
                UNITED STATES DISTRICT JUDGE
_____

APPEARANCES:

For the Plaintiff:          Linda M. Correia, Esq.
                            CORREIA & PUTH, PLLC
                            1400 16th Street, NW
                            Suite 450
                            Washington, DC 20036
                            (202) 602-6500

                            Kerrie D. Riggs, Esq.
                            KATOR, PARKS, WEISER & HARRIS, PLLC
                            1150 Connecticut Ave, NW
                            Suite 705
                            Washington, DC 20036
                            (202) 898-4800

For the Defendants:         Madeline McMahon, Esq.
                            Christopher Hall, Esq.
                            DOJ-CIV
                            1100 L Street, NW
                            Washington, DC 20005
                            (202) 451-7722

Court Reporter:             Timothy R. Miller, RPR, CRR, NJ-CCR
                            Official Court Reporter
                            U.S. Courthouse, Room 6722
                            333 Constitution Avenue, NW
                            Washington, DC 20001

**P R O C E E D I N G S**

THE DEPUTY CLERK:  This is Civil Action 25-412, Cathy Harris v. Scott Bessent, et al.

Counsel, please approach the podium and state your appearances for the record.

MS. CORREIA:  Good afternoon, Your Honor.  Linda Correia on behalf of plaintiff, Cathy Harris.

THE COURT:  Good afternoon.

MS. RIGGS:  Good afternoon, Your Honor.  Kerrie Riggs on behalf of plaintiff, Cathy Harris.

MS. MCMAHON:  Good afternoon, Your Honor.  My name's Madeline McMahon from the Department of Justice on behalf of defendants and I'm joined by my colleague Christopher Hall.

THE COURT:  Good afternoon.

All right.  It's the plaintiff's motion.  Let's hear from you first.

MS. CORREIA:  Thank you, Your Honor.

Cathy Harris was appointed by the President of the United States and confirmed by the Senate to be a member of the Merit Systems Protection Board.  She was -- served in that role since June 1st of 2022.  And she is one -- she was appointed for a seven-year term that expires in March 2028. The statute governing members of the MSPB is a law that was passed by Congress and signed by the President of the United

States just like every other law under the ordinary procedures provided for in our Constitution.  And under that law, the president's email purporting to remove Ms. Harris from her role as a member of the MSPB is directly contrary to that statute.  That statute allows for her removal only for inefficiency, neglect of duty, or malfeasance in office, and the email doesn't reference any of those for-cause reasons for removal.  So we're asking for emergency interim relief from the president's illegal order because it threatens the independence of the MSPB.

Now, the MSPB was designed by Congress and the president to preserve for the American people a workforce that is competent and honest, and to ensure that federal employees are judged by merit systems protections and principles and free from prohibited personnel practices, including retaliation for whistle-blowing.  The board is specifically designed as a three-member panel with seven years' staggered terms to be free from jeopardy of removal or fear from jeopardy of removal by the president for any reason other than the reasons that are set forth in the statute.

The MSPB provides a quasi-judicial and a quasi-legislative function.  So for a -- based on existing law from the Supreme Court -- Humphrey's Executor -- this case is on all fours with Humphrey's Executor.  Ms. Harris

is substantially likely to succeed on the merits of her claims and the -- that the president violated the law in removing her and the -- and that the order -- sorry, the other defendants may not lawfully treat the removal as valid.  The email purporting to remove her facially violates 5 U.S.C. Section 1202(d) because it does not reference any inefficiency, neglect of duty, or malfeasance in office. And the same considerations that governed in Humphrey's Executor are present here because the MSPB, like the FTC in Humphrey's Executor, fulfills quasi-judicial and quasi-legislative roles, and the Government's argument is essentially that there's a -- essentially, is that the -- Humphrey's Executor is unconstitutional, but that is the law of the land and there is a strong presumption of constitutionality of statutes like the one that governs the MSPB which has also been the law of the land for at least 50 years.  The Supreme Court and other courts have routinely referred to the functions of the MSPB as quasi-judicial in nature, including Justice Scalia himself in U.S. v. Fausto, Elgin [ph], Lachance [ph], and Lovshin [ph].

The equities in this case favor interim relief to preserve the status quo ante in light of the recent uncertainty created by the president's actions against federal workers, and it's important now, as always, for us to have a fully-functional MSPB free of legal doubt and

political interference.

The MSPB's duties are neither political nor executive.  The Government's position that the MSPB's role is one -- is executive in nature is completely unsupported because, instead, the functions of the members of the board are to exercise their judgment as a body of experts informed by experience.  They exercise their judgment independent of the political wishes of the president.  The importance of that and the distinction of the MSPB as a quasi-judicial agency repeatedly has been highlighted in court cases, including the Supreme Court, and they all note that the MSPB role focuses on -- exclusively on federal personnel issues.  It does not regulate any public or private entities.  The MSPB does not penalize any private activity, it lacks power to commence any prosecutions, and it doesn't bring suit in Article III courts.

So for all of those reasons, Your Honor, in our view, the interim relief that we are requesting is appropriate.  The public interest is in having an independent MSPB.  And we're asking for the Court to grant interim relief to allow Ms. Harris to continue in her role as a member of the MSPB.

THE COURT:  I want you to drill down on the irreparable harm and give me your best articulation of what that is.

MS. CORREIA:  The irreparable harm is specifically that she is an -- acting in her official capacity, she has a statutory duty and statutory rights to participate in the deliberative process of the MSPB as a member.  She has a seven-year term so that she can be free of any concerns about her removal that might interfere with her judgment, her expertise in this area of the law.  And so every day -- because she has a seven-year term, every day that she is not in that position is a day that she cannot exercise her deliberative judgment and assist the board, and it's -- and those are days that she can never get back and no court can ever restore.

THE COURT:  And what are your best cases to support that sort of irreparable harm?

MS. CORREIA:  To support that irreparable harm?

THE COURT:  Yes.

MS. CORREIA:  The nature of the harm is entirely different from the cases that the Government has cited, including Sampson, because we're not talking about the personal injury to an individual person.

THE COURT:  Okay.  But what are the best cases that support your proposition that she's suffering irreparable harm?

MS. CORREIA:  It is -- as we have cited in our brief, Your Honor, the Alpine case, I believe, and that --

again, with reference to Sampson, the kind of extraordinary case that justifies recognizing that kind of irreparable harm, are -- those circumstances are present here because of the way in which the president carried this out, the deprivation of Ms. Harris's participation with the board at an important time when recent actions by the president have left in question or have caused great concern for the federal workforce and for agencies about the authority of the MSPB and about the enforceability and applicability of everything that it does.

THE COURT:  How do you respond to the Government's opposition brief on distinguishing those cases that you rely upon?

MS. CORREIA:  I think they're simply incorrect. With respect to the executive authority of the board, it has none.  It --

THE COURT:  Well, I'm still focusing specifically on the irreparable harm argument.

MS. CORREIA:  Yeah.  I have to stand on what I've articulated.

THE COURT:  Okay.  All right.  Anything else?

MS. CORREIA:  No, unless the Court has other questions.

THE COURT:  That's all I have.  Thank you.

MS. CORREIA:  Thank you.

MS. MCMAHON:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

MS. MCMAHON:  First and foremost, the plaintiff is suffering no irreparable harm that would warrant the extraordinary remedy of a temporary restraining order at this time.  Ms. Harris has already been removed from her position on the board.  So this is a mandatory -- this -- she is requesting mandatory relief.  If the Court were to enter a TRO today, this would be akin to reinstalling an individual who had already been removed from her position, and that would be a significant intrusion on the president's Article II authority.

The plaintiff has also not met her burden to show that she is likely to succeed on the merits.  The MSPB is an executive agency that's exercising executive power and is located in the executive branch.  So its board members must be fully accountable to the president and removable by the president at will.  The MSPB, thus, does not fall within Humphrey's Executor's narrow exception to this rule for agencies that are not located within the executive branch -- are -- and not exercising executive power but quasi-legislative and quasi-judicial power.

I'd like to discuss irreparable harm first.  As I mentioned, there's simply no irreparable harm that's occurring.  At the end of the litigation, if the plaintiff

were to succeed on her claim, she could be reinstalled in the post, and so she's not suffering any harm that cannot be undone in the meantime.  She's effectively asserting that irreparable harm is a loss of her position and she's recast that as a loss of a statutory right to function, but she's confusing two different ideas.  There's an employment action that's occurred and she's lost her position, and she's also asserting that the agency is not able to function without her, but that is simply not the case for the MSPB.  There's still a quorum.  The agency can still function.  There's two members and they can issue decisions with or without her.  In any event, she wouldn't have standing to vindicate that harm because that would be a generalized harm to the MSPB -- to either parties before the MSPB or the American public and it doesn't -- it is not fairly traceable to the injury that she's asserting here which stems directly from her removal.

I'd like to take a moment to distinguish the cases that the plaintiff discusses in her brief.  Primarily, the Berry case.  And I think she also cites the Mackie case.

The Berry case is different than this one because, unlike the MSPB -- which, as I just mentioned, will continue to function with or without the plaintiff -- in Berry, the commission that was at issue terminated when the president removed the members of the commission.  They also were unable to fulfill their statutory function of producing a

report.  As I said, that is not what's going on here.  I think this case is far more similar to the English case which is a case from a few years ago decided by Judge Kelly in D.D.C., and in that case Judge Kelly held that there was -- when the president removed the acting commis- -- or the acting director of the CFPB, there was no loss of a statutory right to function because an acting director of the CFPB would have stepped into that acting director's shoes and continued to fulfill the mission of the agency with or without that individual.

Similarly, the Mackie case involved a group that stopped functioning upon removal.  And so that has no applicability here where other MSPB board members will continue to serve their functions and the American people if -- even if the Court were to deny the TRO today.

I'll turn to the merits briefly.  As I mentioned, the Constitution vests the entirety of the executive power in the president, and the executive power includes the power to remove --

THE COURT:  Let me go back to the irreparable harm.

MS. MCMAHON:  Sure.

THE COURT:  Did you get a chance to look at Judge Berman Jackson's opinion on this issue?

MS. MCMAHON:  I did.

THE COURT:  Okay.  Where do you see the errors of her ways?

MS. MCMAHON:  Your Honor, I think, respectfully, we disagree with the analysis in that opinion.

THE COURT:  Of course.

MS. MCMAHON:  And I'll also point you to Judge Katsas's concurring opinion in the Dellinger appeal -- emergency appeal that occurred yesterday as well where he casts doubt on Mr. Dellinger's ability to assert any irreparable harm.  But I think the truth is that there are only a handful of cases that have ever addressed the question of whether a plaintiff who's challenging their removal by a president and a principal officer is suffering irreparable harm in the face of that removal.  And I think, respectfully to Judge Jackson, she relied far too heavily on the Berry opinion, as I just mentioned, and, I think, conflated the notion of a statutory right to function, which is fundamentally about the agency's ability to fulfill its statutory duties, with what is essentially an employment action blown up on a large scale, but as you see from the cases cited in our brief, cases generally don't distinguish between the level at which the employee has been exercising authority, whether that's a CEO or a line workman or something like that.  It's the same thing.  An employment action is fundamentally not irreparable harm for the reasons

I've described.

The other point I'll make about Judge Jackson's opinion is that this case is different because this is not a single agency head, unlike in Judge Jackson's opinion. There's still a quorum at the MSPB.  There's still two board members there who can continue to review appeals and conduct all of the regular business of the agency without the plaintiff here.  And so I think that is -- that differentiates the question of whether the agency will be able to fulfill its statutory duties if -- in the event that the TRO is denied.

May I turn to the merits, Your Honor?

THE COURT:  (Indicates affirmatively.)

MS. MCMAHON:  Thank you.

So I'll note that generally in the case law over the last couple decades, there have only been two exceptions to the president's unrestricted removal power: one is for inferior officers, and that's not relevant here; and the second was outlined in Humphrey's Executor which had the -- held that Congress could impose for-cause removal restrictions on a multi-member body of experts that performed legislative and judicial functions and was said not to exercise any executive power.  That case --

THE COURT:  Did Humphrey's say "any executive powers" or was that the subsequent interpretation of

Humphrey's?

MS. MCMAHON:  I believe Humphrey's said something entirely different which was that the agency was not located in the executive branch, and there's no dispute here that MSPB --

THE COURT:  I think they said primarily non-executive functions.

MS. MCMAHON:  Well, I think it was not "any executive power," and I can't recall whether that quote is from Seila Law or from Humphrey's directly, but regardless I think it -- even if it is from Seila Law, that is -- that interpretation of Humphrey's is what's controlling now as that is binding Supreme Court precedent.  And so I think that's a separate point, but Seila Law has effectively narrowed Humphrey's to the characteristics that I just described.  And here, as we lay out in our briefs, MSPB members are exercising core executive functions.  They issue and order remedies that are binding on the parties, and Seila Law said that the CFPB director exercises executive power because, and I quote, he "may unilaterally issue final decisions awarding legal and equitable relief in administrative adjudications."  MSPB members can enforce compliance with their orders.  And I'll contrast that with what Humphrey's described the FTC to be doing in 1935 which was essentially issuing recommendations to the courts.  They

also review rules and regulations of OPM which is another executive agency.  And the board has its own litigating authority to send its own attorneys to civil actions in federal court, and that has been described as a core executive function in the Buckley v. Valeo case which recognized interpreting and enforcing law through litigation as an executive function.

As I mentioned, Seila Law has effectively read Humphrey's very narrowly and has significantly undermined much of the reasoning that's set forth in Humphrey's.  It points out that Humphrey's rested on a legal fiction that FTC performed duties in part quasi-legislatively and quasi-judicially, but that is -- but it even acknowledged in a footnote that today, courts would not describe that as not exercising executive power.  These are thought to be now core executive functions.

The Supreme Court in Morrison said it's hard to dispute that the power of the FTC at the time of Humphrey's Executor would, at the present time, be considered executive, at least to some degree.

And the court in Arlington v. FCC, in Footnote 4, explained that agencies may engage in activities that take legislative and judicial forms, but they must be exercises of the executive power.

Unless Your Honor has any other questions, I think

we will rest on our brief for the remainder.

THE COURT:  I don't think I do.  I think you think I have a little bit more leeway in dealing with existing Supreme Court precedent than I do, but I don't have any further questions.  Thank you.

MS. MCMAHON:  Thank you.  May I make one request of the Court?

THE COURT:  Sure.

MS. MCMAHON:  If the Court is inclined to enter injunctive relief in this case, the Government would request that the Court would convert any requests for a temporary restraining order into a request for a preliminary injunction.  The factors are the same, and although we believe that any preliminary relief is unwarranted here, we would request that the Court would enter a preliminary injunction instead.

THE COURT:  Okay.  So you're saying just a preliminary injunction, not of the merits?

MS. MCMAHON:  We -- again, we believe that no preliminary relief would be warranted for all the reasons that I've stated.

THE COURT:  No, I understand.  But you're saying to grant a preliminary injunction as well, but not to rule on the merits, then; is that right?

MS. MCMAHON:  May I confer with my colleague for a

second?

THE COURT:  Sure.

(Brief pause.)

MS. MCMAHON:  No, Your Honor.  We would not request final judgment at this time.  Thank you.

THE COURT:  Thank you.

All right.  What is your position on ruling on the preliminary injunction simultaneously?

MS. CORREIA:  Well, Your Honor, we'd like to have a full opportunity to adjudicate the merits.

THE COURT:  Okay.  But how about a preliminary injunction?  Which is the same standard as the TRO.

MS. CORREIA:  We would like to have the opportunity to fully brief the matter and to adjudicate the merits fully.

THE COURT:  Okay.  All right.

MS. CORREIA:  If I may just respond to a couple of points that counsel made?  And that is that she strongly relied on -- or leaned on the idea that a lack of -- that there is still a quorum at the MSPB if Ms. Harris is removed; however -- not speculating -- the fact is that the next term is up on May 1st of this year -- I'm sorry, March 1st of this year.  So the lack of a quorum is imminent, and the last time MSPB had a lack of a quorum, that lasted for five years and resulted in a backlog of 3,795 cases where

parties couldn't get their matters adjudicated, and Ms. Harris and her colleagues worked for two-and-a-half years to get that backlog down.  Now --

THE COURT:  How quickly can you put together a reply to the Government's opposition?

MS. CORREIA:  As quickly as the Court tells us.

THE COURT:  Tomorrow?

MS. CORREIA:  A couple of days?

THE COURT:  Tomorrow?

MS. CORREIA:  Tomorrow's fine.

THE COURT:  Okay.

(Laughter.)

All right.  File a reply by tomorrow.

MS. CORREIA:  I think I saw it at 11:00 o'clock this afternoon.  So I had a limited chance to prepare that.

THE COURT:  I understand.

MS. CORREIA:  So if I may, the disruption of having someone else appointed and confirmed in Ms. Harris's place is evident.  The board would be deprived of having a bipartisan composition which is required under the statute. Having just two board members present, even for a short period of time, can lead to split decisions and interfere with the effectiveness of the board.

So this action is specifically -- the action by the president is specifically flying in the face of the

statute which, as of now, is entitled to the presumption that it is constitutional because Humphrey's Executor is the law and that statute is the law.

THE COURT:  All right.  Thank you.

MS. CORREIA:  Thank you.

THE COURT:  Have the parties talked about a briefing schedule beyond this?

MS. MCMAHON:  We have not conferred yet, Your Honor.

THE COURT:  Okay.  Maybe you guys can start conferring on that.

MS. MCMAHON:  We're happy to.

THE COURT:  All right.  If there's nothing else, I'll take it under advisement and rule as quickly as possible.

MS. CORREIA:  Thank you, Your Honor.

THE COURT:  Thank you.

THE DEPUTY CLERK:  All rise.

(Proceedings concluded at 3:26 p.m.)

* * * * * * * * * * * *

**CERTIFICATE OF OFFICIAL COURT REPORTER**

**I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my**

ability, dated this 26th day of February 2025.

/s/Timothy R. Miller, RPR, CRR, NJ-CCR
Official Court Reporter
United States Courthouse
Room 6722
333 Constitution Avenue, NW
Washington, DC 20001