# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CATHY A. HARRIS,

*Plaintiff,*

*v.*

SCOTT BESSENT, *et al.*,

*Defendants.*

Civil Action No. 1:25-cv-00412-RC

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION FOR JUDGMENT ON THE MERITS

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................3

I.    Statutory Background. .............................................................................................3

II.    Factual Background. ...............................................................................................4

LEGAL STANDARD ..........................................................................................................5

ARGUMENT .......................................................................................................................5

I.    The Removal Restrictions Insulating MSPB Members Are Unconstitutional. ...........5

    A.    At-Will Removal Is the General Rule, and MSPB Does Not Fit Within Any Exceptions. ..................................................................................................5

    B.    Plaintiff's Contrary Arguments Are Meritless. ..........................................8

II.    Plaintiff Is Not Entitled to the Relief She Seeks. ....................................................13

    A.    Plaintiff Is Not Entitled to Reinstatement. ...............................................13

    B.    Plaintiff Has Not Satisfied the Injunction Factors ...................................18

        1.    Plaintiff has not suffered an irreparable injury. .................................18

        2.    The balance of the equities and public interest weigh strongly in favor of the government. ..............................................................................20

    C.    Plaintiff Is Not Entitled to Declaratory Judgment or Mandamus Relief. ...................21

CONCLUSION ....................................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Aamer v. Obama,*
  742 F.3d 1023 (D.C. Cir. 2014) ...................................................................................5

*Agostini v. Felton,*
  521 U.S. 203 (1997) ...................................................................................................13

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.,*
  64 F.4th 1354 (D.C. Cir. 2023) .................................................................................18

*Arlington v. FCC,*
  569 U.S. 290 (2013) ............................................................................................ 10, 12

*Baker v. Carr,*
  369 U.S. 186 (1962) ............................................................................................ 15, 17

*Barnes v. Kline,*
  759 F.2d 21 (D.C. Cir. 1984) ....................................................................................19

*Berry v. Reagan,*
  No. 83-cv-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983), *vacated,*
  732 F.2d 949 (D.C. Cir. 1983) .............................................................. 15, 16, 19, 20

*Buckley v. Valeo,*
  424 U.S. 1 .................................................................................................................7, 9

*Cafeteria and Restaurant Workers Union, Local 473, A.F.L.-C.I.O. v. McElroy,*
  367 U.S. 886 (1961) ...................................................................................................21

*Chamber of Com. of U.S. v. Reich,*
  74 F.3d 1322 (D.C. Cir. 1996) ..................................................................................16

*Chaplaincy of Full Gospel Churches v. England,*
  454 F.3d 290 (D.C. Cir. 2006) ..................................................................................18

* *Collins v. Yellen,*
  594 U.S. 220 (2021) ............................................................................................ 10, 11

*Consolidated Edison Co. v. Ashcroft,*
  286 F.3d 600 (D.C. Cir. 2002) ..................................................................................22

*Davis v. Billington,*
  76 F. Supp. 3d 59 (D.D.C. 2014) ..............................................................................19

*Davis v. Pension Benefit Guar. Corp.,*
  571 F.3d 1288 (D.C. Cir. 2009) ..................................................................................5

*Dellinger v. Bessent,*
No. 25-5028, 2025 WL 559669 (D.C. Cir. Feb. 15, 2025)........................................16, 19, 21

*Dellinger v. Bessent,*
No. 25-0385, 2025 WL 471022 (D.D.C. Feb. 12, 2025)......................................................19

*Douglas v. Veterans Administration,*
5 M.S.P.B. 313 (1981) ........................................................................................................7

*eBay Inc. v. MercExchange, L.L.C.,*
547 U.S. 388 (2006) ..........................................................................................................18

*Elgin v. Department of Treasury,*
567 U.S. 1 (2012) ............................................................................................................3, 7

*Farris v. Rice,*
453 F. Supp. 2d 76 (D.D.C. 2006) ....................................................................................19

*Franklin v. Massachusetts,*
505 U.S. 788 (1992) ..........................................................................................................21

\* *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
561 U.S. 477 (2010) .....................................................................................................passim

*Great Lakes Dredge & Dock Co. v. Huffman,*
319 U.S. 293 (1943) ..........................................................................................................22

*Great-West Life & Annuity Insurance Co. v. Knudson,*
534 U.S. 204 (2002) ..........................................................................................................17

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.,*
527 U.S. 308 (1999) .....................................................................................................14, 17

*Harkrader v. Wadley,*
172 U.S. 148 (1898) ..........................................................................................................15

*Heckler v. Ringer,*
466 U.S. 602 (1984) ..........................................................................................................22

*Hetreed v. Allstate Ins. Co.,*
135 F.3d 1155 (7th Cir. 1998)...........................................................................................19

*Humphrey's Executor v. United States,*
295 U.S. 602 (1935) ....................................................................................................passim

*In re Sawyer,*
124 U.S. 200 (1888) ..........................................................................................................15

*Jolley v. MSPB,*
    636 F. App'x 567 (Fed. Cir. 2016) ........................................................................20

*Local 2578 Am. Fed. of Govt. Employees v. GSA,*
    711 F.2d 261 (D.C. Cir. 1983) ...............................................................................3

*Macauley v. Waterman S.S. Corp.,*
    327 U.S. 540 (1946) ..............................................................................................22

*Mallory v. Norfolk S. Ry. Co.,*
    600 U.S. 122 (2023) ....................................................................................8, 13, 17

*Mazurek v. Armstrong,*
    520 U.S. 968 (1997) ................................................................................................5

* *Mississippi v. Johnson,*
    71 U.S. (4 Wall.) 475 (1867) ............................................................................2, 13

*Mistretta v. United States,*
    488 U.S. 361 (1989) ..............................................................................................11

*Morrison v. Olson,*
    487 U.S. 654 (1988) ......................................................................................6, 9, 12

*Munaf v. Geren,*
    553 U.S. 674 (2008) ................................................................................................5

* *Myers v. United States,*
    272 U.S. 52 (1926) ....................................................................................6, 14, 19

*Nken v. Holder,*
    556 U.S. 418 (2009) ..............................................................................................18

*NTEU v. MSPB,*
    743 F.2d 895 (D.C. Cir. 1984) ...............................................................................4

*Parsons v. United States,*
    167 U.S. 324 (1897) ..............................................................................................14

*PHH Corp. v. Consumer Fin. Prot. Bureau,*
    881 F.3d 75 (D.C. Cir. 2018) .................................................................................6

*Raines v. Byrd,*
    521 U.S. 811 (1997) ..............................................................................................19

*Rodriguez de Quijas v. Shearson/American Express, Inc.,*
    490 U.S. 477 (1989) ..............................................................................................17

* *Sampson v. Murray*,
415 U.S. 61 (1974) ...................................................................................................*passim*

*Samuels v. Mackell*,
401 U.S. 66 (1971) ...................................................................................................22

* *Seila L. LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197 (2020) ................................................................................................*passim*

*Severino v. Biden*,
71 F. 4th 1038 (D.C. Cir. 2023) ............................................................................5, 8

*Sherley v. Sebelius*,
644 F.3d 388 (D.C. Cir. 2011) ...............................................................................5, 18

*Shurtleff v. United States*,
189 U.S. 311 (1903) ................................................................................................14

*Swan v. Clinton*,
100 F.3d 973 (D.C. Cir. 1996) ...............................................................................16

*U.S. Postal Serv. v. Gregory*,
534 U.S. 1 (2001) ...................................................................................................4, 9

*United States v. Perkins*,
116 U.S. 483 (1886) ...............................................................................................6

*Walton v. House of Representatives*,
265 U.S. 487 (1924) ...............................................................................................15

* *White v. Berry*,
171 U.S. 366 (1898) ..........................................................................................2, 15, 17

*Wiener v. United States*,
357 U.S. 349 (1958) .......................................................................................7, 11, 13, 19

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ...................................................................................................5, 18

**STATUTES**

5 U.S.C. §§ 701–706..................................................................................................9

5 U.S.C. § 1201 .........................................................................................................3, 6

5 U.S.C. § 1202 .........................................................................................................3, 5

5 U.S.C. § 1203 .........................................................................................................11

5 U.S.C. § 1204 ......................................................................................................4, 6, 7, 9

5 U.S.C. § 7521 ...................................................................................................................3

5 U.S.C. § 7701 ...................................................................................................................3

5 U.S.C. § 7703 ...............................................................................................................4, 7

28 U.S.C. § 2202 ...............................................................................................................22

Pub. L. No. 95-454, 92 Stat. 1111 (1978) .........................................................................3

Act of Jan. 16, 1883, 22 Stat. 403 (1883) .........................................................................3

**REGULATIONS**

5 C.F.R. § 1200.3 ..............................................................................................................20

5 C.F.R. § 1201.3 ................................................................................................................3

Interim Final Rule, Organization and Procedures,
    89 Fed. Reg. 72,957 (Sept. 9, 2024) ...........................................................................20

**U.S. CONSTITUION**

\* U.S. Const. art. II, § 1 ...............................................................................................1, 5, 10

U.S. Const. art. II, § 2 ...................................................................................................6, 16

U.S. Const. art. II, § 3 ....................................................................................................1, 5

**OTHER AUTHORITIES**

2 James L. High, *Treatise on the Law of Injunctions* § 1312 (2d ed. 1880) .....................15

Congressional Research Service, *Merit Systems Protection Board (MSPB): A Legal Overview*
    (March 25, 2019) ...........................................................................................................3

## INTRODUCTION

"Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, § 1, cl. 1; *id.*, § 3). But Ms. Harris argues that this Court should empower her to exercise some of the executive Power as a principal officer of the United States, unaccountable to the democratically elected President, even after the President has chosen to remove her. Article II—and Supreme Court precedents construing it—foreclose that argument. And setting aside the merits, Ms. Harris asks for relief beyond the power of this Court—an order that would reinstate her in office and bar the President from replacing her. Such an order would exceed the traditional equitable authority of courts and violate the longstanding separation-of-powers principle that courts lack jurisdiction to enjoin the President in the exercise of his official duties. The Court should decline to interfere in the President's exercise of his lawful authority over the executive branch.

Plaintiff's claims fail on the merits because the statutory for-cause removal protection for Merit Systems Protection Board (MSPB) members is unconstitutional. "[A]s a general matter," the executive power encompasses "the authority to remove those who assist [the President] in carrying out his duties." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513–14 (2010). The Supreme Court has recognized "only two exceptions to the President's unrestricted removal power." *Seila Law*, 591 U.S. at 214. One exception, for certain inferior officers with limited duties, plainly does not encompass principal officers such as Plaintiff.

Plaintiff relies on the second exception, exemplified by *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), for "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. But that exception does not apply because the MSPB exercises executive power. Its

executive functions include issuing binding orders to federal agencies and employees and enforcing compliance with those orders, litigating in federal court to defend its decisions and actions, and reviewing rules of the Office of Personnel Management. Plaintiff essentially asks this Court to expand *Humphrey's Executor*, but the Supreme Court has read that case narrowly as "represent[ing] . . . the outermost constitutional limits of permissible congressional restrictions on the President's removal power." *Seila Law*, 591 U.S. at 218 (citation and quotation omitted).

Irrespective of the merits of Plaintiff's claims, she is not entitled to the declaratory and injunctive relief she seeks, which would have the effect of reinstating her in office. Courts lack "jurisdiction . . . to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867). Plaintiff's requested relief would have the impermissible effect of restraining the President because it would prevent him from effectuating the removal of Plaintiff or appointing her replacement. Moreover, federal courts are limited to granting traditional equitable remedies, and "a court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another." *White v. Berry*, 171 U.S. 366, 377 (1898). That is why executive officers challenging their removal by the President have traditionally sought back pay, rather than reinstatement.

Plaintiff has also failed to satisfy the remaining injunction factors. Loss of government employment generally does not qualify as irreparable harm, *Sampson v. Murray*, 415 U.S. 61, 92 & n.68 (1974), and Plaintiff cites no exceptional circumstances that would warrant a different result here. She mostly invokes potential harm to the MSPB itself, but such claimed harm to the MSPB is not hers to raise. Moreover, the balance of equities and public interest strongly weigh against injunctive relief. Consistent with the Framers' vision, it is in the public interest for the executive power of the United States to be exercised by the democratically elected President and officers accountable to the President.

# BACKGROUND

## I.    Statutory Background.

In 1883, Congress established the Civil Service Commission, comprised of three presidentially appointed Commissioners, tasked with helping the President prepare suitable civil service rules for applicants for federal employment. *See* Act of Jan. 16, 1883, ch. 27, § 2, 22 Stat. 403 (1883). Over the following decades, the CSC grew more and more powerful, and gained a steadily larger ambit. *See* Congressional Research Service, *Merit Systems Protection Board (MSPB): A Legal Overview*, at 2 (March 25, 2019) ("CRS Report"). So in 1978, Congress passed the Civil Service Reform Act, splitting the functions of the CSC between two separate new agencies: the Office of Personnel Management and the Merit Systems Protection Board. Pub. L. No. 95-454, § 202(a), 92 Stat. 1111, 118–44 (1978). The Act charged OPM with conducting personnel management functions formerly performed by the CSC, while the MSPB was charged with performing the CSC's "hearing, adjudication, and appeals functions, and exercised its authority to enforce agency compliance with its decisions." CRS Report, *supra*, at 3.

The Act provides that the Board—like the CSC before it—shall consist of three Members, appointed by the President with the advice and consent of the Senate. 5 U.S.C. § 1201. No more than two Members may belong to the same political party. *Id.* And by the Act's terms, Board Members can "be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202(d).

The MSPB exercises tremendous power within the Executive Branch: In short, it supervises how much of the Executive Branch supervises its workforce. Most of all, the Board broadly oversees adverse employment actions taken against the bulk of the federal workforce—including with respect to removal or lengthier suspensions. 5 U.S.C. § 7701(a); *see also id.* § 7521(a); 5 C.F.R. § 1201.3(a). Among other things, the "MSPB is authorized to order . . . reinstatement, backpay, and attorney's fees" to prevailing employees. *Elgin v. Department of Treasury*, 567 U.S. 1, 6 (2012); *see also Local 2578 Am. Fed. of Govt. Employees v. GSA*, 711 F.2d 261, 265 (D.C. Cir. 1983) (describing "independent authority" of MSPB to assess punishments handed down by other agencies). The Board has the

authority to "take final action on any such matter[s]" before it.  5 U.S.C. § 1204(a)(1).  And that includes being able to order any federal agency or employee to comply with any order or decision "issued by the Board . . . and enforce compliance with any such order."  *Id.* § 1204(a)(2).

The Board also has independent litigating authority to send its own attorneys to litigate civil actions outside the Supreme Court in connection with any of its functions.  *Id.* § 1204(i).  And under certain circumstances, the Board itself is the named respondent (and thus litigant) in judicial proceedings seeking review of Board decisions.  *Id.* § 7703(a)(2).  The MSPB is further empowered to review rules issued by the Office of Personnel Management, a distinct executive agency, and can declare a rule to be invalid on their face or invalidly implemented if the MSPB determines that the rule would require employees to commit prohibited personnel practices.  *Id.* § 1204(f); *see also NTEU v. MSPB*, 743 F.2d 895, 900 (D.C. Cir. 1984) (describing review process).  Upon making such a determination, the MSPB "shall require any agency . . . to cease compliance with" provisions that are invalid on their face and "to correct any invalid implementation" of such a rule.  5 U.S.C. § 1204(f)(4).

Decisions by the MSPB are generally subject to judicial review.  5 U.S.C. § 7703.  But the scope of such review is "extremely narrow," and deferential.  *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 6-7 (2001).

## II.    Factual Background.

Plaintiff Cathy Harris was first nominated by President Biden to serve as a Member of the MSPB on June 24, 2021.  Compl. ¶ 24.  She was renominated on January 4, 2022.  *Id.*  The Senate confirmed her on May 25, 2022, and she was sworn in as a Member of the Board on June 1, 2022.  *Id.* She was sworn in as Chairman of the Board on March 14, 2024.  *Id.* ¶ 25.

On February 11, 2025, the Deputy Assistant to the President and the Deputy Director of the White House Presidential Personnel Office informed Plaintiff that the President was removing her from her position. Compl. ¶ 26.  That same day, Plaintiff filed this lawsuit, and moved for a temporary restraining order, requesting that she be reinstated.  *See* ECF No. 2-4.  On February 18, this Court granted that motion, reinstating Plaintiff as Chairman of the MSPB, and enjoining all defendants "from removing Harris from her office or in any way treating her as having been removed."  ECF

No. 9, at 21.  The Court then set a briefing schedule for a preliminary injunction, as well as merits briefing.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy."  *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citation omitted).  It is "never awarded as of right," *id.* at 690, and "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted); *accord Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).  The movant must satisfy a four-prong test, establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011).  The "most important factor" is whether the movant has "established a likelihood of success on the merits."  *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014).

## ARGUMENT

### I.    The Removal Restrictions Insulating MSPB Members Are Unconstitutional.

Plaintiff contends that the President did not validly remove her from office because Members of the Merit Systems Protection Board may be removed only for "inefficiency, neglect of duty, or malfeasance in office."  5 U.S.C. § 1202(d).  But MSPB Members are principal officers who lead a freestanding component within the Executive Branch and exercise executive power.  Accordingly, because the entirety of the executive power is vested in the President, *see* Art. II, § 1, cl. 1, the President must be able to remove MSPB Members at will.

### A.    At-Will Removal Is the General Rule, and MSPB Does Not Fit Within Any Exceptions.

**1.**  The Constitution vests the entirety of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 1, cl. 1; *id.* § 3; *see also Severino v. Biden*, 71 F. 4th 1038, 1043–44 (D.C. Cir. 2023).  "[A]s a general matter,"

the executive power encompasses "the authority to remove those who assist [the President] in carrying out his duties." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513–14 (2010). Without such power, the President would be unable to control those who aid him in executing the laws and "could not be held fully accountable for discharging his own responsibilities." *Id.* at 514.

For nearly a century, the Supreme Court has repeatedly reaffirmed "the President's power to remove—and thus supervise—those who wield executive power on his behalf." *Seila Law*, 591 U.S. at 204 (citing *Myers v. United States*, 272 U.S. 52 (1926)). The Supreme Court has recognized "only two exceptions to the President's unrestricted removal power." *Id.* First, in *Humphrey's Executor*, 295 U.S. 602, the Supreme Court held that Congress could impose for-cause removal restrictions on "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. Second, in *Morrison v. Olson*, 487 U.S. 654 (1988), and *United States v. Perkins*, 116 U.S. 483 (1886), the Court recognized an exception "for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 591 U.S. at 218. Those exceptions represent the "outermost constitutional limits of permissible restrictions on the President's removal power" under current precedent. *Id.* (quoting *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 196 (D.C. Cir. 2018) (Kavanaugh, J., dissenting)).

**2.** Members of the MSPB do not fit within either of these exceptions. They are not inferior officers with narrowly defined duties; to the contrary, they are principal officers appointed by the President with Senate confirmation, *see* U.S. Const. art. II, § 2, cl. 2; 5 U.S.C. § 1201, oversee their own department, and are not subservient to any other principal officer, *see* 5 U.S.C. § 1204. *See also Free Enter. Fund*, 561 U.S. at 511 (explaining that a department "is a freestanding component of the Executive Branch, not subordinate to or contained within any other such component"). Nor does the *Humphrey's Executor* exception apply. As the Supreme Court made clear in *Seila Law*, that exception is limited to "multimember bodies with 'quasi-judicial' or 'quasi-legislative' functions" that do not exercise executive power. *Seila Law*, 591 U.S. at 216–17 (quoting *Humphrey's Executor*, 295 U.S. at 632). That narrow exception does not encompass the MSPB.

The MSPB is no "mere legislative or judicial aid," *Seila Law*, 591 U.S. at 199. It is an independent agency that performs many executive functions. For instance, the MSPB "hear[s], adjudicate[s], or provide[s] for the hearing or adjudication" of matters within its jurisdiction and, "subject to otherwise applicable provisions of law, take[s] final action on any such matter." 5 U.S.C. § 1204(a)(1). Following those adjudications, the MSPB can order relief including reinstatement, backpay, and attorney's fees. *See Elgin*, 567 U.S. at 6. And it can "order any Federal agency or employee to comply with any order or decision issued by the Board . . . and enforce compliance with any such order." 5 U.S.C. § 1204(a)(2). This authority to issue final orders that affect the rights and obligations of parties is an executive function. *See Seila Law*, 591 U.S. at 219 (explaining that the CFPB Director exercises executive power because he "may unilaterally issue final decisions awarding legal and equitable relief in administrative adjudications").

The MSPB can also exercise authority over other executive agencies by, for example, reviewing rules of the Office of Personnel Management. 5 U.S.C. § 1204(f). In certain cases—namely, those involving misconduct—the Board can also modify or reduce the penalties that agencies impose on their employees. *See Douglas v. Veterans Administration*, 5 M.S.P.B. 313, 327–28 (1981).

Further, the Board also has independent litigating authority to send its own attorneys (not Department of Justice attorneys) to litigate civil actions outside the Supreme Court in connection with any of its functions. 5 U.S.C. § 1204(i); *see also Buckley v. Valeo*, 424 U.S. 1, 138–40 (recognizing interpreting and enforcing law through litigation as executive function). And under certain circumstances, the Board itself is the named respondent (and thus a litigant) in judicial proceedings seeking review of Board decisions. *See* 5 U.S.C. § 7703(a)(2). These features distinguish the Board from a purely adjudicatory body. *Contra Wiener v. United States*, 357 U.S. 349, 356 (1958) (upholding removal restriction on member of body understood as purely adjudicatory).

In short, the MSPB wields executive power and must be accountable to the President through the removal power. *See Seila Law*, 591 U.S. at 204 ("The President's power to remove—and thus supervise—those who wield executive power on his behalf follows from the text of Article II[.]").

**B.    Plaintiff's Contrary Arguments Are Meritless.**

**1.**  Plaintiff's contrary contention rests largely on an overbroad reading of *Humphrey's Executor* and the cases that followed.  Plaintiff seeks to stretch those cases beyond their facts to reach a Board that exercises significant executive power.  The Supreme Court in *Seila Law* made clear, however, that *Humphrey's Executor* does not extend so far.  After *Seila Law*, "only a very narrow reading of those cases is still good law" and "little to nothing is left of the *Humphrey's* exception to the general rule that the President may freely remove his subordinates."  *Severino*, 71 F.4th at 1050 (Walker, J., concurring).[1]

In *Humphrey's Executor*, the Supreme Court upheld the constitutionality of a provision prohibiting removal of Federal Trade Commissioners absent "inefficiency, neglect of duty, or malfeasance in office."  295 U.S. at 632.  Despite reaffirming *Myers*'s then-recent holding that the President "has unrestrictable power … to remove purely executive officers," *id.* at 632, *Humphrey's Executor* concluded that *Myers* did not control because the FTC Commissioner at issue was "an officer who occupies no place in the executive department and who exercises no part of the executive power vested by the Constitution in the President," *id.* at 628.  Instead, *Humphrey's Executor* understood the FTC to be "an administrative body" that "carr[ied] into effect legislative policies" and "perform[ed] other specified duties as a legislative or judicial aid."  *Id.*  Those duties, according to the Court, "c[ould ]not in any proper sense be characterized as an arm or an eye of the executive."  *Id.*  The Court understood the FTC not to be exercising executive power at all but rather to "act[] in part quasi legislatively and in part quasi judicially."  *Id.*  On that understanding, *Humphrey's Executor* found no constitutional problem with restricting the removal of FTC Commissioners.

Because *Humphrey's Executor* rests on the understanding that the FTC exercised no executive power, Plaintiff's contention that the MSPB falls within the *Humphrey's Executor* exception because the MSPB "does not wield *substantial* executive power," Pl.'s Mot. at 12, ECF No. 22 (emphasis added), fails.  As just explained, *Humphrey's Executor* approved "for-cause removal protections [for] a

---

[1] While the government acknowledges that whatever little remains of *Humphrey's Executor* is binding on this Court until overturned by the Supreme Court, *see Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023), it preserves the argument that *Humphrey's Executor* was wrongly decided. *See, e.g.*, *Seila Law*, 591 U.S. at 239–51 (Thomas and Gorsuch, JJ., concurring in part) (advocating for the Court to "reconsider *Humphrey's Executor in toto*").

multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise *any* executive power." *Seila Law*, 591 U.S. at 216 (emphasis added).[2]  That case upheld removal protections for a body that was understood not to exercise executive power at all—not based on the Court's analysis of how substantial the agency's executive power was. *Humphrey's Executor*, 295 U.S. at 627–32.  To be sure, *Seila Law* once summarized the exception for multimember boards to cover those that do not exercise substantial executive power. But *Seila Law* likewise recognized the Court's understanding in *Humphrey's Executor*, describing that case as "view[ing] the FTC (as it existed in 1935) as exercising 'no part of the executive power,'" 591 U.S. at 216 (quoting *Humphrey's Executor*, 295 U.S. at 628), and thus permitting for-cause removal protections only for boards that do "not exercise any executive power," *id.*

In any event, the MSPB does wield "substantial" executive power.  As described above, the Board has the authority to issue final decisions in administrative adjudications that award relief including backpay and reinstatement.[3]  *See Seila Law*, 591 U.S. at 219 (explaining that the CFPB Director exercises executive power because he "may unilaterally issue final decisions awarding legal and equitable relief in administrative adjudications").  It can order federal agencies and employees to comply with its orders and enforce those orders where necessary.  5 U.S.C. § 1204(a)(2).  And its independent litigating authority, *see* 5 U.S.C. § 1204(i), allows it to present and enforce interpretations of the law in federal courts, which is a quintessentially executive function.  *Cf. Buckley*, 424 U.S. at 138–40 (recognizing interpreting and enforcing law through litigation as executive function).  The fact that the Board's jurisdiction is limited to Executive Branch disputes, Pl.'s Mot. at 12–17, does not alter the

---

[2] The Court further explained that "[t]he Court's conclusion that the FTC did not exercise executive power has not withstood the test of time." *Id.* at 216 n.2.  Indeed, "[i]t is hard to dispute that the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree." *Id.* (quoting *Morrison*, 487 U.S. at 690 n.28).

[3] Plaintiff contends that the Board does not have the final say in many matters because its decisions are appealable to Article III courts. *See* Pl.'s Mot. at 15–16.  But judicial review of MSPB decisions is "extremely narrow," and is intended "only to ascertain if the Board has met the minimum standards set forth in the statute." *Gregory*, 534 U.S. at 7.  And if Plaintiff's argument were correct, executive agencies—or even Congress—would almost never have the "final say" because most agency actions—and statutes—are subject to some form of judicial review. *See, e.g.*, 5 U.S.C. §§ 701–706 (providing for judicial review of agency action).

conclusion that this authority is substantial. To the contrary, that the Board exercises these powers in the context of employment disputes among Executive Branch employees only accentuates the degree to which its decisions and actions in court bear directly on the President's execution of his Article II duty. The MSPB's broad authority to affect management of the Executive Branch workforce constitutes broad authority to control that workforce's exercise of executive power in "dictat[ing] and enforc[ing] policy . . . affecting millions of Americans," *Seila Law*, 591 U.S. at 225.[4]

Plaintiff's policy arguments about the supposedly unique need for independence at the MPSB, Pl.'s Mot. at 13–14, do not move the needle. Similar arguments were made and rejected in *Seila Law* itself. *Cf. Seila Law*, 591 U.S. at 273 (Kagan, J., concurring in part) (urging that Congress had strong policy justifications for enacting the tenure protections for the CFPB Director that were held unlawful by the majority). Indeed, the Supreme Court has since rejected that entire mode of reasoning: In *Collins v. Yellen*, 594 U.S. 220 (2021), the Court refused to entertain arguments about whether the functions of certain executive agencies were less significant as compared to others'. The Court explained that "[c]ourts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies" and that "the constitutionality of removal restrictions" does not "hinge[] on such an inquiry." *Collins*, 594 U.S. at 253. Because the MSPB exercises executive power—indeed, substantial executive power—it does not fall within the narrow *Humphrey's Executor* exception. Board members must therefore be removable at will by the President.

**2.** Likewise, Plaintiff's argument that the MSPB is a "traditional independent agency" run by a multimember board, Pl.'s Mot. at 17–20, also does not justify its inclusion in the *Humphrey's Executor* exception. *Seila Law* did not extend *Humphrey's Executor* to cover any "traditional independent agency" run by a multi-member board. Rather, the touchstone of the *Humphrey's Executor* exception, as *Seila*

---

[4] Although many functions of the MSPB are clearly of an executive nature, even for functions that could be said to resemble judicial activity, it would be "overstate[d]" to assert that the MSPB "exercise[s] . . . 'judicial power.'" *Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013). "Agencies make rules . . . and conduct adjudications . . . and have done so since the beginning of the Republic. These activities take 'legislative' and 'judicial' forms, but they are exercises of—indeed, under our constitutional structure they *must* be exercises of—the 'executive Power.'" *Id.* (quoting U.S. Const., art. II, § 1, cl. 1).

*Law* understood it, was a multi-member, partisan-balanced board that did not exercise executive power.   Indeed, the cases in which the Court has upheld the constitutionality of removal protections involved multimember boards that are easily distinguishable from the MSPB: an agency whose officers the Court understood to "occup[y] no place in the executive department and who exercise[] no part of the executive power," *Humphrey's Executor*, 295 U.S. at 628; a purely "adjudicatory body" that the Court understood to fall outside the "Executive establishment," *Wiener*, 357 U.S. at 353–56; and a commission that was part of the Judicial Branch and exercised power that never belonged to the Executive Branch, *see Mistretta v. United States*, 488 U.S. 361, 385, 395 (1989).

While the unconstitutionality of the MSPB's structure might be even more obvious if the agency had a single head, *see Seila Law*, 591 U.S. at 224; *Collins*, 594 U.S. at 226–28, the fact it has multiple heads does not render it constitutional.   As previously explained, the MSPB is an executive agency exercising executive authority and therefore falls outside the *Humphrey's Executor* exception for multimember boards that do "not exercise any executive power." *Seila Law*, 591 U.S. at 216.   For the same reason, it does not change the constitutional analysis that MSPB members serve staggered terms, that the President retains the authority to appoint the chairperson,[5] and that the MSPB is subject to the appropriations process, Pl's Mot. at 19–20.   Alternative means of accountability cannot compensate for the President's inability to control the Board members through removal.   *See Free Enter. Fund*, 561 U.S. at 504 (noting "[b]road power" over the functions of the inferior officers at issue there "is not equivalent to the power to remove Board members").

**3.**   Furthermore, confirming the government's reading of *Humphrey's Executor* would not "[u]pend" constitutional law, *see* Pl.'s Mot. at 20–23.   The legitimacy of the multimember boards Plaintiff cites (*id.* at 21) has been assumed to rest on *Humphrey's Executor*.   But *Humphrey's Executor* only ever approved the constitutionality of for-cause removal restrictions for multimember boards that do not exercise executive power.   *See Seila Law*, 591 U.S. at 219 n.4 (recognizing that "what matters is the

---

[5] Plaintiff concedes that the President has the authority to remove her from her position as Chairman of the Board and correctly requests that the Court modify its TRO accordingly.   Pl.'s Mot. at 8 n.8 (citing 5 U.S.C. § 1203(a)).   The government joins in that request.

set of powers the Court considered as the basis for its decision, not any latent powers that the agency may have had not alluded to by the Court"). To be sure, the assumption on which *Humphrey's Executor* rests—that the FTC at the time that case was decided did not exercise executive power—has since been "repudiated" by the Supreme Court. *Seila Law*, 591 U.S. at 239 (Thomas, J., concurring in part); *see also Morrison*, 487 U.S. at 689 n.28, 691 (retreating from *Humphrey's Executor*'s "quasi-legislative" or "quasi-judicial" rationale, noting that "it is hard to dispute that the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree"). And, as the Supreme Court has recognized, the *Humphrey's Executor* understanding of the 1935 FTC likely cannot describe modern-day multimember boards. *See Seila Law*, 591 U.S. at 216 n.2 (observing that *Humphrey's Executor*'s "conclusion that the FTC did not exercise executive power has not withstood the test of time"); *see also Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013) (noting that agencies may engage in activities that "take 'legislative' and 'judicial' forms, but [those activities] are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power'"). But that is all the more reason not to expansively read *Humphrey's Executor* as blessing removal protections for principal officers exercising executive powers that the Supreme Court did not consider when deciding that case. Indeed, acknowledging that *Humphrey's Executor* does not apply beyond multimember boards that do not exercise executive power would not "upend" constitutional law; instead, it would acknowledge the limitations that the Supreme Court has said define *Humphrey's Executor*.

Additionally, Plaintiff overstates the ramifications of adopting the government's reading of *Humphrey's Executor*. In holding that the MSPB does not fall within the scope of the *Humphrey's Executor* exception, this Court need not opine on whether all other so-called independent agencies would. There are good reasons to think that some agencies, including the Federal Reserve Board, might be assessed differently. *See, e.g.*, *Seila Law*, 591 U.S. at 222 n.8 (suggesting that Federal Reserve might have "special historical status" distinguishing it from other agencies, including the CFPB).

Finally, Plaintiff contends that a judicial order "overturn[ing] *Humphrey's Executor*" would "radically upset the balance of power" because Congress might not have chosen to pass legislation

establishing boards and appropriating funds to hire federal employees if it had known certain tenure protections were not permitted.  Pl.'s Mot. at 23.  Overturning *Humphrey's Executor* is, of course, not an option available to this Court, *see Mallory*, 600 U.S. at 136, and so Plaintiff's fear is misplaced.  In any event, speculation about different choices Congress may have made if it had legislated against a different legal backdrop is no reason not to acknowledge what the Constitution demands.  *Cf. Agostini v. Felton*, 521 U.S. 203, 235 (1997) (noting the policy of *stare decisis* "is at its weakest when [courts] interpret the Constitution").

## II.    Plaintiff Is Not Entitled to the Relief She Seeks.

Plaintiff asks this Court to declare that she was unlawfully terminated and issue the unprecedented relief of enjoining Defendants from removing her from office or treating her as removed.  Compl., Prayer for Relief ¶¶ a.–d.  She is not entitled to either form of relief because this Court lacks the authority to enter the injunction she requests; because she has failed to satisfy the factors for injunctive relief, in any event; and because she has not established her entitlement to a declaratory judgment or writ of mandamus.

### A.    Plaintiff Is Not Entitled to Reinstatement.

**1.a.**  This Court lacks the power to issue any order reinstating a principal executive officer removed by the President.  The Supreme Court recognized long ago that a court "has no jurisdiction . . . to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. at 501. Awarding an injunction that would reinstate Plaintiff to the office from which the President has removed her inevitably restrains the President from exercising two core Article II powers: it prevents him from removing an officer that only he has the power to remove, and it prevents him from appointing an officer that only he has the power to appoint.  Such an injunction would be an affront to the separation of powers.

Accordingly, when executive officers have challenged their removal by the President, they have traditionally sought back pay, not reinstatement.  *See Wiener*, 357 U.S. at 350 (suit "for recovery of his salary"); *Humphrey's Executor*, 295 U.S. at 612 (suit "to recover a sum of money alleged to be

13

due . . . for salary"); *Myers*, 272 U.S. at 106 (suit "for his salary from the date of his removal"); *Shurtleff v. United States*, 189 U.S. 311, 318 (1903) (suit "for salary"); *Parsons v. United States*, 167 U.S. 324, 326 (1897) (suit "for salary and fees").[6]   That rule reflects the obvious Article II problems that arise if a court attempts to reinstate—that is, reappoint—a principal executive officer removed by the President.  The President cannot be compelled to retain the services of a principal officer whom he no longer believes should be entrusted with the exercise of executive power.

Indeed, many members of the First Congress argued against requiring the Senate's advice and consent for removals precisely because of the risk that such a procedure would require the President to retain someone he had sought to remove.  As Representative Benson observed: "If the Senate, upon its meeting, were to acquit the officer, and replace him in his station, the President would then have a man forced on him whom he considered as unfaithful."  *Myers*, 272 U.S. at 124 (citation omitted).  Representative Boudinot argued: "But suppose [the Senate] shall decide in favor of the officer, what a situation is the President then in, surrounded by officers with whom, by his situation, he is compelled to act, but in whom he can have no confidence."  *Id.* at 131–32 (citation omitted). And Representative Sedwick asked rhetorically:  "Shall a man under these circumstances be saddled upon the President, who has been appointed for no other purpose but to aid the President in performing certain duties?  Shall he be continued, I ask again, against the will of the President?"  *Id.* at 132 (citation omitted).  The injunction Plaintiff seeks raises just this problem.

**b.**  The injunction Plaintiff requests would also exceed the scope of this Court's equitable powers.  A federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity."  *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999).

---

[6] Plaintiff may respond by arguing that the officers in *Myers* and *Humphrey's Executor* had died.  But Myers and Humphrey were, of course, alive at the time of their removals, yet neither sought an injunction restoring him to office.  Each waited, let back-pay claims accumulate, and eventually asserted those claims in court, directly or through an executor.  Myers was removed in February 1920, sued for back pay in April 1921, and was later succeeded by his administratrix.  *Myers*, 272 U.S. at 106, 108.  And Humphrey's executor sought salary due "from October 8, 1933, when the President undertook to remove him from office, to the time of his death on February 14, 1934."  *Humphrey's Executor*, 295 U.S. at 612.

Reinstatement of a public official is not such a remedy. "It is . . . well settled that a court of equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 124 U.S. 200, 212 (1888). Instead, "[t]he jurisdiction to determine the title to a public office belongs exclusively to the courts of law," for instance through suits for back pay. *Id.* Thus, "the power of a court of equity to restrain by injunction the removal of a [public] officer has been denied in many well-considered cases." *Id.*; *see, e.g.*, *Baker v. Carr*, 369 U.S. 186, 231 (1962) (decisions that "held that federal equity power could not be exercised to enjoin a state proceeding to remove a public officer" or that "withheld federal equity from staying removal of a *federal* officer" reflect "a traditional limit upon equity jurisdiction"); *Walton v. House of Representatives*, 265 U.S. 487, 490 (1924) ("A court of equity has no jurisdiction over the appointment and removal of public officers."); *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898) ("[T]o sustain a bill in equity to restrain . . . the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the government."); *White v. Berry*, 171 U.S. 366, 377 (1898) ("[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another."). As one 19th-century scholar wrote, "[n]o principle of the law of injunctions, and perhaps no doctrine of equity jurisprudence, is more definitely fixed or more clearly established than that courts of equity will not interfere by injunction to determine questions concerning the appointment of public officers or their title to office." 2 James L. High, *Treatise on the Law of Injunctions* § 1312 (2d ed. 1880).

"Perhaps the most telling indication of the severe constitutional problem with the [remedy] is the lack of historical precedent for [it]," *Free Enter. Fund*, 561 U.S. at 505 (citation omitted), and there is no historical precedent for reinstatement. At most, a district court in 1983 effectively reinstated removed members of the multimember U.S. Commission on Civil Rights because that court believed that the commission functioned as a "legislative agency" whose "only purpose" was "to find facts which [could] subsequently be used as a basis for legislative or executive action"—not to exercise any executive power in its own right. *Berry v. Reagan*, No. 83-cv-3182, 1983 WL 538, at *2 (D.D.C. Nov.

14, 1983) (citations omitted), *vacated*, 732 F.2d 949 (D.C. Cir. 1983). That is no support for Plaintiff's insistence that an agency head whom the President has fired must keep exercising Article II powers.

**2.a.** Plaintiff's contrary contention that the government's cases do not prevent the Court from entering an injunction against only subordinate officials, rather than the President, Pl.'s Mot. at 30–32, is unavailing. The President is the "only official with the statutory and constitutional authority to appoint, remove, and supervise" agency heads. *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *13 n.2 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting); *see also* U.S. Const. art. II, § 2, cl. 2 (vesting authority to appoint principal officers in President alone). Therefore, any relief preventing Plaintiff's removal from the Board or ordering her reinstatement, Compl., Prayer for Relief ¶¶ c–d—what Plaintiff seeks here— "necessarily targets the President," *Dellinger*, 2025 WL 559669, at *13 n.2 (Katsas, J., dissenting), and would prevent him from exercising his lawful Article II authority to select Members of his choosing. Whether the order is expressly directed at the President or not, Supreme Court precedents reinforce that courts lack power to issue any order reinstating a principal executive officer removed by the President.

D.C. Circuit precedent does not compel a different result. *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996), to which Plaintiff cites, determined only that plaintiffs could obtain judicial review of an executive order, not that the court could issue an injunction directing the President's exercise of his appointment and removal authority. *Id.* at 1328. Likewise, in *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996), the D.C. Circuit held only that the plaintiff, a former member of the National Credit Union Administration who had been removed by President Clinton, had *standing* to challenge his removal because his injury could be redressed by the actions of subordinate officials. *Id.* at 978–81; *see also id.* at 980–81 ("[W]e hold that the partial relief Swan can obtain against subordinate executive officials is sufficient for redressability, even recognizing that the President has the power, if he so chose, to undercut this relief."). Standing is not at issue in this case, and *Swan* expressly declined to decide whether courts have the authority to order reinstatement as a remedy, noting that it was not "determining whether we can order more complete relief[.]" *Id.* at 981. For the reasons stated, a court cannot do so.

**b.**    Plaintiff next objects that the government's arguments regarding the unavailability of injunctive relief conflate the merits and remedial analysis.  Pl.'s Mot. at 32–33.  But those analyses are intertwined.  If the government is correct on the merits, the relief Plaintiff seeks is an injunction providing for her reinstatement since she has been validly removed.  And even if what she seeks is an injunction preventing her removal, the Supreme Court's precedents foreclose that relief too.  *See, e.g.*, *White*, 171 U.S. at 377 ("[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another.").

**c.**    Additionally, Plaintiff asks this Court to disregard the Supreme Court's statement in *White* that "a court of equity has no jurisdiction over the appointment and removal of public officers," 171 U.S. at 377.  Pl.'s Mot. at 33–35.  That argument fails for several reasons.  First, *White* is binding precedent until the Supreme Court itself determines to overturn it, "even if the lower court thinks the precedent is in tension with 'some other line of decisions.'"  *Mallory*, 600 U.S. at 136 (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989)).[7]  Second, the case Plaintiff claims calls *White* into question is distinguishable: *Sampson* involved an employee, not an officer.  415 U.S. at 62.  Third, the fact that law and equity have merged since *White*, Pl.'s Mot. at 33, is of no moment.  The Supreme Court has made clear that the scope of a court's equitable powers is determined by the scope of equity jurisdiction at the Founding, regardless of the later merger of law and equity.  *See Grupo Mexicano*, 527 U.S. at 318–19; *see also Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 212 (2002) (looking back to "days of the divided bench" to determine availability of equitable relief).  Indeed, in *Baker*, the Supreme Court reiterated the principle that courts may not enjoin removals of federal officers *after* the law-equity merger.  *See Baker*, 369 U.S. at 231.

**d.**    Finally, the government is not asking this Court to establish a "backpay-only rule."  Pl.'s Mot. at 35.  Instead, it invokes backpay for two purposes.  First, as explained below, the potential availability of backpay is one reason Plaintiff's claimed harm is not irreparable.  *See infra* pp. 18-19.

---

[7] Plaintiff's request that the Court disregard *White* because it has (in her view) been called into question by later cases stands in conflict with her assertion that later cases questioning the rationale of *Humphrey's Executor* have no bearing on that case's continued validity.  *See* Pl.'s Mot. at 11–26.  She cannot have it both ways.

Second, the fact that executive officers removed from their posts have typically sought backpay, rather than reinstatement, reflects the fact that this court lacks the authority to enter the injunctive relief Plaintiff seeks here.

### B.  Plaintiff Has Not Satisfied the Injunction Factors.

To establish her entitlement to a permanent injunction, Plaintiff must demonstrate: "'(1) that [she] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'"  *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).  "When the defendant is the government, factors (3) and (4) merge."  *Id.* (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  Plaintiff has not satisfied any of these factors.[8]

### 1.    Plaintiff has not suffered an irreparable injury.

Plaintiff can show neither that her injury is irreparable nor that monetary relief such as backpay are inadequate compensation for any injury.  Plaintiff's claimed injury is the "depriv[ation] . . . of the ability to do what Congress specifically directed."  Pl.'s Mot. at 28.  That claim does not meet the "high standard for irreparable injury," *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)—a standard that is particularly rigorous in cases involving the government, given that the "[g]overnment has traditionally been granted the widest latitude in the dispatch of its own internal affairs."  *Sampson*, 415 U.S. at 83 (citation omitted).

**a.**  The harm Plaintiff claims amounts to a loss of position.  Although Plaintiff's removal deprives her of her employment and salary, such consequences ordinarily do not amount to irreparable

---

[8] Plaintiff has failed to satisfy the factors for a preliminary injunction for the same reasons, and because, for the reasons described in Part I, she is not likely to prevail on the merits.  *See Winter*, 555 U.S. at 20 (requiring movant for preliminary-injunction to establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); *accord Sherley*, 644 F.3d at 392.

injury, "however severely they may affect a particular individual." *Sampson*, 415 U.S. at 92 n.68. To the contrary, numerous courts in this circuit and others have held that loss of employment is not irreparable injury—in part because it can be remediated through back pay and other equitable remedies. *See, e.g.*, *Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155, 1158 (7th Cir. 1998); *Davis v. Billington*, 76 F. Supp. 3d 59, 65-66 (D.D.C. 2014) (collecting cases); *Farris v. Rice*, 453 F. Supp. 2d 76, 79-80 (D.D.C. 2006) (noting that "cases are legion holding that loss of employment does not constitute irreparable injury" given "court's equitable powers to remedy for loss in employment through, for example, back pay"); *see also Dellinger*, 2025 WL 559669, at *17 (Katsas, J., dissenting). Accordingly, when principal officers have been removed from their posts, they generally have challenged that removal in suits for back pay. *See Humphrey's Executor*, 295 U.S. at 612 (challenge sought "to recover a sum of money alleged to be due"); *Myers*, 272 U.S. at 106 (same); *Wiener*, 357 U.S. at 349-51 (same).

Plaintiff contends that her alleged harm is more than just loss of position because her "'loss of the ability' to perform her congressionally directed, presidentially appointed, and Senate confirmed mission transcends the 'loss of income' or 'embarrassment' involved in the typical employment action." Pl.'s Mot. at 29 (quoting *Dellinger v. Bessent*, No. 25-0385, 2025 WL 471022, at *10-11 (D.D.C. Feb. 12, 2025)). But the Supreme Court has already rejected that reasoning too. Although a public official's "loss of salary" amounts to a judicially cognizable harm, his "loss of political power" does not. *Raines v. Byrd*, 521 U.S. 811, 820 (1997). The notion that public officials "have a separate private right, akin to a property interest, in the powers of their offices" is "alien to the concept of a republican form of government." *Barnes v. Kline*, 759 F.2d 21, 50 (D.C. Cir. 1984) (Bork, J., dissenting).

**b.** Plaintiff additionally contends that removing her from the Board will "cause irreparable harm to the Board itself" because it would threaten the Board's independence and deprive Plaintiff of her "statutory right to function." Pl.'s Mot. at 28–29. First, as discussed above, the Board's claimed independence contravenes Article II's requirement that the President be able to supervise and thus remove those aiding in the execution of his duties. *See Free Enter. Fund*, 561 U.S. at 496–97. Furthermore, this case is unlike *Berry v. Reagan*, 1983 WL 538 (D.D.C. Nov. 14, 1983), *vacated*, 732 F.2d 949 (D.C. Cir. 1983), which Plaintiff cites in support of her claim that denial of an injunction would

19

irreparably harm the Board, Pl.'s Mot. at 28.  In *Berry*, President Reagan removed several members of the Commission on Civil Rights, an action that prevented the Commission from completing a report it was statutorily required to complete by a date certain.  1983 WL 538, at \*1, \*5.  This "obviously disruptive effect" on the functioning of the Commission was irreparable because it would prevent the Commission from *ever* completing its statutory mandate, given that the Commission was set to expire. *Id.* at \*5.  Plaintiff and the MSPB are differently situated; the MSPB will not cease to exist and, indeed, can continue to function.  *See Jolley v. MSPB*, 636 F. App'x 567, 570 (Fed. Cir. 2016) (citing 5 C.F.R. § 1200.3(b)).[9]

To the extent the harm Plaintiff asserts is harm to the MSPB, *see* Pl.'s Mot. at 28–29, that fails as well.  First, as explained above, denying her relief would not deprive the MSPB of the inability to fulfill its mandate.  And second, that argument is merely a repackaging of Plaintiff's contention that she is the best person for the position and that the President had no sound reason for removing her— *i.e.*, that a Board with Plaintiff as a member would better serve the agency's mission than one without her.  That is the President's prerogative to determine.

### 2.    The balance of the equities and public interest weigh strongly in favor of the government.

The balance of the equities and public interest weigh strongly against Plaintiff's reinstatement as a member of the MSPB.  Because the MSPB is an executive agency exercising executive authority, an injunction functionally reinstating one of its principal officers would raise grave separation-of-powers concerns and work a great and irreparable harm to the Executive.  The President cannot be compelled to retain the services of a principal officer whom the President no longer believes should be entrusted with the exercise of executive power.  Such a remedy would undermine the accountability

---

[9] Plaintiff notes that Board Member Raymond Limon's term expires on March 1, 2025.  Even if the MSPB operates without a quorum for some period, *Berry* would still be distinguishable.  In *Berry*, the harm was irreparable in part because the commission was set to expire.  1983 WL 538, at \*5.  But here, the MSPB will not cease to exist and could resume its full functioning upon the resumption of a quorum.  Furthermore, MSPB promulgated a rule in 2024 that expanded the functions that the MSPB can perform without a quorum.  *See* 5 C.F.R. § 1200.3; Interim Final Rule, Organization and Procedures, 89 Fed. Reg. 72,957, 72,957-58 (Sept. 9, 2024).

of the Executive Branch instilled by the Constitution. The President "is elected by the entire Nation" and all executive officers "remain[] subject to the ongoing supervision and control of the elected President." *Seila Law*, 591 U.S. at 224. Adding further carveouts from that constitutional rule—and then reinstating principal officers pursuant to those further carveouts—"heightens the concern that" the Executive Branch "may slip from the Executive's control, and thus from that of the people." *Free Enter. Fund*, 561 U.S. at 499.

Moreover, the public interest is better served by an MSPB member who holds the President's confidence and, accordingly, will more effectively serve him in executing his duties as Chief Executive. "[T]he Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson*, 415 U.S. at 83 (quoting *Cafeteria and Restaurant Workers Union, Local 473, A.F.L.-C.I.O. v. McElroy*, 367 U.S. 886, 896 (1961)). It is especially important that the President be granted such latitude to oversee the MSPB, which performs a critical role in managing the Executive Branch's own workforce. *See Seila Law*, 591 U.S. at 204. "Allowing another branch of government to insulate executive officers from presidential control . . . would sever a key constitutional link between the People and their government," contrary to the public interest. *Dellinger*, 2025 WL 559669, at \*17 (Katsas, J., dissenting). The American people elected President Trump to run the executive branch. And President Trump has determined that keeping Plaintiff in office no longer serves the best interests of the American people. That democratically accountable choice should be respected.

Conversely, the public interest would not be served by reinstating Plaintiff. The only argument Plaintiff offers in favor of her equities is that the government has no interest in flouting the laws. Pl.'s Mot. at 29–30. But that argument presupposes the success of her incorrect merits arguments.

### C. Plaintiff Is Not Entitled to Declaratory Judgment or Mandamus Relief.

**1.** For the reasons discussed above, Plaintiff is incorrect on the merits and thus not entitled to declaratory judgment. Furthermore, the same principles that foreclose reinstatement likewise foreclose declaratory relief. A court "cannot issue a declaratory judgment against the President." *Franklin v. Massachusetts*, 505 U.S. 788, 827 (1992) (Scalia, J., concurring in part and concurring in the

judgment).  And a declaratory-judgment suit is "essentially an equitable cause of action." *Samuels v. Mackell*, 401 U.S. 66, 70 (1971) (citation omitted).  "[T]he Declaratory Judgment Act provides that after a declaratory judgment is issued the district court may enforce it by granting 'further necessary or proper relief,' 28 U.S.C. § 2202, and therefore a declaratory judgment . . . might serve as the basis for a subsequent injunction." *Samuels*, 401 U.S. at 72.  "[E]ven if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone has virtually the same practical impact as a formal injunction would." *Id.*  As a result, "the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment." *Id.* at 73.  To be sure, there may be "unusual circumstances" where "a declaratory judgment might be appropriate" even though "an injunction [would] be withheld." *Id.*  But "ordinarily," "where an injunction would be impermissible," "declaratory relief should . . . be denied as well." *Id.* at 73; *see Macauley v. Waterman S.S. Corp.*, 327 U.S. 540, 545 n.4 (1946) ("The same principles which justified dismissal of the cause insofar as it sought injunction justified denial of the prayer for a declaratory judgment."); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300 (1943) (noting that the Declaratory Judgment Act "only provided a new form of procedure for the adjudication of rights in conformity" with "established equitable principles.").

**2.**  Plaintiff is also not entitled to a writ of mandamus.  The writ of mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).  Mandamus is "inappropriate except where a public official has violated a 'ministerial' duty." *Consolidated Edison Co. v. Ashcroft*, 286 F.3d 600, 606 (D.C. Cir. 2002).  Plaintiff has not established that the President owes her a "clear nondiscretionary duty" and the President's selection of who should lead an Executive Branch agency is certainly not a mere ministerial task.

## CONCLUSION

For the reasons above, the Court should deny Plaintiff's Motion for Preliminary Injunction and Judgment on the Merits.

Dated: February 28, 2025                Respectfully submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*
*Civil Division*

CHRISTOPHER R. HALL
*Assistant Branch Director*

*/s/ Jeremy S.B. Newman*
JEREMY S.B. NEWMAN
(DC Bar No. 1024112)
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 532-3114
Email: jeremy.s.newman@usdoj.gov

*Counsel for Defendants*