# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHY A. HARRIS, in her personal capacity and in her official capacity as Member of the Merit Systems Protection Board,<br><br>    Plaintiff,<br><br>    -against-<br><br>SCOTT BESSENT, in his official capacity as Secretary of the Treasury, TRENT MORSE, in his official capacity as Deputy Assistant to the President and Deputy Director of the White House Presidential Personnel Office, SERGIO GOR, in his official capacity as Director of the White House Presidential Personnel Office, HENRY J. KERNER, in his official capacity as Acting Chairman of the Merit Systems Protection Board, DONALD J. TRUMP, in his official capacity as President of the United States of America, RUSSELL VOUGHT, in his official capacity as Director of the Office of Management and Budget,<br><br>    Defendants. | Civil Case No. 1:25-cv-00412-RC |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND JUDGMENT ON THE MERITS

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 3

    I.     *Humphrey's Executor* Is Controlling....................................................... 3

    II.    The Court Has The Authority To Issue Relief. ..................................... 10

          A.     The Court Should Issue Injunctive And Declaratory Relief. ................... 10

          B.     The Court Should Alternatively Grant Mandamus Relief. ...................... 15

          C.     The Government's Counterarguments Are Wrong. ................................. 17

CONCLUSION .......................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Berry v. Reagan*,
    No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983) ......................................................11, 13

*Bessent v. Dellinger*,
    No. 24A790, 2025 WL 580388 (U.S. Feb. 21, 2025) .............................................................18

*Buckley v. Valeo*,
    424 U.S. 1 (1976) ....................................................................................................................9

*Special Counsel ex. rel. Cefalu v. DOJ*, MSPB Dkt. No. CB-1208-13-0006-U-2
    (MSPB Dec. 6, 2012) ..............................................................................................................7

*Cheney v. U.S. Dist. Ct. for D.C.*,
    542 U.S. 367 (2004) ..............................................................................................................17

*\*Collins v. Yellen*,
    594 U.S. 220 (2021) .......................................................................................................1, 3, 4

*Dellinger v. Bessent*,
    No. 1:25-cv-00385-ABJ (D.D.C. Feb. 25, 2025) ............................................................7, 12

*\*Dellinger v. Bessent*,
    No. 25-5028, 2025 WL 559669 (D.C. Cir. Feb. 15, 2025) ............................................ *passim*

*Einboden v. Dept. of Navy*,
    802 F.3d 1321 (Fed. Cir. 2015) ...............................................................................................7

*Elrod v. Burns*,
    427 U.S. 347 (1976) ..............................................................................................................17

*Farley v. U.S. ex rel. Welch*,
    92 F.2d 533 (D.C. Cir. 1937) ...............................................................................................16

*Fuller v. Trs. of the Acad. Sch. in Plainfield*,
    6 Conn. 532 (1827) ...............................................................................................................16

*Great Lakes Dredge & Dock Co. v. Huffman*,
    319 U.S. 293 (1943) ........................................................................................................18, 19

*\*Authorities on which we principally rely are maked with asterisks.*

*Greer v. Dept. of Army,*
    79 M.S.P.R. 477 (MSPB 1998)................................................................................7

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.,*
    527 U.S. 308 (1999).................................................................................18, 19

*Howell v. HUD,*
    No. DC-0432-13-6622-I-2, 2023 WL 303824 (MSPB Jan. 18, 2023) ...................14

*\*Humphrey's Executor v. United States,*
    295 U.S. 602 (1935)........................................................................... *passim*

*Johnson v. Bergland,*
    586 F.2d 993 (4th Cir. 1978) ..............................................................................11

*Kalbfus v. Siddons,*
    42 App. D.C. 310 (D.C. Cir. 1914).....................................................................15

*Leopold v. Manger,*
    102 F.4th 491 (D.C. Cir. 2024) ..........................................................................15

*Lucas v. USPS,*
    No. 2023-2345, 2024 WL 1852935 (Fed. Cir. Apr. 29, 2024) ...............................7

*Macfarland v. U. S. ex rel Russell,*
    31 App. D.C. 321 (D.C. Cir. 1908).....................................................................16

*Mackie v. Bush,*
    809 F. Supp. 144 (D.D.C. 1993) ........................................................................11

*\*Marbury v. Madison,*
    5 U.S. 137 (1803)............................................................................... *passim*

*Mills v. District of Columbia,*
    571 F.3d 1305 (D.C. Cir. 2009) .........................................................................12

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985)...........................................................................................12

*Moore v. U.S. House of Representatives,*
    733 F.2d 946 (D.C. Cir. 1984) .............................................................................9

*Morrison v. Olson,*
    487 U.S. 654 (1988)............................................................................................5

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs,*
    145 F.3d 1399 (D.C. Cir. 1998) .........................................................................13

*Newman v. U.S. of Am. ex rel. Frizzell*,
    238 U.S. 537 (1915) .................................................................................................18

*Nichols v. Truscott*,
    424 F. Supp. 2d 124 (D.D.C. 2006) ........................................................................13

*Osgood v. Jones*,
    60 N.H. 282 (N.H. 1880) .......................................................................................18

*Paroczay v. Hodges*,
    219 F. Supp. 89 (D.D.C 1963) ...............................................................................11

*Raines v. Byrd*,
    521 U.S. 811 (1997) ...............................................................................................13

*Ransom v. City of Boston*,
    79 N.E. 823 (Mass. 1907) ......................................................................................16

*Ross v. United States*,
    460 F. Supp. 2d 139 (D.D.C. 2006) ........................................................................17

*Salleh v. Christopher*,
    876 F. Supp. 297 (D.D.C. 1995) ............................................................................14

*Sampson v. Murray*,
    415 U.S. 61 (1974) .................................................................................................11

*In re Sawyer*,
    124 U.S. 200 (1888) ...............................................................................................18

*\*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) ..........................................................................................1, 3, 5

*Service v. Dulles*,
    354 U.S. 363 (1957) ...............................................................................................11

*\*Severino v. Biden*,
    71 F.4th 1038 (D.C. Cir. 2023) ....................................................................2, 10, 18

*Special Counsel ex re. Cefalu v. DOJ*,
    MSPB Dkt. No. CB-1208-13-0006-U-2 (MSPB Dec. 6, 2012) ...............................7

*\*Swan v. Clinton*,
    100 F.3d 973 (D.C. Cir. 1996) ..................................................................... *passim*

*Truitt v. City of Philadelphia*,
    70 A. 757 (Pa. 1908) ..............................................................................................16

*U.S. House of Representatives v. Burwell,*
   130 F. Supp. 3d 53 (D.D.C. 2015) ........................................................................9

*U.S. House of Representatives v. United States Dep't of Com.,*
   11 F. Supp. 2d 76 (D.D.C. 1998) ........................................................................9

*United States v. Malmin,*
   272 F. 785 (3d Cir. 1921) ........................................................................16

*United States v. Perkins,*
   116 U.S. 483 (1886) ........................................................................1, 2, 5

*United States v. Wilson,*
   290 F.3d 347 (D.C. Cir. 2002) ........................................................................15

*Vitarelli v. Seaton,*
   359 U.S. 535 (1959) ........................................................................11

*White v. Berry,*
   171 U.S. 366 (1898) ........................................................................18

*\*Wiener v. United States,*
   357 U.S. 349 (1958) ........................................................................ *passim*

*Wilkinson v. Legal Servs. Corp.,*
   27 F. Supp. 2d 32 (D.D.C. 1998) ........................................................................13

**Statutes**

5 U.S.C § 7105(h) ........................................................................8

12 U.S.C § 248(p) ........................................................................8

15 U.S.C § 53(b) ........................................................................8

15 U.S.C § 2061(a) ........................................................................8

29 U.S.C § 154(a) ........................................................................8

39 U.S.C. § 409 ........................................................................8

42 U.S.C § 7171(i) ........................................................................8

46 U.S.C § 41307(a), (d) ........................................................................8

49 U.S.C. § 1301(c)(1) ........................................................................8

## Other Authorities

5 C.F.R. §§ 1200.3(a), (c) .................................................................14

5 C.F.R. §§ 1200.3(c)(1)-(4) ...........................................................14

Fed. R. Civ. P. 65(b)(2)....................................................................19

James L. High, *A Treatise on Extraordinary Remedies* (2d ed. 1884) ...................................15, 16

John Shortt, *Informations (Criminal and Quo Warranto), Mandamus and Prohibition* (1888) .................................................................16

Katelyn Polantz, *Judge in Michael Flynn Case Hires Prominent DC Law Firm to Help With Appeal*, CNN (May 24, 2020), https://www.cnn.com/2020/05/23/politics/emmet-sullivan-michael-flynn-appeal-wilkinson-walsh/index.html ................................................8

Milton Eisenberg, *The Influence of the Writ of Mandamus in Federal Personnel Litigation*, 45 Geo. L.J. 388 (1957) .......................................16

Oliver Field, *Civil Service Law*, ch. XI § V (1939) .....................16

*Public Office—Remedies for Improper Removal—Mandamus—Quo Warranto*, 38 Harv. L. Rev. 693 (1925) .................................................18

Samuel Slaughter Merril, *Law of Mandamus* (1892).....................16

Thomas Tipping, *The Law and Practice of the High Prerogative Writ of Mandamus* (1853) .................................................................16

William Blackstone, *Vol. 3, Commentaries on the Laws of England* (1768) ..........................3, 10

William Spencer, *Member Raymond A. Limon Retiring,* U.S. MERIT SYSTEMS PROTECTION BOARD (Feb 28, 2025), https://www.mspb.gov/publicaffairs/press_releases/Ray_Limon_Farewell_Press_Release.pdf.................................................................14

## INTRODUCTION

The government argues that because Cathy Harris exercises some executive power—even the smallest mote—she must be removable at the President's whim, and Congress is incapable of doing anything about it. That is not the law, and it has not been for decades upon decades. Full stop.

As this Court's prior order recognized, this is an easy case. Under *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and its progeny, Congress may enact legislation ensuring that those who serve on "multimember expert agencies" may not be removed except for cause. *Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020). The Merit Systems Protections Board is precisely the kind of "traditional" "multimember board," *id*. at 207, that does not exercise "substantial executive power," *id*. at 218, and instead fulfills a quintessentially "quasi judicial" function, *Humphrey's Executor*, 295 U.S. at 624. The Board is a purely "adjudicatory body." *Wiener v. United States*, 357 U.S. 349, 356 (1958). It does not launch investigations, fill up vague statutes, set fair prices and prohibit unfair practices, or regulate "the economy at large." *Collins v. Yellen*, 594 U.S. 220, 253 (2021). Rather, the Board receives and hears cases brought to it regarding civil servants, including claims of partisan discrimination and whistleblower retaliation, neutrally applying the laws that Congress passed to "limit, restrict, and regulate the removal" of federal employees. *United States v. Perkins*, 116 U.S. 483, 485 (1886); *see Marbury v. Madison*, 5 U.S. 137, 172 (1803). The Board's decisions, in turn, are subject to judicial review in Article III courts. It is difficult to identify an "adjudicatory body" that would fall more squarely within the *Humphrey's Executor* framework than the Merit Systems Protection Board. *Wiener*, 357 U.S. at 356.

The government admits (at 13) that "[o]verturning *Humphrey's Executor* is, of course, not

1

an option available to this Court." But make no mistake: Ruling for the government in this case means overturning *Humphrey's Executor*—to say nothing of *Marbury v. Madison*, *United States v. Perkins*, *Wiener v. United States*, and more. The new Administration's breathtaking argument is a constitutional bull in a china shop. If the Merit Systems Protections Board is not constitutional because its members exercise an iota of executive power, Congress cannot *ever* provide an adjudicatory body with the most modest removal protections—and likely cannot even prevent the arbitrary dismissal of ordinary civil servants.

At the end of the day, even the government realizes its extreme view of presidential power threatens our constitutional system. So it incomprehensibly backtracks, asserting (at 12) "some agencies, including the Federal Reserve Board, might be assessed differently." This admission gives up the game. If the independent Federal Reserve Board is constitutional—for the sake of the global economy, let's hope it is—the far more modest Merit Systems Protection Board passes muster. The government's halfhearted suggestion that the Board wields a unique degree of executive power is wrong. As our opening brief explained, the Board exercises *less* authority than the War Claims Commission, which the Supreme Court upheld in *Wiener*. The government tellingly offers no response.

Finally, the government once again argues that the executive is effectively immune from judicial review because this Court may not issue a meaningful remedy to Plaintiff. That extraordinary suggestion is as incorrect as it sounds. Article III courts are not powerless to enforce the law. As the D.C. Circuit confirmed in *Swan* and *Severino*, both removal cases, the Court may issue "[i]njunctive relief" "against subordinate executive officials." *Swan v. Clinton*, 100 F.3d 973, 980 (D.C. Cir. 1996); *accord Severino v. Biden*, 71 F.4th 1038, 1042-43 (D.C. Cir. 2023); *see also Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *6 n.1 (D.C. Cir. Feb. 15, 2025) (per

curiam). And if equitable relief were not an option here (to be clear: it is), a long line of Anglo-American precedent dating to Blackstone and *Marbury v. Madison* confirms that "mandamus" provides a "full and effectual remedy" "for wrongful removal." 3 W. Blackstone, Commentaries on the Laws of England *264-265. Indeed, "a request for an injunction" "is essentially a request for a writ of mandamus in this context," and the long history of mandamus confirms that an injunction is appropriate. *Swan*, 100 F.3d at 977 n.1. To prevent any doubt for purposes of appellate review, Plaintiff requests the Court make clear that it would grant mandamus in the alternative, if equitable relief is not available.

At bottom, the government's constitutional theory "in all the nakedness in which it is presented" is incorrect. *Wiener*, 357 U.S. at 356. The President cannot "remove a member of an adjudicatory body" "merely because he want[s] his own appointees." *Id*. No "such power is given to the President directly by the Constitution." *Id*. This Court can and should say so, preserve our constitutional order, and rule for Harris.

## ARGUMENT

### I. *Humphrey's Executor* Is Controlling.

**A.** This case is controlled by settled precedent. As our opening brief explained, the Supreme Court has always been careful to preserve *Humphrey's Executor* and its progeny.

In *Seila Law*, the Supreme Court went out of its way to contrast the "novel" Consumer Financial Protection Bureau "led by a single Director" with traditional "multimember expert agencies that do not wield substantial executive power." *Seila Law*, 591 U.S. at 204. Indeed, the Court confirmed that Congress *could* convert the Consumer Financial Protection Bureau "into a multimember agency." *Id*. at 237; *see also* Pltf.'s Mem., ECF No. 22 at 17 ("Pltf.'s Mem."). Meanwhile, in *Collins*, the Court conducted a "straightforward application" of "*Seila Law*," and

3

did not "revisit" its "prior decisions allowing certain limitations on the President's removal power." *Collins*, 594 U.S. at 251 (quotation marks omitted). Far from there being " 'little to nothing left of' " *Humphrey's Executor*, Gov. Opp., ECF No. 33 at 8 ("Gov. Opp."), *Humphrey's Executor* and its progeny unquestionably remain untouched after *Seila Law* and *Collins*.

As our opening brief explained, the Board falls within the *Humphrey's Executor* framework. The Board is a purely adjudicatory body, focused inwardly on the government, that decides the cases brought to it. *See* Pltf.'s Mem. at 12-13. The Board does not wield substantial executive authority, and Congress carefully tailored the Board's jurisdiction to avoid any separation of powers concerns. *See id*. at 14-16. Indeed, the Merit Systems Protection Board is on even firmer footing than most traditional multimember commissions because the Board furthers Congress's long-recognized authority to regulate the civil service. *See id*. at 13-14. Meanwhile, the Board is a traditional multimember body composed of members from different political parties who serve staggered terms—precisely the kind of entity upheld in *Humphrey's Executor* and *Wiener*, and distinguished as constitutional in *Seila Law* and *Collins*. *See id*. at 17-20.

**B.** In arguing that the Board is unconstitutional, the government initially starts from the extreme position that the Constitution mandates that *anyone* who exercises executive power—*to any degree*—must be removable by the President at will. *See* Gov. Opp. at 1 (arguing that Harris must be removable at will because she "exercise[s] some of the executive Power"); *see also, e.g.*, *id*. at 5, 7-11.

Our opening brief explained why this view of the removal power is wrong, and outlined how the government has misread the Supreme Court's opinions. For example, we dispelled the government's cramped interpretation of *Seila Law* and *Collins*, and explained why *Humphrey's Executor*'s use of the term "quasi judicial" does not mean the case is a dead letter. Pltf.'s Mem. at

23-26.  In response, the government copies and pastes its TRO filings nearly verbatim, declining to meaningfully engage with our analysis.  That silence speaks volumes.

The government pays lip service (*e.g.*, at 6) to the notion that Congress may "limit, restrict, and regulate the removal" of inferior officers and civil servants.  *Perkins*, 116 U.S. at 485.  But it is difficult to square those for-cause removal protections—which Congress has enacted since the Founding, *see Marbury*, 5 U.S. at 172—with the government's limitless theory of the removal power.  If the President must possess the ability "to remove all executive officials simply because they wield 'executive' power," there is no coherent basis to distinguish for-cause removal provisions protecting multimember commissions from similar provisions for " 'inferior' executive officials" and ordinary federal employees.  *Morrison v. Olson*, 487 U.S. 654, 689 n.27 (1988).  Instead, accepting the government's legal argument in this case would mean the President may fire anyone in the executive branch for whatever reason—something which has never been the law at any point in American history.

The government also attempts to downplay the natural consequences of its legal argument, *i.e.*, that every independent agency is unconstitutional.  According to the government (at 12), there "are good reasons to think that some agencies, including the Federal Reserve Board, might be assessed differently."  This suggestion does not wash.  The Federal Reserve Board clearly exercises executive power.  It "dictate[s] and enforce[s] policy" for "the economy" as a whole.  *Seila Law*, 591 U.S. at 225.  Nor can the government credibly maintain that the Merit Systems Protection Board—with its purely adjudicatory role and targeted jurisdiction—somehow exercises *more* executive power than the Federal Reserve Board.  Regardless, if the independent Federal Reserve Board is constitutional, then the government's core legal theory is wrong, and those who exercise executive authority need not always be removable at will.

Meanwhile, the government's suggestion that the Federal Reserve Board "might have special historical status" that could differentiate it from other independent agencies rebounds in this case. Gov. Opp. at 12 (quotation marks omitted). The Merit Systems Protection Board also reflects a long-established American tradition of Congress regulating the removal of civil servants and is distinguishable on the same basis.

**C.** The government tries to argue that the Merit Systems Protection Board exercises a unique degree of authority that distinguishes the Board from other independent agencies. These arguments are difficult to take seriously. The fact that the Board "hear[s]" cases and "issue[s] final orders" does not mean it exercises an impermissible "executive function." Gov. Opp. at 7 (quotation marks omitted, first alteration in original). Quite the opposite. A board hearing cases is the *ne plus ultra* of an "adjudicatory body." *Wiener*, 357 U.S. at 356. Indeed, as our opening brief explained (at 25), the Board exercises less authority than the War Claims Commission upheld in *Wiener*. The Commission issued non-reviewable decisions, whereas the Board's decisions are reviewable in Article III courts. Here again, the government's lack of a response is telling.

The government (at 3) mischaracterizes the Board's role as reviewing "how much of the Executive Branch supervises its workforce" and overseeing "the bulk of the federal workforce." That is wildly inaccurate. When the Board adjudicates contested claims between employees and agencies—such as allegations of prohibited partisan retaliation—the Board does not supervise agencies. *See* Pltf.'s Mem. at 4-5. It applies the law in a "quasi judicial" manner. *Humphrey's Executor*, 295 U.S. at 624.

Don't take our word for it. Take the government's. In the *Dellinger* case, the government vigorously contested the notion that the Board's role as an adjudicatory body means it supervises the agencies before it—in that case, the single-director led Office of Special Counsel. *See* Gov.

Reply at 4, ECF No. 25, *Dellinger v. Bessent*, No. 1:25-cv-00385-ABJ (D.D.C. Feb. 25, 2025) ("Plaintiff also argues that the Special Counsel is 'effectively' supervised by the MSPB.  But that makes no sense:  The Special Counsel is not 'supervised' by the MSPB any more than the Solicitor General is 'supervised' by the Supreme Court." (citation omitted)).  The government can hardly argue the opposite in this case.

The government points (at 7) to the fact that, in certain appeals, the Board can "modify or reduce the penalties that agencies impose on their employees."  But when an employee argues that a penalty imposed is unreasonable or arbitrary, the Board is careful to defer to the "agency's broad discretion to determine the appropriate penalty for a particular case."  *Lucas v. USPS*, No. 2023-2345, 2024 WL 1852935, at *5 (Fed. Cir. Apr. 29, 2024).[1]  Regardless, when the Board acts to reduce penalties, it no more exercises substantial executive authority than does an Article III court when it reviews an executive-imposed fine.  In both cases, the Board and the court act as adjudicators.

The government also points to the fact that the Board may "send its own attorneys (not the Department of Justice attorneys) to litigate civil actions outside the Supreme Court" and is a "named respondent" in some cases.  Gov. Opp. at 7.  But the government tellingly omits the big difference between the Board and the Department of Justice:  The Board *does not* initiate litigation

---

[1] *See, e.g.*, *Einboden v. Dept. of Navy*, 802 F.3d 1321, 1325–26 (Fed. Cir. 2015) ("We give wide berth to agency decisions as to what type of adverse action is necessary to promote the efficiency of the service, provided that the agency's decision bears some nexus to the reason for the adverse action.") (quotation marks omitted); *Greer v. Dept. of Army*, 79 M.S.P.R. 477, 485 (MSPB 1998) ("Normally the Board should give deference to the judgment by each agency of the employee's performance in light of the agency's assessment of its own personnel needs and standards.") (same); *Special Counsel ex. rel. Cefalu v. DOJ*, MSPB Dkt. No. CB-1208-13-0006-U-2, at 5 (MSPB Dec. 6, 2012) ("Employees' free speech rights must be balanced, however, against the need of government agencies to exercise 'wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment.' ") (quoting *Mings v. Dep't of Justice*, 813 F.2d 384, 387 (Fed. Cir. 1987)).

(for example, to bring an enforcement action).  Rather, in limited circumstances the Board may represent itself *when sued*.[2]  As our opening brief explained (at 26), and as the government never addresses, this circumscribed authority primarily ensures the Board's expert attorneys may provide courts their perspective on complex procedural appeals.

Indeed, the ability to litigate cases is a typical feature of independent agencies, a fact which only underscores the degree to which adopting the government's position here would require overturning *Humphrey's Executor*.  *See, e.g.*, 15 U.S.C § 2061(a) (Consumer Product Safety Commission); 42 U.S.C § 7171(i) (Federal Energy Regulatory Commission); 5 U.S.C § 7105(h) (Federal Labor Relations Authority); 46 U.S.C § 41307(a), (d) (Federal Maritime Commission); 12 U.S.C § 248(p) (Federal Reserve); 15 U.S.C § 53(b) (Federal Trade Commission); 29 U.S.C § 154(a) (National Labor Relations Board); 49 U.S.C. § 1301(c)(1) (Surface Transportation Board); 39 U.S.C. § 409 (United States Postal Service).  And the Merit Systems Protection Board lacks litigating authority in the Supreme Court, confirming that it is not exercising executive power to speak on behalf of the government in that forum.

Nor is the Board's capacity to appear in court when sued a uniquely executive function. Federal district courts, for example, retain attorneys to litigate on their behalf in mandamus cases, in which the judge is formally deemed the respondent,[3] and the houses of Congress may litigate

---

[2] The chief exception is that the Board may act as a plaintiff to enforce subpoenas.  This "is a very rare occurrence" and it has not "occurred" during Harris's tenure on the Board.  Harris Decl., ECF No. 22-3 at 8.  And if this modest power truly offended the Constitution, the remedy is to invalidate that narrow authority, not declare the for-cause removal provision unconstitutional.

[3] *See, e.g.*, Katelyn Polantz, *Judge in Michael Flynn Case Hires Prominent DC Law Firm to Help With Appeal*, CNN (May 24, 2020), https://www.cnn.com/2020/05/23/politics/emmet-sullivan-michael-flynn-appeal-wilkinson-walsh/index.html.

on their own behalf in court.[4]  The government's invocation (at 7) of *Buckley v. Valeo*, 424 U.S. 1

(1976), is puzzling.   In that case, the Supreme Court held that Congress cannot *appoint*

commissioners, a question which is not the issue here.  *Id*. at 113, 137.  Quite unlike the Board,

the Federal Election Commission at issue in *Buckley* did exercise "direct and wide ranging"

"enforcement power."  *Id*. at 111.  Even then, the Supreme Court cited *Humphrey's Executor* and

made clear that "the President may not insist that such functions be delegated to an appointee of

his removable at will."  *Id*. at 141.

Finally, the government argues that the Board can review certain "rules of the Office of

Personnel Management."  Gov. Opp. at 7.  But as we explained in our opening brief, *see* Pltf.'s

Mem. at 25, that power is limited to ensuring the Office of Personnel Management's regulations

do not conflict with a narrow range of employment laws, and the Director of the Office of

Personnel Management may seek judicial review where he disagrees with the Board.  In practice,

it is "exceedingly rare" for the Board to review Office of Personnel Management regulations, and

it has never occurred during Harris's tenure.  Harris Decl., ECF No. 22-3 at ¶ 31.  Regardless, even

if Congress somehow crossed the line in granting the Board this narrow authority (or any other),

the appropriate remedy would be to invalidate that particular power in an appropriate case.

* * *

This Court got it right in its TRO decision:  The case is "on all fours with *Humphrey's

Executor*" and its progeny.  Mem. Op., ECF No. 9 at 8-9.  This Court should apply settled law and

rule for Harris.

---

[4] *See, e.g.*, *Moore v. U.S. House of Representatives*, 733 F.2d 946 (D.C. Cir. 1984); *U.S. House of Representatives v. Burwell*, 130 F. Supp. 3d 53 (D.D.C. 2015); *U.S. House of Representatives v. United States Dep't of Com.*, 11 F. Supp. 2d 76 (D.D.C. 1998).

**II.     The Court Has The Authority To Issue Relief.**

Just as the government is wrong on the merits, it is wrong on remedy.  Everything from Blackstone to recently published D.C. Circuit precedent confirms this Court may grant a "full and effectual remedy" "for wrongful removal."  3 W. Blackstone, Commentaries on the Laws of England *264-265.  The Court should order a declaration that Plaintiff may be removed only for "inefficiency, neglect of duty, or malfeasance in office," Compl., ECF No. 1 at 12, and an injunction against removing Plaintiff from her office or treating her as having been removed.  *id*.

For the reasons discussed below, the government is wrong when it suggests this Court may not order injunctive relief.  But the government's arguments about injunctions make no difference anyway.  Count V of the complaint requests mandamus relief.  The Court should make clear that it would alternatively grant mandamus relief if an injunction is unavailable.  *Id*. at 10.  There is an extremely long tradition of Anglo-American courts issuing mandamus in precisely these circumstances, and an alternative grant of mandamus would dispel any doubt regarding this Court's remedial authority and provide the best record for appellate review.[5]

**A.     The Court Should Issue Injunctive And Declaratory Relief.**

**1.**  According to binding precedent, this Court may issue "[i]njunctive relief" in removal cases.  *Swan*, 100 F.3d at 980; *accord Severino*, 71 F.4th at 1042-1043.  The D.C. Circuit in *Swan* held that courts have the authority to issue injunctions to "redress" an official's "injury" caused by unlawful removal.  *Swan*, 100 F.3d at 980.  Just two years ago, *Severino* reaffirmed that courts "can enjoin 'subordinate executive officials' to reinstate a wrongly terminated official."  *Severino*, 71 F.4th at 1042-43 (quoting *Swan*, 100 F.3d at 980)); *see Dellinger*, 2025 WL 559669, at *6 n.1.

---

[5] Plaintiff continues to request that relief (including mandamus) run against all the Defendants with the exception of the President.  Pltf.'s Mem. at 31 n.23.

That is precisely the relief Plaintiff seeks.[6]

If that were not enough, additional precedent confirms that equitable relief is available in removal cases.  In *Sampson v. Murray*, the Supreme Court explained that a federal court may "review the claim of a discharged governmental employee" and employ its "injunctive power" to remedy the injury.  415 U.S. 61, 71, 92 n.68 (1974).  In *Service v. Dulles*—on which *Sampson* relied, *id*. at 71—a federal employee had sought both injunctive and declaratory relief and obtained that relief on remand after the Supreme Court held his termination unlawful.  354 U.S. 363, 370, 389 (1957) (cited at Pltf.'s Mem. at. 34 n.24).  And in *Vitarelli v. Seaton*, a federal employee similarly sought "a declaration that his dismissal had been illegal and ineffective and an injunction requiring his reinstatement," and the Court held that he was "entitled to the reinstatement which he seeks."  359 U.S. 535, 537, 546 (1959) (same).

Other courts—including this one—have issued injunctive relief in analogous contexts.  *See, e.g.*, *Paroczay v. Hodges*, 219 F. Supp. 89, 95 (D.D.C. 1963) (ordering that Department of Commerce official was "entitled to be reinstated to his position" and retaining jurisdiction to issue "a mandatory injunction" to enforce that judgment); *Berry v. Reagan*, No. 83-3182, 1983 WL 538, at *6 (D.D.C. Nov. 14, 1983) (enjoining the "prevent[ion] or interfer[ence] with plaintiffs['] service as members of the U.S. Commission on Civil Rights"), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983); *Mackie v. Bush*, 809 F. Supp. 144, 148 (D.D.C. 1993) (enjoining termination of Postal Service Board of Governors members), *vacated as moot sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993); *cf. Johnson v. Bergland*, 586 F.2d 993, 996 (4th Cir. 1978) (granting preliminary junction to state official whose First and Fifth Amendment rights were violated by

---

[6] The government's attempt (at 16) to distinguish *Swan*—arguing that relief may be available for purposes of Article III redressability yet unavailable "as a remedy" when sought—makes no sense. The D.C. Circuit meant what it said:  This court may issue an injunction.

11

removal).

**2.** Plaintiff satisfies the factors for a permanent injunction.

As the Court recognized at the TRO stage, without an injunction Plaintiff will suffer irreparable harm from the loss of her "statutory right to function" as an independent Board member free from fear or favor, and no amount of backpay can remedy that harm.  Pltf.'s Mem at 29 (quoting TRO Op., ECF No. 9 at 15).  As Judge Jackson put it in *Dellinger*:  "This is not a routine case dealing with a terminated probationary employee."  Mem. Op., *Dellinger v. Bessent*, No. 25-CV-385, at 61 (D.D.C. Mar. 1, 2025).   Indeed, no one would contest that an Article III judge wrongfully barred from his chambers by an executive branch official would face irreparable harm and should not be satisfied with some dollars and cents from backpay as a remedy.  The same is true for Plaintiff, who is an adjudicator and who Congress protected with a special for-cause removal protection.  *See id*. (granting permanent injunction and finding the inability "to fulfill" a "statutory duty" is "a loss that can never be restored").   Moreover, even a temporary unlawful removal will forever harm the independence that Congress deemed so critical to the Board's functioning.  *Cf. Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (explaining that even a temporary denial of official immunity is "effectively lost if a case is erroneously permitted to go to trial"); *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (it has "long been established that the loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury") (quotation marks omitted).  In addition, for the reasons described below, following the retirement of member Raymond A. Limon on February 28, 2025, the Board will be irreparably harmed because it will be unable to function absent an injunction.  *See infra* p. 14.

In arguing that Harris faces no meaningful harm (at 19), the government primarily cites

*Raines v. Byrd*, 521 U.S. 811, 820 (1997). But *Raines* confirms that when individuals are "deprived of something to which they *personally* are entitled" like "seats as Members of Congress" (or positions as members of the Board), they do suffer a legally cognizable harm. *Id*. at 821. That supports an injunction in this case. Meanwhile, the government dismisses the harms to the Board on the theory that the Board "will not cease to exist," Gov. Opp. at 19-20 & n.9, as would have occurred with the commission at issue in *Berry v. Regan*. But *Berry*'s holding was not so limited. The court there looked to "the obviously disruptive effect the denial of" "relief" would have. *Berry*, 1983 WL 538 at *5 (emphasis omitted). In that case, the disruption happened to be the commission's expiration. In this case, the Board of which Plaintiff is a lawful member will be unable to function for an indefinite period of time, a harm which cannot be remedied by backpay.

The remaining injunctive relief factors favor Plaintiff. The government does not—and cannot—dispute the public interest in requiring the executive to abide by the rule of law. Pltf.'s Mem. at 29. Meanwhile, the government continues (at 20-21) to repackage its merits argument that the President has the right to remove Harris (he does not) into a putative harm to the President from being unable to remove Harris. But that argument wrongly collapses the government's view of the merits with harm to the government, the latter factor which courts only reach if *the plaintiff* has "prevailed" on the merits. *Wilkinson v. Legal Servs. Corp.*, 27 F. Supp. 2d 32, 65 (D.D.C. 1998); *see also Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (court properly considered injunction factors "once the court reached [a] conclusion" on the merits); *Nichols v. Truscott*, 424 F. Supp. 2d 124, 143 (D.D.C. 2006) ("Actual success on the merits is naturally a prerequisite to permanent injunctive relief.").

Finally, an injunction is even more clearly in the public's interest today than when Harris first filed her motion. On February 28, 2025, member Raymond A. Limon announced his

retirement effective the same day, leaving the Merit Systems Protection Board with only two members.[7]  Absent relief from this Court and without Harris, the Board will have only a single member and will thus lack a quorum.  A single member's authority is limited to forwarding a narrowly circumscribed set of matters to an administrative judge.  5 C.F.R. §§ 1200.3(c)(1)-(4).  The lack of a quorum will immediately harm the public because the Board will be unable to perform the essential functions Congress empowered it to exercise: adjudicating petitions for review of decisions issued by administrative judges.  *See* 5 C.F.R. §§ 1200.3(a), (c).

The harm will be particularly serious to federal employees with meritorious cases.  If neither party files a petition before the Board, the aggrieved party may treat the administrative judge's decision as final and appeal to an Article III court.  But if a party chooses to file a petition before the quorum-less Board, the appeal will remain in abeyance until either (1) the party withdraws the petition, or (2) the Board regains a quorum.  The latter scenario facilitates a degree of procedural gamesmanship.  When the Board has previously lost a quorum, federal agencies could and did file petitions for review in cases in which the administrative judge ruled for the employee.  In some cases, the tactic could place the employee in limbo, unable to pursue the meritorious case to completion so long as the agency's petition remained pending and the Board lacked a quorum.  *See, e.g.*, *Howell v. HUD*, No. DC-0432-13-6622-I-2, 2023 WL 303824, at *1 & n.3 (MSPB Jan. 18, 2023) (case was held in abeyance without temporary relief for the employee while the Board lacked a quorum).  That open-ended delay is precisely what Congress did not want in setting up the Board.

**3.**  The Court can and should also issue declaratory relief.  *See Salleh v. Christopher*, 876

---

[7] William Spencer, *Member Raymond A. Limon Retiring*, U.S. MERIT SYSTEMS PROTECTION BOARD (Feb 28, 2025), https://www.mspb.gov/publicaffairs/press_releases/Ray_Limon_Farewell_Press_Release.pdf.

F. Supp. 297, 307 (D.D.C. 1995) (granting declaratory relief to Foreign Service officer illegally dismissed without cause), *aff'd*, 85 F.3d 689 (D.C. Cir. 1996); *see also United States v. Wilson*, 290 F.3d 347, 362 (D.C. Cir. 2002) (remanding with instructions to enter judgment that plaintiff was "a member of the United States Commission on Civil Rights with all the powers, privileges, and emoluments thereunto of right appertaining" (quotation marks omitted)).

### B.    The Court Should Alternatively Grant Mandamus Relief.

There is also a long-established Anglo-American history and tradition of courts issuing writs of mandamus in cases of unlawful removals from office.  Because "a request for an injunction" "is essentially a request for a writ of mandamus in this context," that history confirms that the Court may issue an injunction in this case.  *Swan*, 100 F.3d at 976 n.1; *accord Leopold v. Manger*, 102 F.4th 491, 494 (D.C. Cir. 2024).  And at a minimum, that longstanding Anglo-American history and tradition means the Court can grant mandamus relief.  To avoid any doubt about the Court's remedial power, Plaintiff respectfully requests that the Court make clear it would grant mandamus in the alternative if equitable relief is somehow not available.

The D.C. Circuit has long recognized the "overwhelming" authority that "[a] mandamus to restore" lies where a person removable only for "causes specified" "is wrongfully dispossessed of [an] office." *Kalbfus v. Siddons*, 42 App. D.C. 310, 319 (D.C. Cir. 1914) (quoting *Rex v. Blooer*, 2 Burr. 1043, 1045 (1760)).  That remedial power has a firm basis in English common law.  *See* 3 W. Blackstone, Commentaries on the Laws of England *264-265 ("mandamus" is a "full and effectual remedy" "for refusal or admission where a person is intitled to an office" and "for wrongful removal, where a person is legally possessed" and "the franchise[] concern[s] the public"); James L. High, *A Treatise on Extraordinary Remedies* 69–70 (2d ed. 1884) (recognizing that, where officers removable only " ' for due cause ' " are illegally terminated, courts may

"restore" that person "by mandamus . . . to an office to which he is justly entitled").[8]

The English tradition crossed the Atlantic and is reflected in American caselaw "from the earliest days of the Republic."  Milton Eisenberg, *The Influence of the Writ of Mandamus in Federal Personnel Litigation*, 45 Geo. L.J. 388, 388 (1957).  Indeed, *Marbury v. Madison* involved an officer whose commission was wrongfully withheld—a circumstance analogous to the wrongful attempted removal of an officer.  According to Chief Justice Marshall, that scenario presented "a plain case for a mandamus."  *Marbury*, 5 U.S. at 173; *see also United States v. Malmin*, 272 F. 785, 790 (3d Cir. 1921) (collecting cases) ("[M]andamus is an appropriate remedy to restore to office one lawfully in possession and unlawfully removed.").[9]

As we noted at the outset, this long history and tradition provides a powerful indication that injunctive relief is available now, especially in the context of a suit about whether to "comply with removal restrictions," where the two remedies are "essentially" the same.  *Swan*, 100 F.3d at

---

[8] *See also* Oliver Field, *Civil Service Law*, ch. XI § V (1939) ("Mandamus to reinstate the ousted employee to the position from which he claims to have been illegally separated is probably the most commonly used remedy in civil service removal cases which reach the courts."); High, *supra*, at 71 (noting, "both in England and America," that "the power of the civil courts to restore one [to office] who has been wrongfully removed is well established"); Samuel Slaughter Merril, *Law of Mandamus* 182 (1892) ("When an officer has been wrongfully removed from his office, he will be restored thereto by the writ of *mandamus*"); Thomas Tapping, *The Law and Practice of the High Prerogative Writ of Mandamus* 240 (1853) (mandamus "to restore" lies as a "remedy for a wrongful dispossession of an office or function which has temporal rights attached to it"); John Shortt, *Informations (Criminal and Quo Warranto), Mandamus and Prohibition* 302 (1888) (recognizing that "mandamus to restore" is the "true specific remedy" when "a person is wrongfully dispossessed of any office" (quotation marks omitted)).

[9] *See also Macfarland v. U. S. ex rel Russell*, 31 App. D.C. 321, 322 (D.C. Cir. 1908) (mandamus to compel re-enrollment of plaintiff as a police officer); *Truitt v. City of Philadelphia*, 70 A. 757, 761 (Pa. 1908) (mandamus "to reinstate" local superintendent after he was "illegally removed"); *Ransom v. City of Boston*, 79 N.E. 823, 823 (Mass. 1907) (mandamus to "reinstate" plaintiff "unlawfully ousted" from position with city labor service); *Fuller v. Trs. of the Acad. Sch. in Plainfield*, 6 Conn. 532, 546 (1827) (mandamus to "restore the plaintiff" as a trustee of public retirement board); *cf. Farley v. U.S. ex rel. Welch*, 92 F.2d 533, 539 (D.C. Cir. 1937) (mandamus where official was unlawfully denied compulsory promotion).

976-7 & n.1; *Ross v. United States*, 460 F. Supp. 2d 139, 150 (D.D.C. 2006) ("It is broadly recognized that a request for relief in the nature of mandamus is no different than a request for a mandatory injunction."). The settled tradition of mandamus thus furnishes support for an injunction here.

Regardless, the Court can alternatively issue mandamus if an injunction is not available. Plaintiff's entitlement to relief—supported by centuries of on-point authority—is "clear and indisputable." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 381 (2004) (quotation marks omitted). And mandamus is "appropriate" in this circumstance, *id.*, because it would direct the non-presidential Defendants to perform the "ministerial"—i.e., "not discretionary"—duty of "abid[ing] by the requirements of duly enacted and otherwise constitutional" removal restrictions. *Swan*, 100 F.3d at 977; *see also id.* at 978 (rejecting government's argument that Congress could not "impose a nonremoval duty of sufficient clarity to create a ministerial duty").

### C.    The Government's Counterarguments Are Wrong.

The government's claims that this Court is powerless to issue a remedy strike at the heart of the separation of powers and would fundamentally undermine American conceptions of judicial review. *See Marbury*, 5 U.S. at 163 ("[W]here there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded.") (quotation marks omitted). This Court should reject them.

*First*, the government recycles its argument (at 13-14) that courts cannot enjoin the President. But as the D.C. Circuit just confirmed in *Dellinger*, "a court can unquestionably review the legality of the President's action by enjoining the officers who would attempt to enforce the President's order." 2025 WL 559669, at *6 n.1; *see also Elrod v. Burns*, 427 U.S. 347, 352 (1976) (plurality op.) (rejecting the argument that "the executive's responsibility to insure that the laws

be faithfully executed requires the power of appointment or removal at will, unimpaired by any judicial oversight"). This Court can and should issue an injunction against the President's subordinates, who are Defendants here. *See Severino*, 71 F.4th at 1042-1043; *Swan*, 100 F.3d at 980.

*Second*, the government argues that the "traditional limit upon equity jurisdiction" in removal cases forecloses an injunction. Gov. Opp. at 15 (quoting *inter alia Baker v. Carr*, 369 U.S. 186, 231 (1962)). But the cases the government cites demonstrate that, prior to the merger of law and equity, plaintiffs proceeded in the "courts of law" for this form of relief. *See, e.g.*, *White v. Berry*, 171 U.S. 366, 377 (1898). It bears emphasis: Even the government's authority recognizes that meaningful relief *was available* at law, including via mandamus. *Id.* (availability of "mandamus," among other writs); *In re Sawyer*, 124 U.S. 200, 212 (1888) (same). The rigid historic divide between courts of law and courts of equity has little practical relevance today when the "jurisdiction conferred on the federal courts embraces suits in equity as well as at law." *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 297 (1943).[10]

The long history of mandamus relief also means this case is unlike *Grupo Mexicano*, on

---

[10] In the Supreme Court in the *Dellinger* stay application, the government and Justice Gorsuch suggested the plaintiff there should have sought a writ of *quo warranto*. *Quo warranto* is a "quasi criminal" action to determine title to an office brought against the occupant of that office for unlawful "usurpation." *Newman v. U.S. of Am. ex rel. Frizzell*, 238 U.S. 537, 544 (1915); *Bessent v. Dellinger*, No. 24A790, 2025 WL 580388, at *2 (U.S. Feb. 21, 2025) (Gorsuch J., dissenting). The government seems to have abandoned the suggestion that a plaintiff like Harris must proceed via *quo warranto*. For good reason: Historically, the writ of *quo warranto* was appropriate only if the dispossessed official could challenge someone currently occupying the office. Where there is no usurper to sue—as in this case—the writ of *quo warranto* does not lie. *See Osgood v. Jones*, 60 N.H. 282, 288 (N.H. 1880). Instead, if "there is no adverse claimant in possession" mandamus provided the appropriate remedy. *Public Office—Remedies for Improper Removal—Mandamus— Quo Warranto*, 38 Harv. L. Rev. 693, 693 (1925). But if necessary, this Court and subsequent appellate courts may read Plaintiff's request for "all other appropriate relief," Compl., ECF No. 1 at 11, to encompass a request for *quo warranto* as well. *Swan*, 100 F.3d at 980 & n.3 (noting the Court has authority to "amend [the] complaint in this fashion").

which the government relies.  In *Grupo Mexicano*, a federal court had sought to order a specific type of "relief that has never been available before" and was "specifically disclaimed by longstanding judicial precedent."  *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 322 (1999).  By contrast, in this case, there is a long history of courts ordering that the government respect for-cause removal protections.  Whether one labels that relief legal or equitable today is largely irrelevant.  The government is also incorrect to assert (at 21-22) that the limits on equity jurisdiction preclude declaratory relief.  Declaratory judgments arise "both at law *and* in equity."  *Great Lakes*, 319 U.S. at 299 (emphasis added).  Declaratory relief may thus be available even if courts would have traditionally lacked equity jurisdiction in this context because courts had the power to issue legal relief in the form of mandamus.

*Third*, the government again argues Harris should seek backpay, while simultaneously disclaiming a "backpay-only rule."  Gov. Opp. at 15, 17 (quotation marks omitted).  The government protests too much.  It *is* advancing a backpay-only rule that would render this Court impotent.  At bottom, "the bedrock principle that our system of government is founded on the rule of law" would crumble if the President could flout the "terms of legislative enactments" simply by writing a check.  *Swan*, 100 F.3d at 978.

## CONCLUSION

For the foregoing reasons and the reasons in Plaintiff's initial memorandum, Plaintiff's motion should be granted, the Court should enter declaratory relief for Plaintiff, the Court should order the proposed permanent injunction submitted by Plaintiff, and the Court should make clear that it would alternatively issue a writ of mandamus.  Plaintiff also respectfully requests that the Court extend the operative TRO if it does not resolve the merits within 14 days of the TRO's entry.  *See* Fed. R. Civ. P. 65(b)(2).  Plaintiff similarly respectfully requests a preliminary

injunction if the TRO dissolves under Federal Rule of Civil Procedure 65 and the Court has not yet issued a decision on the merits.

Respectfully submitted,

Dated: March 2, 2025
Washington, D.C.

/s/ Jeremy D. Wright

MICHAEL J. KATOR, D.C. Bar No. 366936
JEREMY D. WRIGHT, D.C. Bar No. 483297*
KERRIE D. RIGGS, D.C. Bar No. 995784
KATOR, PARKS, WEISER & WRIGHT,
   P.L.L.C.
1150 Connecticut Ave., NW
Suite 705
Washington, DC 20036
(202) 898-4800
(202) 289-1389 (fax)
mkator@katorparks.com
jwright@katorparks.com
kriggs@katorparks.com

LINDA M. CORREIA, D.C. Bar No. 435027
CORREIA & PUTH, PLLC
1400 16th Street, NW, Suite 450
Washington, D.C. 20036
(202) 602-6500
lcorreia@correiaputh.com

NEAL KUMAR KATYAL, D.C. Bar No. 462071*
NATHANIEL A.G. ZELINSKY, D.C. Bar No. 1724093*
EZRA P. LOUVIS, D.C. Bar No. 90005185*
MILBANK LLP
1850 K St., NW, Suite 1100
Washington, DC 20006
(202) 835-7505
nkatyal@milbank.com
nzelinsky@milbank.com
elouvis@milbank.com

*Admitted pro hac vice

Attorneys for Plaintiff Cathy A. Harris

20

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2 day of March, 2025, I filed the foregoing document with the

Court via ECF, which will automatically serve all counsel of record, including:

Jeremy S.B. Newman
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Email: jeremy.s.newman@usdoj.gov


_/s/ Jeremy D. Wright_
Jeremy D. Wright