```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - - - x
CATHY A. HARRIS,                    CV No. 1:25-cv-00412-RC
in her personal capacity and in her
official capacity as Member of the  Washington, D.C.
Merit Systems Protection Board,     Monday, March 3, 2025
                                    2:00 p.m.
                    Plaintiff,

v.

SCOTT BESSENT, et al.,
in his official capacity as
Secretary of the Treasury,

                  Defendants.
- - - - - - - - - - - - - - - - - x
```

---

TRANSCRIPT OF HEARING ON PRELIMINARY INJUNCTION
HELD BEFORE THE HONORABLE RUDOLPH CONTRERAS
UNITED STATES DISTRICT JUDGE

---

APPEARANCES:

For the Plaintiff:      Nathaniel Zelinsky, Esq.
                        Ezra Louvis, Esq.
                        Neal K. Katyal, Esq.
                        MILBANK LLP
                        1850 K Street, NW
                        Suite 1100
                        Washington, DC 20006
                        (202) 835-7505

                        Linda M. Correia, Esq.
                        CORREIA & PUTH, PLLC
                        1400 16th Street, NW
                        Suite 450
                        Washington, DC 20036
                        (202) 602-6500

                        Michael J. Kator, Esq.
                        Kerrie D. Riggs, Esq.
                        KATOR, PARKS, WEISER & HARRIS, PLLC
                        1150 Connecticut Ave, NW
                        Suite 705
                        Washington, DC 20036
                        (202) 898-4800

APPEARANCES CONTINUED:

For the Defendants:        Jeremy S.B. Newman, Esq.
                           Christopher Hall, Esq.
                           U.S. DEPARTMENT OF JUSTICE
                           1100 L Street, NW
                           Washington, DC 20005
                           (202) 532-3114

Court Reporter:            Timothy R. Miller, RPR, CRR, NJ-CCR
                           Official Court Reporter
                           U.S. Courthouse, Room 6722
                           333 Constitution Avenue, NW
                           Washington, DC 20001


Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

1                    **P R O C E E D I N G S**

2          THE DEPUTY CLERK:  This is Criminal Action 25-412,

3    Cathy A. Harris v. Scott Bessent, et al.

4          Counsel, please approach the podium and state your

5    appearances for the record.

6          MR. ZELINSKY:  Good morning, Your Honor.

7    Nathaniel Zelinsky on behalf of plaintiff.  I'm joined at

8    counsel's table as well by Michael Kator, by Kerrie Riggs,

9    Linda Correia, Neal Katyal, and Ezra Louvis.

10          THE COURT:  Good afternoon.

11          MR. NEWMAN:  Jeremy Newman, Department of Justice,

12    for the defendants, and I'm joined by my colleague

13    Christopher Hall of the Department of Justice.

14          THE COURT:  Good afternoon.

15          All right.  We've gone through briefing at both

16    the TRO level and the PI level, and I've read all the

17    briefing in the Dellinger case.  So I'm not sure how much

18    more I need to hear, but I'm happy to hear whatever you'd

19    like to say.

20          MR. ZELINSKY:  Thank you, Your Honor.

21          I'd be happy to answer any questions you have.  I

22    would like to, if I can, underscore three points.

23          First --

24          THE COURT:  By all means.

25          MR. ZELINSKY:  -- we think you got it exactly

1    right in the TRO decision.  We think this case is on all

2    fours with Humphrey's Executor.

3            Second, the Government is a bit mealy-mouthed on

4    this point, but they seem to acknowledge that the

5    independent Federal Reserve Board is constitutional.  For

6    all of our sakes, I sincerely hope that's true.  That

7    admission should be the end of this particular case.  If the

8    set -- if the Fed, which sets monetary policy, is

9    constitutional, so, too, is the Merit Systems Protection

10   Board by a mile.  The converse is also true.  If the

11   Government is right that the MSPB is not constitutional, I

12   am not clear that Congress can ever create for-cause removal

13   protections.

14           The third point I'd like to just briefly touch

15   on -- there's been a lot of discussion here about remedies.

16   I think it might be helpful to clear the air.  The

17   Government thinks that you do not have the power to grant an

18   injunction.  We do think you can based on Swan and Severino

19   from the D.C. Circuit which, we think, is binding precedent

20   that's very clear that in a removal context, this Court has

21   the power to issue an injunction.  But what is indisputable

22   is that there is an incredibly long history and tradition of

23   Anglo-American courts issuing mandamus relief in precisely

24   this circumstance.  And in Swan, the D.C. Circuit, in the

25   text of the decision, is clear that in this circumstance

```
 1    there is no meaningful difference between mandamus and
 2    injunctive relief.
 3              To put the Government's remedies concerns to bed
 4    from an appellate perspective, we would request that your
 5    order be styled as an injunction but be clear that in the
 6    alternative, if, for whatever reason, equitable relief is
 7    not available -- we think it is -- that you would grant
 8    mandamus in the alternative.
 9              THE COURT:  All right.  Thank you.
10              MR. ZELINSKY:  Thank you, Your Honor.
11              THE COURT:  How many days did you have to prepare
12    for this?
13              MR. NEWMAN:  I joined the case, I believe, on
14    Thursday.  So --
15              THE COURT:  Welcome.
16              MR. NEWMAN:  Thank you, Your Honor.
17              Article II of the Constitution vests all of the
18    executive power in the president and confers on the
19    president the sole authority and duty to take care that the
20    laws are faithfully executed.  In order for the president to
21    exercise the executive power and fulfill that duty, the
22    president must be able to remove principal officers who
23    exercise executive power.  It's undisputed that MSPB members
24    are principal officers and that they exercise executive
25    power and, therefore, our submission is that the for-cause
```

1    removal protections violate Article II of the Constitution.

2    At the temporary restraining order stage, the Court

3    concluded that plaintiff was likely to succeed on the merits

4    and issued a remedy that had the effect of temporarily

5    reinstating the plaintiff in office.  I'll be somewhat

6    brief, but I'm going to try to make some arguments to do the

7    best I can to persuade the -- to persuade Your Honor to

8    reach a different result on both the merits and the remedy

9    at this stage.

10              THE COURT:  Okay.

11              MR. NEWMAN:  So I'll begin with the merits.  And

12    the starting point is the text of the Constitution.  Article

13    II states the executive power shall be vested in a President

14    of the United States of America, and it confers upon the

15    president the power and duty to take care that the laws are

16    faithfully executed.  As the court explained in Seila Law,

17    the Constitution vests the executive power -- all of it --

18    in the president.  And to exercise that power, he must have

19    removal authority over the principal officers who wield

20    executive power, particularly the principal officers who

21    exercise executive power.  And both Seila Law and Free

22    Enterprise Fund explain that without such power, the

23    president could not be held fully accountable for

24    discharging his own responsibilities.  The buck would stop

25    somewhere else.  And that case -- those cases, of course,

1    build on Myers v. United States where Chief Justice and

2    former President Taft really went through the text, the

3    history, and historical tradition to explain why the

4    Constitution requires the president to be able to remove the

5    officers that he appoints who exercise executive power.

6         That brings us to Humphrey's Executor where the

7    Supreme Court upheld for-cause removal restrictions on

8    commissioners of the Federal Trade Commission.  And at the

9    TRO stage, Your Honor wrote that Humphrey's Executor appears

10   to dictate the outcome of this case, and certainly my

11   friends on the other side have argued that it's controlling.

12   Defendants respectfully disagree.  This case goes a step

13   beyond Humphrey's Executor.  And so it presents not the

14   question of whether the Court should follow Humphrey's

15   Executor, but whether the Court should extend Humphrey's

16   Executor an initial -- an additional step.

17        So before getting further into the weeds, I'd like

18   to acknowledge that on the surface, Myers and Humphrey's

19   Executor appear to be in tension with Myers affirming the

20   president's removal authority and Humphrey's Executor

21   blessing, in at least that particular case, a restriction on

22   removal authority.  And if all we had from the Supreme Court

23   were Myers and Humphrey's Executor, it would be difficult to

24   tell whether we had a broad rule of removal authority and a

25   narrow exception or whether we had the kind of exception

1    that will expand and expand until it swallows the rule.

2            But the Supreme Court's recent jurisprudence has

3    gone a long way to resolving that tension.  In particular,

4    in every recent case the Supreme Court has reaffirmed Myers

5    and gone out of its way to narrow Humphrey's Executor and to

6    limit it to its facts.  So in Free Enterprise Fund, the

7    Supreme Court rejected an invitation to expand Humphrey's

8    Executor to dual layers of for-cause removal protection, and

9    in Seila Law and Collins the Supreme Court rejected the

10   invitation to extend Humphrey's Executor to a single agency

11   head.  And Seila Law is particularly instructive here

12   because it made clear the narrowness of Humphrey's Executor.

13   Seila Law explained that Humphrey's Executor, quote,

14   "permitted Congress to give for-cause removal protections to

15   a multi-member body of experts balanced along partisan lines

16   that performed legislative and judicial functions and was

17   not said to exercise any executive power."  The MSPB has

18   some of those characteristics, but not all of them.  In

19   particular, it's not true that the MSPB can be said not to

20   exercise any executive power.  Plaintiff concedes that the

21   MSPB exercises some executive power.  Among other things, it

22   has the authority to reject regulations of the Office of

23   Personnel Management; it has the authority to direct other

24   agencies to comply with its orders and enforce those orders;

25   and it has independent litigating authority to litigate its

1    positions in lower federal courts.

2        THE COURT:  Now, did the court in Seila suggest

3    that the problem could be fixed by making it a multi-member

4    commission?

5        MR. NEWMAN:  I think that the court discussed that

6    as a potential remedy, but any -- it certainly didn't

7    endorse a -- the CFPB as a multi-member agency as being

8    constitutional.  And in particular, it described Humphrey's

9    Executor as -- along with the, sort of, "inferior officer"

10   exception of Morrison, which is not at issue here -- of

11   representing the outermost bounds of what the Supreme Court

12   has approved.  So I don't think that the -- I don't think

13   that the discussion of the possibility of a multi-member

14   CFPB was, in any way, blessing that as constitutional.

15       And so our submission is that Humphrey's Executor

16   is not controlling, and that means that the question is

17   whether to expand Humphrey's Executor to this case where we

18   have an agency that indisputably does exercise executive

19   power.  And the Supreme Court's opinion in Seila Law has two

20   strong indications that courts should be wary of expanding

21   Humphrey's Executor.  The first one is the one I just

22   mentioned: that they said that Humphrey's Executor and

23   Morrison represent what, up to now, have been the outermost

24   constitutional limits of permissible congressional

25   restrictions on the president's removal power; and, second,

1    the Supreme Court explained that the Humphrey's

2    Executor's -- the Humphrey's Executor court's, quote,

3    "conclusion that the FTC did not exercise executive power

4    has not withstood the test of time."  And so the -- Seila

5    Law was -- it didn't have to -- it didn't have to consider

6    whether to overrule Humphrey's Executor, but it's notable

7    that they questioned, even on its own terms, the fundamental

8    basis of analysis that the court came to there.

9           And for those reasons, I think that the Court

10    should not expand Humphrey's Executor and should instead

11    follow what, I believe, is under the strong import of Myers

12    and cases like Seila Law and Free Enterprise Fund which is

13    the importance of the president being able to hold

14    accountable those who exercise the executive power on his

15    behalf, particularly in this case a principal officer.

16           If it -- I'd be happy to address any questions on

17    the merits, but I'll move on to remedies.

18           THE COURT:  Let's go to remedies.

19           MR. NEWMAN:  Yes.

20           So plaintiff seeks relief that would have the

21    effect of making permanent her reinstatement in office and

22    which would prevent the president from nominating her

23    replacement.  We really have two categories of arguments for

24    why the Court should not enter that remedy, even if it rules

25    for plaintiff on the merits.  And first is that

1    reinstatement of an executive officer who has been removed

2    by the president is not a proper equitable remedy within the

3    power of federal courts, and second is that the traditional

4    injunction factors weigh against injunctive relief.

5          So first, I'll address the argument that

6    reinstatement is not a proper remedy.  In the Grupo Mexicano

7    case, the Supreme Court explained that federal courts are

8    limited to granting equitable remedies that were

9    traditionally accorded by courts of equity.  Reinstatement

10   of a removed federal official is not such a remedy.  To the

11   contrary, the Supreme Court has repeatedly rejected

12   reinstatement as an equitable remedy in cases like In re

13   Sawyer and White v. Berry, and Justice Gorsuch's dissent in

14   Dellinger is particularly persuasive on this point.

15         THE COURT:  Justice Gorsuch didn't address the

16   availability of mandamus, did he?

17         MR. NEWMAN:  That's correct.  I don't believe that

18   he did.  But mandamus is an extraordinary remedy that has a

19   number of requirements that the Supreme Court has -- and the

20   D.C. Circuit have set forth in recent years, including that

21   there's no other available remedy.  It's, sort of, a last

22   resort.  And in this case, it's not true that there's no

23   other remedy.  If, in fact, she has been removed and she's

24   been wrongly deprived of her employment as a member of the

25   MSPB, she can receive monetary remedy such as back

1    pay and --

2            THE COURT:  At the time of the founding in

3    England, wasn't this mandamus type of remedy allowed for

4    these sorts of claims?

5            MR. NEWMAN:  I don't believe so, Your Honor, and I

6    think that the cases cited on the other side don't establish

7    that.  For example, you know, Marbury v. Madison opines on

8    the availability of mandamus but ultimately denied mandamus

9    in that case which renders that dicta, and Myers itself

10   rejected reliance on dicta from Marbury v. Madison.

11           And so the second point is that federal courts

12   lack jurisdiction to enjoin the president in the performance

13   of his official duties, and the plaintiff has attempted to

14   get around this limitation by saying, "Well, Your Honor can

15   enjoin the subordinate officials but not enjoin the

16   president," but the relief that they seek would have the

17   effect of restraining the president in the exercise of his

18   official duties by preventing him from effectuating the

19   removal of plaintiff, and also, by preventing him from

20   exercising his constitutional authority to nominate a

21   replacement.  Judge Katsas explained in his dissent in

22   Dellinger that an order reinstating the special counsel

23   necessarily operated against the president because he's the

24   only one with the constitutional authority to appoint,

25   remove, and supervise the special counsel, and that that is

1    the same as to the members of the MSPB.

2                 THE COURT:  That was a dissent.

3                 MR. NEWMAN:  Correct, Your Honor, but also I think

4    that the majority was driven -- in that case was driven

5    primarily by their belief that the TRO in that case was not

6    an appealable order.  And so I expect that we might get more

7    clarity from the higher courts in Dellinger before too long,

8    but --

9                 THE COURT:  Seems like that's where all of us are

10   heading.

11                MR. NEWMAN:  Yes.  So next, I'll address the

12   injunction factors.

13                Since the Court's considering whether to enter a

14   permanent injunction, plaintiff must demonstrate that she

15   suffered an irreparable injury, the remedies of law would be

16   inadequate, and that the balance of equities and public

17   interest support injunctive relief.

18                We -- all those factors weigh against injunctive

19   relief, and we've briefed them all, but I want to just focus

20   a little bit on irreparable harm and the inadequacy of other

21   remedies which are related.  Here, a plaintiff cannot show

22   irreparable harm or that other remedies would be inadequate

23   because if she was wrongfully removed, she can receive

24   monetary injuries to compensate for her loss.  In Sampson v.

25   Murray, the Supreme Court explained that ordinarily the loss

1      of position is not irreparable harm because it can be

2      remedied through monetary remedies.  It did say in a

3      footnote that perhaps in a genuinely extraordinary

4      situation, it might be irreparable harm, but I don't think

5      that this is that type of situation.  Her argument is --

6      plaintiff's argument is primarily that removal will cause

7      irreparable harm to her right to function, citing the Berry

8      v. Reagan case, but that case is a district court case from

9      40 years ago that was vacated as moot and is not

10     particularly persuasive, I would submit, even on its own

11     terms.  And in any event, it's distinguishable because in

12     that case the commission at issue was set to expire within

13     weeks.  And so if the members were removed, there was no way

14     that that commission could ever complete its

15     statutorily-mandated operations, and that's not the case

16     here with an agency -- the MSPB -- that will continue in

17     existence.

18             And I mentioned mandamus earlier.  One of the

19     requirements of mandamus is that -- is the unavailability of

20     other remedies.  Also, it -- there's -- there are cases

21     holding that mandamus is inappropriate unless it is ordering

22     a public official to perform a ministerial task.  And here,

23     the ask from this Court -- which is, essentially, to

24     restrain the president in his removal and appointment

25     authority -- I think, goes far beyond a ministerial task.

1          For these reasons, we urge the Court to deny

2      plaintiff's motion; we urge the Court to enter judgment in

3      defendant's favor; and, at a minimum, if the Court rules in

4      plaintiff's favor, we urge the Court not to enter relief

5      that would have the effect of reinstating the plaintiff and

6      preventing the president from treating her as removed and

7      from nominating her replacement.

8          THE COURT:  All right.  Just so that we're all on

9      the same page, when do you calculate that my TRO evaporates?

10          MR. NEWMAN:  I believe it's at the end of the day

11      today.  11 -- perhaps 11:59 p.m.  And I'm not certain about

12      that.

13          THE COURT:  Today or tomorrow?

14          (Brief pause.)

15          MR. NEWMAN:  Allow me to confer with my --

16          THE COURT:  Of course.

17          MR. ZELINSKY:  Your Honor, if it's possible to

18      just make a few points in rebuttal?

19          THE COURT:  Well, if you have an answer to that

20      question --

21          MR. ZELINSKY:  I believe it's tomorrow.  That's my

22      understanding.

23          (Brief pause.)

24          THE COURT:  You can sit down.

25          MR. ZELINSKY:  Okay.

```
 1                    (Brief pause.)
 2              MR. NEWMAN:  Your Honor, looking back at the
 3     docket, it was -- your TRO was entered on February 18th and
 4     two weeks from that is tomorrow.  So I believe the answer is
 5     that it would expire tomorrow.
 6              THE COURT:  Okay.  Thank you.  Are you done with
 7     your presentation?
 8              MR. NEWMAN:  Yes, unless Your Honor has any
 9     further questions.
10              THE COURT:  All right.  Thank you.
11              MR. NEWMAN:  Thank you, Your Honor.
12              MR. ZELINSKY:  If it's okay, Your Honor, a few
13     points.  And I appreciate your indulgence.  I don't often
14     get to appear in district court.  So thank you for putting
15     up with me.
16              I just have a few points on merits and a few
17     points on remedies, and I just want to set the record
18     straight because I think you heard a lot of things and I
19     just want to make it very clear where we are.
20              First, the theory that you are hearing legally
21     from the Government is breathtaking.  It would require you
22     to overturn precedent from Marbury v. Madison through
23     Perkins, even Myers -- the high watermark of removal -- to
24     Humphrey's Executor, Wieners [sic], and probably a dozen
25     other cases in between.  The theory on the other side is
```

1    that anyone who exercises an ounce of executive authority

2    down to the lowest level of person in a copy machine room in

3    the department of irrelevancy has to be removable at will by

4    the president.  You heard not one word today about the

5    Federal Reserve Board.  In their papers before you, they

6    suggested the Fed would be constitutional.  Under the theory

7    you just heard, not only is the Fed unconstitutional; a

8    merit-based civil service system -- the very thing the MSPB

9    is set up to protect -- is also unconstitutional and the

10   president, tomorrow, can fire every single person in the

11   executive branch and Congress, which has always had the

12   authority to restrict removal, can do absolutely nothing

13   about it.  That is not the law.  It is not what Chief

14   Justice Marshall said in Marbuy v. Madison; it's not what

15   the Supreme Court said in Perkins; it's not what the Supreme

16   Court even said in Myers, the high watermark for the theory

17   of the presidential power of removal.

18          Second, my friend on the other side is just dead

19   wrong about what the Supreme Court said in all its decisions

20   that he cited to on the merits, but I want to focus, if I

21   can, on Seila Law.  Seila Law did not say anyone who

22   exercises an ounce of executive authority is removable at

23   will by the president.  That's just not there.  Instead, at

24   Page 228, the court said, quote, "We do not revisit

25   Humphrey's Executor or any other precedent today."  On 218,

1    the court said that it would be lawful to create, quote, "a

2    multi-member expert agency that does not wield substantial

3    executive power."  The test is not whether you exercise a

4    single iota of executive power.  You're the copy machine

5    room repairman in the executive branch.  The test is

6    substantial executive power, and that has been the law since

7    the founding.

8          Third, my friend on the other side identified

9    three parts of OPM -- of the MSPB that he says are

10   problematic.  I want to address each of them in turn.

11         First, my friend on the other side suggested that

12   the MSPB somehow supervises agencies within the Federal

13   Government.  That is wrong.  You don't have to take my word

14   for that.  Take the word from the United States Government.

15   Here's what they said in their briefing at Page 4 of their

16   reply in the Dellinger case.  They said the following:

17   "Plaintiff" -- that would be Dellinger -- "argues the

18   special counsel is effectively supervised by the Merit

19   Systems Protection Board."  That makes no sense.  The

20   special counsel is not supervised by the MSPB any more than

21   the solicitor general is supervised by the Supreme Court.

22   The Government can hardly argue the opposite in this court

23   now.  That is literally their filing earlier last week in

24   the Dellinger case.  The Merits Systems Protection Board is

25   a purely adjudicatory body.  It is a quasi-judicial body

1    like the War Claims Commission in Wiener.  In fact -- and we

2    noted this in our briefing and my friend on the other side

3    has been able to say nothing about it, not in the briefing

4    and not here before you today -- the Merit Systems

5    Protection Board exercises less authority than the War

6    Claims Commission in Wiener.  The War Claims Commission in

7    Wiener was making decisions that were totally unreviewable.

8    The Supreme Court in Wiener is very clear.  You couldn't be

9    reviewed within the executive.  They weren't reviewable by a

10   court via appeal or via mandamus.  That was constitutional.

11   It cannot be that Wiener was constitutional; the Merit

12   Systems Protection Board, which is a purely adjudicatory

13   body, is not.

14          My friend also pointed to two other aspects of

15   MSPB that he views as problematic.  The first is independent

16   litigating authority.  Almost every independent agency or at

17   least many have independent litigating authority.  That,

18   again, proves that if you adopt the rule on the other side,

19   you will invalidate nearly everything in the Federal

20   Government that is insulated under a congressionally

21   approved for-cause removal protection provision.  And I want

22   to stress this is not a provision that is at the benefit

23   here of the plaintiff, Cathy Harris.  It is a provision that

24   was created by Congress.  You're being asked to invalidate a

25   rule passed by another branch of government.  The litigation

1    authority in this case is extraordinarily minor.  It allows

2    MSPB to send its expert attorneys in appeals involving

3    highly complex procedural matters instead of Department of

4    Justice attorneys.  MSPB does not go out and initiate

5    investigations like DOJ.  It doesn't go out and sue people.

6    All it does is in certain discrete circumstances, it is

7    subject to being sued and then it sends its attorney to the

8    typically Federal Circuit to defend that procedural or

9    jurisdictional complex opinion.

10            Lastly, my friend on the other side referenced the

11   ability of MSPB on rare occasions to sua sponte review a

12   rule of OPM.  That happens extraordinarily rarely.  The

13   declaration in front of you from plaintiff discusses how

14   that has never occurred in her entire time at the board.

15   And I just submit to you that that is not the kind of

16   substantial executive authority that raises a concern under

17   Seila Law.  All MSPB is doing in those circumstances is

18   determining whether an OPM regulation happens to conflict

19   very narrowly with the rules against whistleblower

20   retaliation, political discrimination, and the like.  It's

21   an extraordinarily narrow authority, and if the director of

22   OPM ever disagrees, he can seek review in the appropriate

23   court of appeals.

24            I want to now just touch on remedy very, very

25   briefly, because I think it is very important and I do think

```
1         it's important to clear the air.
2                   First, it is unequivocal -- and you are correct on
3         this -- that from the founding you could grant mandamus in
4         this context.  This is what Blackstone wrote at Page 264 and
5         265 of Blackstone in the star pages: quote, "mandamus is a
6         full and effectual remedy for," quote, "the removal,
7         refusal, or admission where a person is entitled to an
8         office and for wrongful removal where a person is legally
9         possessed and the franchise concerns the public."  That is
10        this case.  There's a reason that in Marbury v. Madison --
11        the foundation of judicial review -- Chief Justice Marshall
12        was very clear that mandamus would otherwise lie.  It didn't
13        lie in that case because the Supreme Court was given
14        original jurisdiction over the matter, but it was
15        unquestionable that mandamus relief would be appropriate.
16        And, by the way, the cases the Government cites make that
17        clear.  If you look at In re Sawyer at Page 212 -- that's
18        the case that my friends on the other side cite for the
19        proposition that you don't have an equitable power -- In re
20        Sawyer, the Supreme Court of the United States says, quote,
21        "the jurisdiction to determine the title to a public office
22        belongs exclusively to the courts of law and is," quote,
23        "exercised by certiorari, error, appeal, or by mandamus."
24        You have been given by Congress the authority to issue
25        mandamus.  That's what we would ask you to do.
```

1          Additionally, my friend on the other side is just

2    dead wrong about your inability to provide injunctive

3    relief.  Swan and Severino are just crystal clear on this

4    point that you can enjoin subordinates of the president.

5    And I just want to underscore again how breathtaking it

6    would be if you could never issue relief against a

7    subordinate official because doing so would be always

8    tantamount to enjoining the president.  If that were true,

9    judicial review is over because in every case the president

10   can say, "I'm exercising the laws.  I'm ensuring that they

11   are faithfully executed, and so are my subordinates."  The

12   theory that is being trialed on the other side of remedies

13   is just as breathtaking, just as concerning as their theory

14   of the merits.

15          Lastly, I just note that my friends on the other

16   side -- and this is a quick point on mandamus -- suggested

17   that the duty in this case wouldn't be ministerial.  It most

18   certainly would.  And I direct you to Page 977 in which the

19   D.C. -- of the Swan decision in which the D.C. Circuit says

20   this duty is, quote, "ministerial and not discretionary."

21   The duty Congress enacted into law was that a member of the

22   MSPB could not be removed except for the established

23   standards: neglect, malfeasance, and inefficiency.  Those

24   have not been met in this case.  That is not why the

25   president removed or allegedly removed the plaintiff.  The

1    plaintiff deserves relief in this case.  You are not

2    powerless as a court -- as an Article III court.  And it is

3    breathtaking when the United States Government, out of one

4    side of its mouth, says that it's defending on the

5    separation of powers and, at the other side of its mouth, is

6    advancing a theory -- a legal theory that would

7    fundamentally erode the separation of powers and undo about

8    250 years of judicial review.

9           If you have no other questions, we would ask that

10    you grant relief.

11           THE COURT:  I do not.

12           All right.  I'll get this to the next level as

13    quickly as possible, but certainly before the deadline.

14           Thank you.

15           THE DEPUTY CLERK:  All rise.

16           (Proceedings concluded at 2:31 p.m.)

17                    * * * * * * * * * * *

18                **CERTIFICATE OF OFFICIAL COURT REPORTER**

19    **I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify**

20    **that the above and foregoing constitutes a true and accurate**

21    **transcript of my stenographic notes and is a full, true and**

22    **complete transcript of the proceedings to the best of my**

23    **ability, dated this 20th day of March 2025.**

24                        **/s/Timothy R. Miller, RPR, CRR, NJ-CCR**
                           **Official Court Reporter**
25                        **United States Courthouse**
                           **Room 6722**

1        **333 Constitution Avenue, NW**
         **Washington, DC 20001**
2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25